IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

WRIGHT MEDICAL TECHNOLOGY, INC.,   )
)
              Plaintiff,   )
)
           vs.   )   Case No. 18-cv-00691-STV
)
PARAGON 28, INC.,   )   **JURY TRIAL DEMANDED**
)
             Defendant.   )
)
)

## THIRD AMENDED COMPLAINT

For its Third Amended Complaint ("Complaint") against Defendant Paragon 28, Inc.

("Paragon 28"), Plaintiff Wright Medical Technology, Inc. ("Wright Medical") alleges that:

## NATURE OF THE ACTION

1.        This is an action seeking damages and injunctive relief for patent infringement,

misappropriation of trade secrets, unfair competition, intentional interference with contracts, civil

theft, and conversion.  In support thereof, Wright Medical alleges as follows:

## PARTIES

2.        Plaintiff Wright Medical is a Delaware corporation with a principal place of

business located at 1023 Cherry Road, Memphis TN 38117.  Wright Medical designs,

manufactures, and sells medical device products, including, among other products, orthopedic

plates for use in bone repair, including for bone repairs in the foot and ankle.

3.        Defendant Paragon 28 is a corporation organized and existing under the laws

of Colorado, with a principal place of business located at 4B Inverness Court East, Suite 280,

Englewood, Colorado 80112.

4.        Paragon 28 directly or indirectly develops, designs, manufactures, uses, distributes, markets, offers to sell, and/or sells products in the United States, including orthopedic plate systems, devices and surgical instruments for bone repair, including in this District.

## JURISDICTION AND VENUE

5.        This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the Complaint asserts claims arising under the laws of the United States, including under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity in citizenship and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) because the Complaint asserts "other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"

6.        Paragon 28 is subject to personal jurisdiction in the District of Colorado based upon its purposeful, systematic and continuous contacts with Colorado, including its formation under the laws of Colorado, its location of its principal place of business in this District, its transaction of business in this District, and its use, marketing, distributing, offering for sale, and/or sales of infringing systems, devices and instruments in this District, which has caused Wright Medical harm in this District.

7.        Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and/or 1400(b) because Paragon resides in this District and is subject to personal jurisdiction in this District.

## FACTS

### *Wright Medical Is A Market Leader That Innovates Medical Device Designs*

8.        Wright Medical is a recognized leader of surgical solutions for the upper extremities (shoulder, elbow, wrist and hand), lower extremities (foot and ankle) and biologics

markets, three of the fastest growing segments in orthopaedics.  Wright Medical has one of the most comprehensive extremity and biologic product portfolios in the industry as well as strong platforms for future new product development.  Wright Medical delivers innovative, value-added solutions improving quality of life for patients worldwide.

9.      Wright Medical develops, manufactures, sells and/or distributes a variety of medical devices, systems and instruments for use in surgical procedures involving the foot and ankle.  These medical devices, systems and instruments include, among other products, various orthopedic plating devices, systems and instrumentation for surgical fixation or repair of a bone or bones in the foot and ankle, including, *inter alia*, orthopedic plating systems that have been sold and/or distributed and currently are sold and/or distributed under the MAXLOCK™ EXTREME™ brand and the ORTHOLOC™ 3Di brand, and orthopedic compression/distraction instrumentation that has been sold and/or distributed and currently is sold and/or distributed under the X-TRACK brand.

10.      Wright Medical competes with many established and emerging companies in the market that it serves.  Its proprietary techniques and novel designs have achieved broad success due in large part to their technological superiority over competing offerings and to the team of engineers at Wright Medical and surgical consultants associated with Wright Medical who are continually innovating previously unknown approaches to the myriad problems presented in the foot and ankle space.

11.      The lower extremities market is also very cost competitive and dependent on the formation of strong relationships between the sales representative and the customer. Healthcare providers who utilized Wright Medical's products rely upon the Wright Medical sales representatives to educate and support their efforts in the actual delivery of medical services to

their patients.  The sales representatives' knowledge, experience, and relationships with these healthcare providers is a valuable component to generating sales in the industry.  As such, Wright Medical invests substantial time and resources into identifying its customers and developing its customer relationships and goodwill, including expending the time and effort to get to know the customers and to learn their purchasing needs and preferences and providing specialized training to its sales representatives in the business of Wright Medical to enable them to develop professional expertise and to foster the valuable customer relationships and goodwill.

12.     Wright Medical sales representatives are also privy to Wright Medical's proprietary pricing information, including, for example, competitive pricing information, and specific vendor discounts or rebates, demand and purchasing information.  Wright Medical's proprietary pricing information is highly valuable to Wright Medical and critical to its successful competition in the lower extremities market.

13.     Wright Medical has spent years developing and fine-tuning its sales representative education and training programs and its pricing strategies in order to maximize the value to its customers, while balancing a proper return on investment for Wright Medical. Moreover, this information is not generally known outside of Wright Medical's business.

14.     Among the confidential, highly confidential and trade secret information misappropriated by Paragon 28 includes:

- Product cost and pricing information, including pricing strategies, Wright Medical's appetite and ability to provide potential discounts and reductions, customer demand and purchasing information, and the terms of customer and supplier contracts

- Distribution and supply agreements, including pricing, contract terms and logistics methods

- Customer information, including customer lists and networks, prospect identities, contact information, surgeon status and follow-up steps

- Market information, including business objectives, strategic direction, trend information and forecasting information

- Sales representative information, including education and technical training, compensation and performance information

- Product design information for MAXLOCK™/ORTHOLOC™ 3Di and X-TRACK, including design dimensions, engineering drawings and specifications

- Knowledge of Wright Medical's surgical consultants/KOLs, including consulting contract provisions, including ownership of IP and compensation

15.     In order to maintain its competitive advantage, Wright Medical expends substantial resources to safeguard and protect its body of proprietary information, either through patents or by safeguarding and protecting its proprietary information as trade secret or confidential information.

16.     Wright Medical takes, and at all relevant times has taken, reasonable steps to safeguard the secrecy of its trade secrets and confidential information, including, but not limited to, by: (a) requiring its sales representatives, engineers, researchers and other employees to sign agreements protecting the confidentiality of sensitive Wright Medical information; (b) requiring its surgical consultants, partners and vendors to sign confidentiality and non-disclosure agreements; (c) limiting access to customer lists and sales information, including specific vendor discount rates and customer demand; and (d) employing various security measures at its facilities. Moreover, Wright Medical adopts and enforces several practices and written policies that are designed to protect its confidential information and trade secrets, including following the concept of "need to know," pursuant to which employees are only provided the minimum access to confidential information needed to perform their assigned duties.

***Wright Medical's Plating System Patents Are Infringed by Paragon 28***

17.     Wright Medical is the rightful and lawful owner of U.S. Patent Nos. 7,771,457 ("the '457 Patent"); 8,100,954 ("the '954 Patent"); 8,118,846 ("the '846 Patent"); 8,118,848 ("the

'848 Patent"); 9,144,443 ("the '443 Patent"); 9,259,251 ("the '251 Patent"); 9,259,252 ("the '252 Patent"); 9,259,253 ("the '253 Patent"); 9,545,278 ("the '278 Patent"); and 9,078,710 ("the '710 Patent") (collectively, "the Patents-in-Suit").

18.      The '710 patent was filed by and assigned to Wright Medical.  The '457, '954, '846, '848, '443, '251, '252, '253 and '278 Patents were originally assigned to OrthoHelix Surgical Designs, Inc. (hereinafter "OrthoHelix") and were transferred to Tornier N.V. (hereinafter "Tornier") following Tornier's acquisition of OrthoHelix in 2012.  Thereafter, Wright Medical and Tornier completed a merger in which ownership of those patents was transferred to Wright Medical on or around October 1, 2015.  Following the merger, Wright began its consolidation of the Wright Medical and legacy Tornier Lower Extremity businesses into one system and one distribution channel.  As such, Wright Medical has been the sole and exclusive owner of all right, title and interest in the highly innovative technologies claimed in the Patents-in-Suit since at least as early as October 1, 2015.

19.      The Patents-in-Suit are valid, enforceable and currently in full force and effect.

20.      On August 10, 2010, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued the '457 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '457 Patent is attached as Exhibit 1 hereto.

21.      On January 24, 2012, the USPTO duly and lawfully issued the '954 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '954 Patent is attached as Exhibit 2 hereto.

22.      On February 21, 2012, the USPTO duly and lawfully issued the '846 Patent, entitled "Orthopedic plates for use in clavicle repair and methods for their use."  A true and correct copy of the '846 Patent is attached as Exhibit 3 hereto.

23.     On February 21, 2012, the USPTO duly and lawfully issued the '848 Patent, entitled "Orthopedic plate for use in fibula repair."  A true and correct copy of the '848 Patent is attached as Exhibit 4 hereto.

24.     On September 29, 2015, the USPTO duly and lawfully issued the '443 Patent, entitled "Orthopedic plates for use in clavicle repair and methods for their use."  A true and correct copy of the '443 Patent is attached as Exhibit 5 hereto.

25.     On February 16, 2016, the USPTO duly and lawfully issued the '251 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '251 Patent is attached as Exhibit 6 hereto.

26.     On February 16, 2016, the USPTO duly and lawfully issued the '252 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '252 Patent is attached as Exhibit 7 hereto.

27.     On February 16, 2016, the USPTO duly and lawfully issued the '253 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '253 Patent is attached as Exhibit 8 hereto.

28.     On January 17, 2017, the USPTO duly and lawfully issued the '278 Patent, entitled "Orthopedic plate for use in small bone repair."  A true and correct copy of the '278 Patent is attached as Exhibit 9 hereto.

29.     On July 14, 2015, the USPTO duly and lawfully issued the '710 Patent, entitled "Orthopedic compression/distraction device."  A true and correct copy of the '710 Patent is attached as Exhibit 10 hereto.

30.     The Patents-in-Suit describe and claim various orthopedic plates, plating systems and instruments, and their methods of use, which were developed and patented by OrthoHelix Surgical Designs, Inc. and Wright Medical.

31.     Wright Medical's orthopedic plating systems and the corresponding patent number of one or more of the Patents-in-Suit are identified on Wright Medical's virtual marking page on Wright Medical's website.

32.     Wright Medical seeks a permanent injunction and monetary damages arising out of Paragon 28's past and present infringement of Wright Medical's United States patents.

***Paragon 28***

33.     Paragon 28's business is focused on medical devices for the foot and ankle, including orthopedic plating systems for surgical fixation or repair of a bone or bones in the foot and ankle.

34.     Paragon 28, directly and/or indirectly, manufactures, markets, offers for sale, sells, and/or distributes in the United States orthopedic plating systems (including plates, screws, plate bending devices, drill guides, compression/distraction devices and other surgical instruments) which infringe the Patents-in-Suit, including, without limitation, the Gorilla® R3CON Plating Systems (including *inter alia* the Gorilla Lapidus Arthrodesis System, the Gorilla MTP Plating System, the Gorilla NC Fusion Plating System, and the Gorilla Ankle Fracture Plating System), the PROMO™ Triplanar Hallux Valgus Correction System, and the Gorilla® Caspar Device.

35.     Paragon 28's Gorilla® R3CON Plating Systems include TUFFNEK locking, non-locking and compression screws that Paragon 28 instructs its customers and users to employ with Gorilla plates in surgical procedures to repair bone.  A true and correct copy of the Gorilla

R3CON Plating System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 11 and incorporated herein.

36.     Paragon 28's Gorilla R3CON Plating Systems include Gorilla Instrumentation, including, without limitation, retractors, plate benders, drills, drill bits, drill guides and the Gorilla Caspar Device, that Paragon 28 instructs its customers and users to employ with Gorilla plates and TUFFNEK screws in surgical procedures to repair bone.  Instructions for using the Gorilla Instrumentation, including the Gorilla Caspar Device, are set out in the Gorilla R3CON Plating System surgical technique guide attached as Exhibit 11 and incorporated herein.

37.     Paragon 28's PROMO™ Triplanar Hallux Valgus Correction System includes locking, non-locking and cannulated screws and surgical instruments that Paragon 28 instructs its customers and users to employ with the PROMO™ plates in surgical procedures to repair bone. A true and correct copy of the PROMO™ Triplanar Hallux Valgus Correction System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 12 and incorporated herein.

38.     Paragon 28's Gorilla Lapidus Arthrodesis System includes locking, non-locking and cannulated screws and surgical instruments that Paragon 28 instructs its customers and users to employ with the Lapidus plates in surgical procedures to repair bone.  A true and correct copy of the Gorilla Lapidus Arthrodesis System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 13 and incorporated herein.

39.     Paragon 28's Gorilla MTP Plating System includes locking, non-locking and cannulated screws and surgical instruments that Paragon 28 instructs its customers and users to

employ with the MTP plates in surgical procedures to repair bone.  A true and correct copy of the Gorilla MTP Plating System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 14 and incorporated herein.

40.     Paragon 28's Gorilla NC Fusion Plating System includes locking, non-locking and cannulated screws and surgical instruments that Paragon 28 instructs its customers and users to employ with the NC Fusion plates in surgical procedures to repair bone.  A true and correct copy of the Gorilla NC Fusion Plating System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 15 and incorporated herein.

41.     Paragon 28's Gorilla Ankle Fracture Plating System includes locking, non-locking and cannulated screws and surgical instruments that Paragon 28 instructs its customers and users to employ with the Ankle Fracture plates in surgical procedures to repair bone.  A true and correct copy of the Gorilla Ankle Fracture Plating System surgical technique guide, which includes these instructions and is available to the public at Paragon 28's website www.paragon28.com, is attached as Exhibit 16 and incorporated herein.

42.     Wright Medical has suffered damages as a result of Paragon 28's infringement of the Patents-in-Suit.

### Paragon 28 Has And Is Unfairly Competing with Wright Medical

43.     Paragon 28 was founded by, *inter alia*, three former Wright Medical employees, including **Albert DaCosta** (Wright Medical's former Corporate Director – Bio/Extremity), **Frank Bono** (Wright Medical's former Senior Vice-President and Chief

Technology Officer), and **Matt Jarboe** (former Senior Corporate Sales Representative for Wright Medical), and one former Wright Medical independent contractor, **Lee Rosenthal** (former Independent Distributor for Wright Medical).

44.      Since then, a number of other Wright Medical employees and/or independent contractors have been solicited by Paragon 28 and enticed into become Paragon 28 employees and/or independent contractors, including at least: **Matt Jackson** (former Market Development Manager for Wright Medical), **Luke Gordon** (Wright Medical's former Metro Core Representative), **Brandy Reid** (former District Associate Representative for Wright Medical), **Adam Yoder** (former District Sales Leader for Wright Medical), **Steve Farrell** (former Corporate 1099 Sales Representative for Wright Medical), **Kat Watterson** (former Generalist Representative for Wright Medical), **Jason Popkin** (former Corporate Sales Representative for Wright Medical), **John Shumaker** (former Corporate Sales Representative for Wright Medical), **Brock Howard** (former Wright Medical Corporate Sales Representative - Lower Extremity & Biologics), **Zhao Guo** (former Wright Medical Orthopedic Implant Sales Representative), **James Bench** (former Wright Medical Lower Extremities Device & Biologic Sales Representative), **Phil Falcon** (former Wright Medical Account Manager), and **Brandon Strange** (former District Sales Director, U.S. Sales, Lower Extremity and Biologics for Wright Medical) (hereinafter collectively referred to as the "Former Wright Medical Sales Representatives").

45.      Paragon 28 also hired **Dustin Ducharme**, a named inventor on eight of the ten Patents-in-Suit who contributed to the development of Wright Medical's MAXLOCK EXTREME family of products. Prior to working for Paragon 28, **Ducharme** was the Foot and Ankle Product Manager at Tornier and previously held the title of Senior Manager of Strategic Marketing &

Business Development for OrthoHelix – the company responsible for the original design and development of the inventions claimed in many of the Patents-in-Suit.

46.      Many of the former employees and/or contractors who left Wright Medical to join Paragon 28 had entered into written Confidentiality, Non-Competition, Non-Solicitation and/or Intellectual Property Rights Agreements (hereinafter "Confidentiality Agreements").  For example, at least **Albert DaCosta**, **Frank Bono**, **Lee Rosenthal**, **Matt Jarboe**, **Luke Gordon**, **Brandy Reid**, **Adam Yoder**, **Steve Farrell**, **Kat Watterson**, **Jason Popkin**, **John Shumaker**, **Brock Howard**, **Zhao Guo**, **Phil Falcon**, **James Bench** and **Brandon Strange** entered into Confidentiality Agreements with Wright Medical acknowledging their obligations to maintain the secrecy of Wright Medical's confidential, highly confidential and trade secret information.

47.      Each of these former Wright Medical employees began working for Paragon 28 in the same or substantially the same role as they previously held for Wright Medical after terminating employment with Wright Medical.  In order to induce the Wright Medical Sales Representatives to switch to Paragon 28, they were often given enhanced title and compensation. Currently, all of Paragon 28's sales regions are managed by former Wright Medical employees or distributors.

48.      At the time these former Wright Medical employees began their employment with Paragon 28, the former Wright Medical employees possessed physical copies of and/or had knowledge of Wright Medical's proprietary, confidential, and/or trade secret information, and they acted without authorization to misappropriate and convert that information for the benefit and financial gain of their new employer, Paragon 28.  These actions of the former Wright Medical employees were orchestrated and/or sanctioned by Paragon 28, and Paragon 28 has accepted the benefit and financial gain resulting therefrom.

*The Paragon 28 Founders*

49.     Paragon 28 was founded by former Wright Medical employees and independent contractors **Albert DaCosta**, **Frank Bono**, **Lee Rosenthal**, and **Matt Jarboe** (hereinafter "the Paragon 28 Founders").  Due to their high-level positions at Wright Medical, **DaCosta, Bono, Rosenthal**, and **Jarboe** necessarily were privy to and had intimate knowledge of Wright Medical's trade secrets, including its then-current and then-planned product lines, development and design of its product lines, business plans and roadmaps, customers, sales, pricing and other highly sensitive technical and business information proprietary to Wright Medical.  The knowledge that these individuals gained through their employment with Wright Medical also included knowledge of Wright Medical's surgical consultants and Key Opinion Leaders (KOLs), including the highly confidential terms of their respective consulting contract provisions.  The Paragon 28 Founders also had knowledge of one or more of the Patents-in-Suit (or the applications that led to one or more of the Patents-in-Suit) while employed by Wright Medical.

50.     Wright Medical invested significant and substantial time and resources into providing specialized training to the Paragon 28 Founders in the business of Wright Medical, including in the development of Wright Medical's products.  Wright Medical investment in the Paragon 28 Founders enabled them to develop professional expertise and to develop strategic business plans, marketing strategies, and valuable relationships and goodwill with Wright Medical's customers and KOLs.

51.     Wright Medical's confidential product research and development information, business strategies, customer networks, training, support, and proprietary information allowed the Paragon 28 Founders to develop significant business skills and customer relationships that they

- 13 -

did not have prior to working at Wright Medical, from all of which they benefitted professionally and financially.

52.     All of the Paragon 28 Founders had Confidentiality Agreements with Wright Medical prohibiting the removal and use of Wright Medical confidential, highly confidential, and trade secret information.

53.     Upon terminating their employment with Wright Medical, the Paragon 28 Founders founded and began working for Paragon 28 in the same or substantially the same role as they previously held for Wright Medical.  The Paragon 28 Founders used the training and experience they had gained while at Wright Medical, combined with Wright Medical's confidential, highly confidential, and trade secret information with which they had direct access and knowledge of, to found a new orthopedic foot and ankle company intended to compete directly with Wright Medical's lower extremities business, including by usurping Wright Medical's customer relationships and using Wright Medical's proprietary information to gain a head start in introducing Paragon 28 products to the market.

***Paragon 28 and Its Founders Intentionally Targeted Wright Medical Sales Representatives***

54.     Upon information and belief, upon organizing Paragon 28, the Paragon 28 Founders deliberately targeted and knowingly solicited the Former Wright Medical Sales Representatives, including by using confidential and highly confidential information learned while they were employed at Wright Medical, in order to induce them to the breach their obligations under their respective Confidentiality Agreements to gain access to Wright Medical's confidential material and trade secret information, including Wright Medical's customer lists and details,

product pricing lists, and product design information, including engineering drawings and specifications.

55.     Paragon 28's website states that its focus is on the very customers and persons the Former Wright Medical Sales Representatives interfaced with, and marketed to, while they were employees of Wright Medical, stating that: "Foot and ankle surgeons are our primary focus at Paragon 28. We listen to your ideas, your criticisms, and what needs to be better. We seek to understand your hesitance and frustrations with certain procedures and focus on how we can make things easier." *See* http://www.paragon28.com/ (attached as Exhibit 17).

56.     With respect to its sales force, Paragon 28 states on its website that: "Superior product knowledge is beneficial to all parties, and is something for which we strive. We recruit, train and hire a sales and distribution network of the most highly educated, knowledgeable and respected sales representatives in the foot and ankle market." *See* http://www.paragon28.com/about/ (attached as Exhibit 18).

57.     As such, Paragon 28's website makes clear it is a direct competitor of Wright Medical's lower extremities division, and that it also affirmatively seeks to recruit and hire employees like the Former Wright Medical Sales Representatives who have precisely the type of knowledge, experience, training, education, and respect in the marketplace that will give Paragon 28 a competitive advantage.  That competitive advantage is unfair and unlawful as applied to the Former Wright Medical Sales Representatives to the extent their competition is in violation of their respective Confidentiality Agreements with Wright Medical.

58.     In view of their prior employment at Wright Medical, the Paragon 28 Founders were aware that the Former Wright Medical Sales Representatives had executed Employment

Agreements with Wright Medical containing Confidentiality, Non-Competition and Non-Solicitation provisions.

59.     The Paragon 28 Founders were aware that the Former Wright Medical Sales Representatives possessed physical copies of and/or had knowledge of Wright Medical's proprietary, confidential, and/or trade secret information.  The Paragon 28 Founders acted without authorization to misappropriate and convert that information for the benefit and financial gain of Paragon 28 by, *inter alia*, hiring the Former Wright Medical Sales Representatives and employing them at Paragon 28 in the same or substantially the same role as previously held for Wright Medical.  These actions of the Former Wright Medical Sales Representatives were orchestrated and/or sanctioned by Paragon 28 and the Paragon 28 Founders, and Paragon 28 has accepted the benefit and financial gain resulting therefrom.

60.     During the course of their relationship with Paragon 28, the confidential and proprietary knowledge of these Former Wright Medical Sales Representatives has infected the other Paragon 28 employees, including the Paragon 28 Founders, who are now using that confidential and proprietary information to unfairly compete with Wright Medical and convert Wright Medical customers to purchase Paragon 28 products.

61.     In a clear attempt to duplicate and copy Wright Medical's MAXLOCK EXTREME family of products, the Paragon 28 Founders and Paragon 28 also deliberately targeted and knowingly solicited **Ducharme** – a named inventor on eight of the ten Patents-in-Suit who contributed to the development of the MAXLOCK EXTREME family of products.  As an inventor on various of the Patents-in-Suit, **Ducharme** possessed specialized and detailed knowledge concerning the design, use, operation and function of the MAXLOCK EXTREME family of products, the technologies underlying many of the Patents-in-Suit, and the Patents-in-Suit

themselves.  Much of this information was confidential or highly confidential to OrthoHelix and Tornier, and later became confidential and highly confidential Wright Medical information following Wright Medical's completion of its merger with Tornier in October 2015.  Shortly after hiring **Ducharme** in 2014, Paragon 28 launched its first product offering in the United States.

### *The Paragon 28 Founders Targeted Wright Medical Key Opinion Leaders.*

62.     The Paragon 28 Founders, acting on behalf of Paragon 28, deliberately targeted and knowingly solicited known Wright Medical KOLs, using confidential, highly confidential and trade secret information learned while they were employed at Wright Medical, in order to induce them to work for Paragon 28.

63.     For example, while at Wright Medical, at least **Bono and DaCosta** were responsible for, *inter alia*, identifying and retaining surgical consultants and KOLs on behalf of Wright Medical.   In connection with this role, **Bono** and **DaCosta** negotiated and learned confidential, highly confidential and trade secret information, including the specific contract terms and licensing arrangements entered into between Wright Medical and certain surgical consultants and KOLs.  **Bono** and **DaCosta** have been using this confidential, highly confidential and trade secret information to unfairly solicit and attempt to convert certain Wright Medical surgical consultants and KOLs to switch to similar roles at Paragon 28.  Among the confidential, highly confidential and trade secret information being unfairly used includes the terms and specific contract provisions, including ownership of IP and consultant compensation.

64.     Upon information and belief, Paragon 28, including **Bono** and/or **DaCosta** have offered several of Paragon 28's KOLs equity positions and/or ownership interests in Paragon 28 in order to induce them to consult for Paragon 28.  To the extent that these KOLs are using

Paragon 28 products in surgical procedures without disclosing their respective equity and/or ownership interest in the company, these KOLs, and thusly Paragon 28, may be violating various statutes and unfairly competing with Wright Medical.

65.　　Paragon 28's conduct is intentionally fraudulent, malicious, willful, and/or wanton.

66.　　Paragon 28's acts complained of herein have been committed with knowledge that such acts are intended to cause confusion, to deceive, and to trade upon and reap the benefits of years of effort and investment by Wright Medical to create public recognition of these Wright Medical KOLs and to enhance Paragon 28's reputation in the industry.

***The Paragon 28 Founders Misappropriated Confidential Wright Medical Information.***

67.　　Wright Medical has recently become aware that, prior to leaving Wright Medical, the Paragon 28 Founders had been sending Wright Medical's proprietary, confidential, and trade secret information from their work email accounts to personal email accounts.

68.　　For example, **DaCosta** was the former Director of Sales for Wright Medical's Biologics & Extremities business.  He oversaw sales in the U.S. from May 1, 2006 until he left Wright Medical in 2009.

69.　　**DaCosta** began work for Wright Medical starting as a Corporate Technical Specialist on May 1, 2006.  Upon starting work at Wright Medical, **DaCosta** executed an "Employment Agreement" containing valid and enforceable "non-competition," "non-solicitation" and "confidentiality" provisions, including a nationwide non-competition covenant for the term of at least one year starting from termination.  A portion of that Employment

Agreement governing in part the obligations with respect to customer and price lists is reproduced below:

> 7. Records and Company Property. Upon termination of this Agreement, Employee shall not be entitled to keep or preserve records or other information of Employer as to any product or service of Employer. Employee agrees that all records, files, memoranda, reports, price lists, customer lists, drawings, plans, documents, equipment, and the like, relating to the Company's business which Employee may use or prepare or come into contact with, shall be the exclusive property of the Company. Employee further agrees that, upon request by Company, and in any event upon termination of employment, Employee shall turn over to Company such property as may be in the possession or control of Employee.

70.      As a Corporate Technical Specialist, **DaCosta** was responsible for, among other things, generating sales leads and sales, negotiating sales agreements and terms, and fostering and maintaining working relationships between Wright Medical customers and prospective customers. Healthcare providers who utilized Wright Medical's products relied upon **DaCosta** to educate and support their efforts in the actual delivery of medical services to their patients.

71.      During his employment, **DaCosta** became privy to certain of Wright Medical's proprietary and confidential business information, including, among other things, customer accounts, cost and pricing information including Wright Medical's appetite and ability to provide potential discounts and reductions in general, and its appetite and ability to provide discounts and reductions to certain customers in particular.

72.      **DaCosta** separated from his employment with Wright Medical in 2009, and immediately undertook steps to found the business of Paragon 28 to directly compete with Wright Medical's lower extremities business. As such, **DaCosta** is working in same or substantially the same field as previously held for Wright Medical beginning immediately after terminating employment with Wright Medical.

73.      Recently Wright Medical became aware that **DaCosta** had been sending Wright Medical's confidential, highly confidential and trade secret information from his work

email account to a personal gmail account before he separated from employment at Wright Medical.

74.      One such incident occurred at 1:51 p.m. on the afternoon of Friday, October 16, 2009.  **DaCosta** sent an email from his personal email account (gatormed@hotmail.com) to his work email (adacosta@wmt.com) containing an Excel Spreadsheet containing the names, titles and contact information for a number of DPM surgeon customers who attended a Foot and Ankle Symposium hosted by Wright Medical (hereinafter, the "Customer List").  The fact that this information was sent from his personal email account less than two weeks before departing Wright Medical evidences that **DaCosta** maintained possession of this information outside of Wright Medical.

75.      That Customer List contained Wright Medical's proprietary, confidential, and trade secret data, including contact information (*i.e.,* physical addresses, email addresses, work and personal phone numbers and fax numbers), surgeon status and follow-up steps for several Wright Medical customers.  **DaCosta** would not have been in possession of that information but for his employment with Wright Medical.

76.      **DaCosta** misappropriated and concealed this information for the direct benefit of Paragon 28.  Such information clearly provided **DaCosta**, and thusly Paragon 28, a significant and unfair competitive advantage.

77.      **DaCosta's**, and thusly Paragon 28's, desire to unfairly compete with Wright Medical is also evident through the patent filings of Paragon 28.  For example, on December 12, 2012, Wright Medical filed its U.S. Patent Application No. 13/712,300, entitled "Orthopedic Compression/Distractor Device"  (the "'300 Application").  Wright Medical's '300 Application was published on June 12, 2014, and eventually issued as U.S. Patent No. 9,078,710.

78. On July 2, 2014 – less than one month after Wright Medical's '300 Application was published – **DaCosta** caused Paragon 28 to file U.S. Provisional Application No. 62/020,391 entitled "Moveable Bone Plate Implantation System and Method of Use" ("the '391 Application"). The '391 Application names **DaCosta** as the sole inventor and purports to claim a bone compression instrument, and method of use, having identical or near identical design as that designed and developed by Wright Medical and claimed in Wright Medical's '300 Application. A copy of Figure 1 from Wright Medical's '710 Application is reproduced below on the left. A copy of Figure 1 from Paragon 28's '391 Application is reproduced below on the right.



79. The timing and undeniable similarity between Wright Medical's '300 Application and Paragon 28's '391 Application suggest an attempt by Paragon 28 to unfairly compete and claim as its own inventions and designs created and owned by Wright Medical.

80.     Paragon Founder **Lee Rosenthal** also has misappropriated and concealed confidential, highly confidential and trade secret Wright Medical information for the direct benefit of Paragon 28.  Such information clearly provided **Rosenthal**, and thusly Paragon 28, a significant and unfair competitive advantage.

81.     **Rosenthal** induced at least one former Wright Medical Sales Representative, **Luke Gordon**, to provide confidential, highly confidential and trade secret Wright Medical sales and pricing information in order to compete against Wright Medical for business.

82.     **Gordon** was a former Core Foot and Ankle Representative for Wright Medical's Lower Extremity and related Biologics business.  **Gordon** began work for Wright Medical on October 10, 2011.  He was assigned an exclusive sales territory covering the following counties in Massachusetts:  Barnstable, Bristol, Dukes, Middlesex, Nantucket, Norfolk, Plymouth, and Suffolk; and the following counties in Rhode Island:  Bristol, Kent, Newport, Providence, and Washington.

83.     During his employment, **Gordon** became privy to certain of Wright Medical's proprietary and confidential business information, including, among other things, cost and pricing information related to Wright Medical customers, including Wright Medical's appetite and ability to provide potential discounts and reductions.

84.     Included in Wright Medical's highly confidential and trade secret sales information that **Gordon** acquired was information concerning pricing, distribution, supply agreements, customer lists, customer preferences, and customer demand for, *inter alia*, Wright Medical's MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di family of products, and the X-TRACK compression/distraction instrumentation.

85.     **Gordon** separated from his employment with Wright Medical on July 21, 2017, and went to work for Paragon 28 as an independent distributor in September, 2017.

86.     Wright Medical has recently learned that **Gordon** had been sending Wright Medical's proprietary, confidential, and trade secret information from his work email account to a personal gmail account.

87.     For example, **Gordon** also used a file sharing website, www.9folders.com, to send information from his work email address to his personal gmail account.  The file sharing website provides access to confidential and highly confidential Wright Medical sales and pricing information.  One example is below:

| | |
|---|---|
| **From:** | Gordon, Luke A <luke.Gordon@wright.com> |
| **Sent:** | Thursday, October 20, 2016 10:35 AM |
| **To:** | Luke Gordon <lukeagordon@gmail.com> |
| **Subject:** | Hello |

Sent from Nine <http://www.9folders.com/>

88.     **Gordon** shared Wright Medical's proprietary, confidential and trade secret information with other Paragon 28 employees and worked in concert with other Paragon employees, including Paragon Founder **Rosenthal**, to hide and conceal **Gordon's** breach of his obligations not to disclose Wright Medical's confidential information and trade secrets.

89.     For example, on or around August 2017, **Gordon** worked with **Rosenthal** and another Paragon 28 sales representatives, **Max Ehret**, to solicited sales from the Contract Manager for a large healthcare organization.  **Gordon** was formerly Wright Medical's representative who had a sales relationship with the Contract Manager for that large healthcare organization.  Upon

information and belief, at the behest of **Gordon**, **Rosenthal** and **Ehret** asked the Contract Manager to provide a list of plating systems and related components that the customer was purchasing from Wright Medical so that these products could be "cross-referenced" to competing Paragon 28 products.  In response, on or around August 15, 2017, the Contract Manager provided a list comprising nearly 6000 line items that included many Wright Medical offerings.



90.        Paragon 28 employees, including **Rosenthal** and **Ehret** and **Rom Corbel**, then "cross-referenced" each of those line items with Paragon 28's competing product offerings. **Rosenthal, Ehret** and **Corbel** unfairly gained access to Wright Medical's purchasing and pricing information misappropriated and concealed by **Gordon** in order to unfairly induce the customer to switch and purchase products from Paragon 28.  On October 3, 2017, **Rosenthal** responded to the Contract Manager's email with a list of comparable Paragon 28 products and pricing information intended to undercut Wright Medical pricing and unfairly induce the Contract Manager to purchase plates from Paragon 28 instead of Wright Medical.

**From:** Lee Rosenthal [mailto:lrosenthal@paragon28.com]
**Sent:** Tuesday, October 03, 2017 7:05 PM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Max Ehret <MEhret@paragon28.com>
**Cc:** Rom Corbel <RCorbel@paragon28.com>
**Subject:** Re: Paragon 28 Cross
**Importance:** High

Hi 

Thank you for your patience on this as it took quite a while longer than expected to get through nearly 6K items line by line. There may still be a few mistakes and also a few items that may be compared incorrectly. If you happen come across some severe price discrepancies you can highlight those and I will come back and review those and make sure we are comparing apples to apples. Sometimes the comp may be way more advanced than what it's being compared with.

Thank you,

Lee Rosenthal
Vice President National Accounts



4B Inverness Court East # 280
Englewood, CO 80112
O  (888) 728-1888
C  (205) 908-3111

This e-mail may contain confidential and/or proprietary information regarding Paragon 28 or its customers. If you are not the intended recipient of this e-mail and have received it in error, please delete it immediately and notify the sender. If you are not the intended recipient, you may not disclose, divulge, or otherwise share the information contained in this e-mail, including without limitation any protected health information as that term is commonly understood.

91.     The Contract Manager responded to **Rosenthal, Ehret** and **Corbel** while attempting to carbon copy **Gordon** on the email; however, the Contract Manager erroneously used **Gordon's** former Wright Medical email address, and so the email was sent to Wright Medical, not **Gordon**. That email states in pertinent part:

**From:** ███████████████████████████████████
**Sent:** Friday, October 27, 2017 8:53 AM
**To:** Max Ehret <MEhret@paragon28.com>; Lee Rosenthal <lrosenthal@paragon28.com>
**Cc:** Rom Corbel <RCorbel@paragon28.com>; Gordon, Luke A <Luke.Gordon@wright.com>
**Subject:** RE: Paragon 28 Cross

Hello Max,
Everything is complete on my end. The approval to use Paragon28 is a decision each individual facility must decide. Please keep in mind that if Paragon is approved for use at one hospital does not mean it is approved system wide. A physician champion at each facility must make a formal request, and bring it to their respective OR Product Committees.

███████████████
Contract Manager | Clinical Perioperative
████████████ | Supply Chain Management
████████████████████████████ MA 02145
████████████████████

**From:** Max Ehret [mailto:MEhret@paragon28.com]
**Sent:** Thursday, October 26, 2017 6:35 PM
**To:**███████████████████████ORG>; Lee Rosenthal <lrosenthal@paragon28.com>
**Cc:** Rom Corbel <RCorbel@paragon28.com>
**Subject:** RE: Paragon 28 Cross

Hi ████

I hope this email finds you well. I am following up on the Paragon 28 cross reference file we had submitted and where we are at in regard to the approval process? If you have an opportunity to contact me back at a time of your convenience to discuss the details it would be much appreciated.

Thank You,

Max

Max Ehret
Paragon 28- Northeast
mehret@paragon28.com
(607)760-2839

92.      Such information clearly provided **Gordon**, **Rosenthal**, **Ehret** and **Corbel**, and thusly Paragon 28, a significant and unfair competitive advantage.

93.      At least **Gordon**, **Rosenthal**, **Ehret** and **Corbel**, and thusly Paragon 28, were aware that the customer information provided by **Gordon** and information solicited from the Contract Manager, was Wright Medical proprietary and trade secret information.

***Former Wright Medical Sales Representatives Misappropriated Confidential Wright Medical Information***

94.      While at Wright Medical, the Former Wright Medical Sales Representatives were responsible for, among other things, generating sales leads and sales, negotiating sales agreements and terms, and fostering and maintaining working relationships with customers and

prospective customers.  Healthcare providers who utilized Wright Medical's products relied upon the Former Wright Medical Sales Representatives to educate and support their efforts in the actual delivery of medical services to their patients.

95.     The Former Wright Medical Sales Representatives' knowledge, experience, and relationships with healthcare providers is a valuable component to generating sales in the industry.  Wright Medical invested significant and substantial time and resources into providing specialized training to the Former Wright Medical Sales Representatives in the business of Wright Medical and to enable them to develop professional expertise and to develop valuable relationships and goodwill with Wright Medical's customers.

96.     Wright Medical's confidential customer network, training, support, and proprietary information allowed the Former Wright Medical Sales Representatives to develop significant relationships with customers that they did not have prior to working at Wright Medical, from all of which they benefitted professionally and financially.

97.     During their employment, the Former Wright Medical Sales Representatives became privy to certain of Wright Medical's proprietary and trade secret information, including, among other things, cost and pricing information including Wright Medical's appetite and ability to provide potential discounts and reductions, distribution, supply agreements, customer lists, customer demand, business plans, business roadmaps, sales education and technical training, and detailed knowledge concerning the design, dimensions and manufacturing processes used to develop, manufacture and sell the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di family of products, and the X-TRACK compression/distraction instrumentation.

98.      Various of these Former Wright Medical Sales Representatives had knowledge of and/or confidential knowledge of one or more of the Patents-in-Suit (or the applications that led to one or more of the Patents-in-Suit) while employed by Wright Medical.

99.      Upon terminating their employment with Wright Medical, the Former Wright Medical Sales Representatives began working for Paragon 28 in the same or substantially the same role as they previously held for Wright Medical.  In order to induce such employees to switch to Paragon 28, they were often given enhanced title and compensation.

100.     Upon information and belief, Paragon 28 deliberately targeted and knowingly solicited the Former Wright Medical Employees in order to induce them to the breach their obligations under their respective Confidentiality Agreements to unfairly benefit from the training and experience Wright Medical invested at great expense in the Former Wright Medical Employees and to gain access to Wright Medical's confidential material and trade secret information, including Wright Medical's customer lists, product pricing lists, and product design information, including engineering drawings and specifications.

101.     As set forth above, Paragon 28's website makes clear it is a direct competitor of Wright Medical's Foot and Ankle Division, and that it also affirmatively seeks to recruit and hire employees like the Former Wright Medical Sales Representatives who have precisely the type of experience, training, education, and respect in the marketplace – which they gained due to their employment with Wright Medical – that will give Paragon 28 a competitive advantage – all without Paragon 28 making the investment that Wright Medical made in these Former Wright Medical Sales Representatives.

102.     At the time these Former Wright Medical Sales Representatives began their employment with Paragon 28, the Former Wright Medical Sales Representatives possessed

physical copies of and/or had knowledge of Wright Medical's proprietary, confidential, and/or trade secret information, and they acted without authorization to misappropriate and convert that information for the benefit and financial gain of their new employer, Paragon 28. These actions of the Former Wright Medical Sales Representatives were orchestrated and/or sanctioned by Paragon 28, and Paragon 28 has accepted the benefit and financial gain resulting therefrom.

103.      As a direct result of Paragon 28's actions, sales of Wright Medical's bone plating systems in those territories in which the Former Wright Medical Sale Representatives previously worked have declined, were lost and/or did not increase commensurate with increased market demand following the departure of many of the Former Wright Medical Employees. Many of the sales accounts Wright Medical lost and/or declined were transferred or acquired unfairly by Paragon 28. With respect to at least six of the Former Wright Medical Sales Representatives, Wright Medical immediately lost business in whole or in part to more than eighty customers throughout regions across the entire U.S. to Paragon 28.

104.      Wright Medical has recently learned that the Former Wright Medical Sales Representatives had been sending Wright Medical's proprietary, confidential, and trade secret information from their work email accounts to personal email accounts prior to their departure from Wright Medical.

105.      For example, as set forth above, **Luke Gordon** was a former Core Foot and Ankle Representative for Wright Medical's Lower Extremity and related Biologics business. **Gordon** worked for Wright Medical from October 10, 2011 until on or around July 21, 2017, at which time he immediately went to work for Paragon 28 as an independent distributor.

106.      In addition to providing **Rosenthal** confidential Wright Medical customer contact and pricing information concerning Wright Medical customers, Wright Medical has

recently learned that **Gordon** had been sending other Wright Medical proprietary, confidential, and trade secret information from his work email account to a personal gmail account for use at Paragon 28.

107.      One such incident occurred on Saturday, April 29, 2017. **Gordon** forwarded a highly confidential Wright Medical "Ankle Charcot Comp Plan" from his work email (Luke.Gordon@wright.com) to his personal email account (lukegordon@gmail.com). And on June 26, 2017, **Gordon** forwarded a second highly confidential Wright Medical "Ankle Charcot Comp Plan" from his work email (Luke.Gordon@wright.com) to his personal email account (lukegordon@gmail.com).

108.      **Gordon** shared Wright Medical's proprietary, confidential and trade secret information with other Paragon 28 employees and worked in concert with other Paragon employees to hide and conceal **Gordon's** breach of his obligations not to disclose confidential Wright Medical information and trade secrets.

109.      **Gordon** shared Wright Medical's proprietary, confidential and trade secret pricing information in order to permit other Paragon 28 employees to misappropriate and unfairly compete directly on price with Wright Medical's competitors.

110.      **Adam Yoder** is another former Wright Medical Sales Representative who has misappropriated and/or improperly kept proprietary, confidential, and trade secret materials and information of Wright Medical after terminating his employment with Wright Medical.

111.      **Yoder** was a former District Sales Leader for Wright Medical's Lower Extremity and related Biologics business. He oversaw sales in the "Lonestar" sales territory covering Austin Metro, San Metro, Waco and Odessa sales territories in Texas.

112.     **Yoder** was originally hired as a sales representative for BioMimetic Therapeutics, Inc., in September of 2012.  **Yoder** became a Wright Medical employee in July 2015 following Wright Medical's acquisition of BioMimetic Therapeutics.   **Yoder** executed a "Confidential Information and Inventions Agreement" with BioMimetics, which was later assigned to Wright Medical following the acquisition.  Upon starting work at Wright Medical, **Gordon** executed a "Wright Employment Restrictions Agreement" containing valid and enforceable "non-competition," "non-solicitation" and "confidentiality" provisions.

113.     **Yoder** began work for Wright Medical on July 4, 2015.   During his employment, **Yoder** became privy to certain of Wright Medical's trade secret information, including, among other things, cost and pricing information including Wright Medical's appetite and ability to provide potential discounts and reductions.

114.     **Yoder** separated from his employment with Wright Medical on May 1, 2018, and immediately went to work for Paragon 28 as a Regional Sales Manager – Midwest U.S.

115.     **Yoder's** "Linked-In" on-line profile describes his current position with Paragon 28 as "Medical device professional with experience in sales, sales management, marketing, new product launches, distribution acquisition, start-up ventures, orthopedic sports medicine, foot and ankle, hand and wrist, biologics, training and development."  As such, **Yoder** is working in the same or substantially the same role as previously held for Wright Medical beginning immediately after terminating employment with Wright Medical.

116.     After **Yoder** separated his employment from Wright Medical, Wright Medical became aware that **Yoder** had been sending Wright Medical's confidential, highly confidential and trade secret information from his work email account to a personal gmail account before he separated from employment at Wright Medical.

117.     One such incident occurred at 10:35 a.m. on the morning of Thursday January 25, 2018.   **Yoder** forwarded a PowerPoint presentation from his work email (adam.yoder@wright.com) to his personal email account (adameyoder@gmail.com) containing files related to sales and performance data for the sales territory he was assigned to oversee while at Wright Medical.

118.     The PowerPoint presentation **Yoder** sent to his personal email account, entitled "Lonestar:  #1 in 2018" contains Wright Medical's proprietary, confidential, and trade secret data analysis including detailed growth and decline analysis, year-over-year sales numbers, market analysis and growth trajectories, core sales performance for different key market areas, including TARCOT, CORE BIO, and CORE F/A.   The Lonestar PowerPoint also provides performance and demand numbers based on specific representatives within specified geographic areas.  This includes "revenue-per-representative" and "average cases-per-day-per-representative" numbers and a specific identification of the top surgeons in the Lonestar region by sales, including their 2016 and 2017 purchasing numbers and trends.  Notably, the Lonestar PowerPoint contains a confidentiality legend that states "Contents are Confidential – Wright Internal Use Only."

119.     Another such incident occurred on Friday, February 9, 2018 at 12:24 p.m. when **Yoder** forwarded a highly confidential copy of Wright Medical's sales "Forecasting Slides" from his work email account to his personal email account (adameyoder@gmail.com).   These forecasting slides included detailed sales information related to case counts, net revenue, sales trends and quota information, as well as territory-specific sales information for Wright Medical's foot and ankle repair products.

120.     Upon information and belief, **Yoder** worked in concert with other Paragon employees to hide and conceal **Yoder's** breach of his obligations not to disclose confidential

Wright Medical information and trade secrets.  Such information clearly provided **Yoder**, and thusly Paragon, a significant and unfair competitive advantage.

121.     **Matthew Brock Howard** is another former Wright Medical Sales Representative who has misappropriated and/or improperly kept confidential, highly confidential and trade secret material and information of Wright Medical after terminating his employment with Wright Medical.

122.     **Howard** was a former Corporate Sales Manager for Wright Medical's Lower Extremity and related Biologics business.  He oversaw sales in the Chicago area sales territory.

123.     **Howard** was hired as a sales representative for Wright Medical on July 14, 2016.  Upon starting work at Wright Medical, **Howard** executed a "Confidentiality, Non-Competition, Non-Solicitation and Intellectual Property Rights Agreement" containing valid and enforceable "non-competition," "non-solicitation" and "confidentiality" provisions.

124.     **Howard** began work for Wright Medical in July 2016.  During his employment, **Howard** became privy to certain of Wright Medical's trade secret information, including, among other things, cost and pricing information including Wright Medical's appetite and ability to provide potential discounts and reductions.

125.     **Howard** separated from his employment with Wright Medical in June 2018, and immediately went to work for Paragon 28 as a Regional Sales Manager.  As such, **Howard** is working in same or substantially the same role as previously held for Wright Medical beginning immediately after terminating employment with Wright Medical.

126.     After **Howard** separated his employment from Wright Medical, Wright Medical became aware that **Howard** had been sending Wright Medical's confidential, highly

confidential and trade secret information from his work email account to a personal gmail account before he separated from employment at Wright Medical.

127.     One such incident occurred at 12:28 p.m. on the afternoon of Tuesday, March 20, 2018.  **Howard** sent an email from his work email (Brock.Howard@wright.com) to his personal email account (matthewbrockHoward@gmail.com) containing two Purchasing Orders in the sales territory he was assigned to while at Wright Medical.

128.     Those Purchasing Orders contain confidential, highly confidential, and trade secret data sales, pricing, and purchasing information for two Wright Medical customers.

129.     Upon information and belief, **Howard** worked in concert with other Paragon employees to hide and conceal **Howard's** breach of his obligations not to disclose confidential Wright Medical information and trade secrets.  Such information clearly provided **Howard**, and thusly Paragon, a significant and unfair competitive advantage.

130.     **Brandon Strange** is another former Wright Medical Sales Representative who has misappropriated and/or improperly kept confidential, highly confidential and trade secret material and information of Wright Medical after terminating his employment with Wright Medical.

131.     **Strange** was a former District Sales Director, U.S. Sales for Wright Medical's Lower Extremity and related Biologics business.  He oversaw sales in the North Carolina area sales territory.

132.     **Strange** was hired as a sales representative for Wright Medical in August 2012.  Upon starting work at Wright Medical, **Strange** executed a "Confidentiality, Non-Competition, Non-Solicitation and Intellectual Property Rights Agreement" containing valid and enforceable "non-competition," "non-solicitation" and "confidentiality" provisions.

133.     During his employment, **Strange** became privy to certain of Wright Medical's proprietary and confidential business information, including, among other things, customer lists, cost and pricing information, including Wright Medical's appetite and ability to provide potential discounts and reductions, and business plans including SWOT analysis for sales in Wright Medical's lower extremity division.

134.     **Strange** separated from his employment with Wright Medical in August 2018, and immediately went to work for Paragon 28 as a Regional Sales Manager.  As such, **Strange** is working in same or substantially the same role as previously held for Wright Medical beginning immediately after terminating employment with Wright Medical.

135.     After **Strange** separated his employment from Wright Medical, Wright Medical became aware that **Strange** had been sending Wright Medical's confidential, highly confidential and trade secret information from his work email account to a personal gmail account before he separated from employment at Wright Medical.

136.     One such incident occurred at 9:12 a.m. on the morning of Saturday, July 8, 2018.  **Strange** sent an email from his work email (Brandon.Strange@wright.com) to his personal email account (brandonstrange@gmail.com) forwarding a Wright Medical Business Plan labeled "3in90".

137.     That Business Plan contained confidential, highly confidential, and trade secret data including identification of Wright Medical's Strength, Weakness, Opportunities and Threats (S.W.O.T.) analyses for a certain sales territories.  This information identified potential new areas for expansion, opportunities for fostering and building new relationship with surgeon customers, short-term, mid-term, and long-term sales opportunities, specific surgeon users/customers of Wright Medical, and plans for future medical education directed at establishing new customers.

The Business Plan contains a legend on every page indicating that the Contents are Confidential – Wright Internal Use Only."

138.    After **Strange** separated his employment from Wright Medical, Wright Medical became aware that **Strange** had been sending Wright Medical's confidential, highly confidential and trade secret information from his work email account to a Dropbox account to which **Strange** still has access today.   Examples of Wright Medical's confidential, highly confidential and trade secret information that **Strange** sent to his Dropbox account include numerous price lists for hospitals for which **Strange** acted as Wright Medical's sales representative and price lists and drawings for Wright Medical's Inbone Total Ankle product.  **Strange** still has access to this Dropbox account even after terminating his employment with Wright Medical and commencing his employment for Paragon 28.

139.    Upon information and belief, **Strange** worked in concert with other Paragon employees to hide and conceal **Strange's** breach of his obligations not to disclose confidential Wright Medical information and trade secrets.  Such information clearly provided **Strange**, and thusly Paragon, a significant and unfair competitive advantage.

*140.*    Upon information and belief, the other Former Wright Medical Sales Representatives, including **Matt Jackson**, **Brandy Reid**, **Steve Farrell**, **Kat Watterson**, **Jason Popkin**, **John Shumaker**, **Zhao Guo**, **James Bench**, and **Phil Falcon**, possessed physical copies of and/or had knowledge of Wright Medical's proprietary, confidential, and/or trade secret information, and they acted without authorization to misappropriate and convert that information for the benefit and financial gain of their new employer, Paragon 28.  The actions of these Former Wright Medical Sales Representatives were orchestrated and/or sanctioned by Paragon 28, and Paragon 28 has accepted the benefit and financial gain resulting therefrom.

***Paragon 28 Falsely Advertises***

141.     Paragon 28's commercial advertising and promotional material for its Gorilla and Baby Gorilla plating systems, distributed in interstate commerce, contain literally false statements and statements likely to mislead, confuse or deceive.

142.     For example, Paragon 28 falsely promotes its bone plating systems using doctors and KOLs known to be associated with Wright Medical.  For example, attached as Exhibit 19 is a Paragon 28 advertisement for a "cadaver course" intended to teach and educate surgeons performing "common and complex podiatric forefoot and hindfoot surgical procedures" as well as "expose the surgeon to new surgical techniques and latest trends in foot and ankle reconstruction."

143.     Among the "Anticipated Course Faculty" includes Christopher Hyer, DPM – a well-known and long-time Wright Medical KOL.  In fact, Dr. Hyer was a member of the surgeon design team that helped develop the surgical technique guide used in connection with Wright Medical's ORTHOLOC™ 3Di foot reconstruction system and is listed as an author on the ORTHOLOC™ 3Di Surgical Technique Guide.  *See* Exhibit 19.

144.     Dr. Hyer did not provide consent for Paragon 28 to use his name and picture in connection with this Paragon 28-sponsored cadaver course.  Moreover, at least one other KOL identified as "Anticipated Course Faculty" on Paragon 28's advertisement did not agree to be listed and did not participate in Paragon 28's "cadaver course."

145.     Paragon 28 advertises and promotes its "Cadaver Courses" via its e-commerce website www.paragon28.com.  Paragon 28 was aware that Dr. Hyer did not provide consent for Paragon 28 to use his name and picture in connection with this Paragon 28-sponsored cadaver course prior to publishing its advertisement, and knowingly and/or recklessly published its advertisement containing false information.

146.     Immediately after Paragon 28 used Dr. Hyer's name and picture to promote Paragon 28's cadaver course, Dr. Hyer received communications from other users of Wright Medical's plating systems inquiring whether he was converting to Paragon 28's foot and ankle products, and expressing confusion as to his association with Wright Medical.

147.     Paragon 28 is commercially exploiting and unfairly trading upon the fame, recognition, reputation, and extensive goodwill built up by Wright Medical in the Wright Medical KOLs, including Dr. Hyer and other Wright Medical KOLs, in order to reap the benefits of years of effort and investment by Wright Medical to create public recognition of these Wright Medical KOLs and to enhance Paragon 28's reputation in the industry.

148.     Yet further, as set forth above, Paragon 28 employees, including the Paragon 28 Founders, are using confidential and highly confidential information learned while they were employed at Wright Medical to unfairly induce Wright Medical surgeon consultants and KOLs to work for Paragon 28.

149.     Paragon 28's conduct is intentionally fraudulent, malicious, willful, and wanton.

**150.**     Paragon 28's acts complained of herein have been committed with knowledge that such acts are intended to cause confusion, cause mistake, or to deceive.

## COUNT ONE
## Direct and Indirect Infringement of the '457 Patent

151.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

152.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '457 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing

into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System and the Gorilla R3CON Lapidus plates, and the Baby Gorilla and Gorilla TUFFNEK screws used therewith (collectively, "the '457 Patent Accused Products").   Wright Medical's Preliminary Disclosure of Asserted Claims and Infringement Contentions served on August 8, 2018 (hereinafter, "Infringement Contentions") contain a chart demonstrating where each and every limitation of the asserted claims of the '457 Patent are met (either literally or under the doctrine of equivalents) by the '457 Patent Accused Products.   Wright Medical will serve amended Infringement Contentions on October 10, 2018.   Wright Medical expressly incorporates herein by reference with the same force and effect as if they were set forth herein in full text, its Infringement Contentions.

153.      In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of certain claims of the '457 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '457 Patent Accused Products knowing and intending that such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '457 Patent.   To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '457 Patent Accused Products in a manner that includes all of the limitations of the asserted claims.   *See e.g.,* Exhibits 11-13 and Wright Medical's Infringement Contentions.   As a result, use of the '457 Patent Accused Products by Paragon 28's customers and users directly infringes the '457 Patent.

154.      In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of certain claims of the '457 Patent by, *inter alia*, distributing,

manufacturing, marketing and selling orthopedic plating systems used to repair bones, including bone repairs in the foot and ankle, including the '457 Patent Accused Products.

155.     Paragon 28's acts constitute contributory infringement of the '457 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '457 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '457 Patent.  As a result, use of the '457 Patent Accused Products by Paragon 28's customers and users directly infringes the '457 Patent.

156.     Paragon 28's acts constitute induced and/or contributory infringement of the '457 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '457 Patent since at least the filing of this lawsuit.

157.     Paragon 28's acts constitute willful infringement of the '457 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '457 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '457 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '457 Patent and/or the application which issued as the '457 Patent (including a named inventor of the '457 Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '457 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

158.     Paragon 28 has had actual notice that its products infringe the '457 Patent for at least the reason that Paragon 28 was served with this Complaint.

159.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

160.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

161.     Paragon 28 will continue to infringe the '457 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

**COUNT TWO**
**Indirect Infringement of the '954 Patent**

162.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

163.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement, literally or under the doctrine of equivalents, of certain claims of the '954 Patent by, *inter alia*, distributing, marketing and selling the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System and the Gorilla R3CON Lapidus plates; Baby Gorilla and Gorilla TUFFNEK screws; Gorilla plate benders; and Baby Gorilla plate bending bars and plate bending pliers (collectively, the "'954 Patent Accused Products), knowing and intending that the '954 Patent Accused Products be used by Paragon 28's customers and users in a manner that infringes certain claims of the '954 Patent. To that end, each of the '954 Accused Products comprise a pre-contoured Y-shaped plate comprising a trunk and arms that meet the limitations required by the claims.  Paragon 28 provides instructions and teachings directing its customers and users to select the '954 Accused Products for use in a surgery to repair bones in the manner required by the asserted claims in the '954 Patent, including to use the Gorilla and Baby Gorilla plate bending devices to bend the '954 Accused Plates to an appropriate contour and securing the plates to bone using Baby Gorilla and Gorilla TUFFNEK screws.  *See e.g.,* Exhibits 11-13 and 15 and Wright Medical's Infringement Contentions.  As a result, Paragon 28's system and products have been used by its customers and users in a manner that directly infringes the '954 Patent.   Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '954 Patent are met (either literally or under the doctrine of equivalents) by the '954 Patent Accused Products.   Wright Medical will serve amended

Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

164.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of certain claims of the '954 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating used to repair bones, including bone repairs in the foot and ankle.  By way of example, these systems include the '954 Patent Accused Products.

165.     Paragon 28's acts constitute contributory infringement of the '954 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including the '954 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '954 Patent.  As a result, the '954 Patent Accused Products have been used by Paragon 28's customers and users in a manner that directly infringes the '954 Patent.

166.     Paragon 28's acts constitute induced and/or contributory infringement of the '954 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '954 Patent since at least the filing of this lawsuit.

167.     Paragon 28's acts constitute willful infringement of the '954 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '954 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '954 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '954 Patent

and/or the application which issued as the '954 Patent (including a named inventor of the '954 Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems, and their methods of use, while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '954 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

168.     Paragon 28 has had actual notice that its products infringe the '954 Patent for at least the reason that Paragon 28 was served with this Complaint.

169.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

170.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

171.     Paragon 28 will continue to infringe the '954 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT THREE
### Direct and Indirect Infringement of the '846 Patent

172.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

173.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '846 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System, the Gorilla R3CON Lapidus plates, the Gorilla R3CON Ankle Fracture anatomic fibular plates, and the Gorilla R3CON Ankle Fracture posterolateral tibia plates, and Baby Gorilla and Gorilla TUFFNEK screws (collectively "the '846 Accused Products).  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '846 Patent are met (either literally or under the doctrine of equivalents) by the '846 Patent Accused Products and are being served concurrently herewith. Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

174.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of certain claims of the '846 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '846 Accused Products, knowing and intending that components of such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '846 Patent.  To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '846 Accused Products in a manner that meets all of the

limitations of the asserted claims. *See e.g.,* Exhibits 11-13 and 16 and Wright Medical's Infringement Contentions. As a result, the '846 Patent Accused Products have been used by Paragon 28's customers and users in a manner that directly infringes the '846 Patent.

175.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of certain claims of the '846 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating used to repair bones, including bone repairs in the foot and ankle, including the '846 Accused Products.

176.     Paragon 28's acts constitute contributory infringement of the '846 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '846 Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '846 Patent.  As a result, use of the '846 Accused Products by Paragon 28's customers and users directly infringes the '846 Patent.

177.     Paragon 28's acts constitute induced and/or contributory infringement of the '846 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '846 Patent since at least the filing of this lawsuit.

178.     Paragon 28's acts constitute willful infringement of the '846 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '846 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '846 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '846 Patent and/or the application which issued as the '846 Patent and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been

and/or are employed by Paragon 28; (2) the '846 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

179.    Paragon 28 has had actual notice that its products infringe the '846 Patent for at least the reason that Paragon 28 was served with this Complaint.

180.    Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

181.    Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

182.    Paragon 28 will continue to infringe the '846 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT FOUR
## Direct and Indirect Infringement of the '848 Patent

183.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

184.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '848 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System, the Gorilla R3CON Lapidus plates, the Gorilla R3CON Ankle Fracture anatomic fibular plates, and the Gorilla R3CON Ankle Fracture posterolateral tibia plates, Baby Gorilla and Gorilla TUFFNEK locking, non-locking and compression screws, and at least four Gorilla drill guide options (collectively, "the '848 Patent Accused Products"), which include all of the limitations required by the asserted claims of the '848 Patent.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '848 Patent are met (either literally or under the doctrine of equivalents) by the '848 Patent Accused Products and are being served concurrently herewith.  Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

185.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of certain claims of the '848 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '848 Patent Accused Products, knowing and intending that components of such orthopedic plating systems be used by Paragon 28's customers and users in a

manner that infringes the '848 Patent.  To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '848 Patent Accused Products in orthopedic plating systems that include all of the limitation of the asserted claims.  *See e.g.,* Exhibits 11-13 and 16 and Wright Medical's Infringement Contentions.  As a result, use of the '848 Patent Accused Products by Paragon 28's customers and users directly infringes the '848 Patent.

186.      In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of at least Claim 1 of the '848 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating used to repair bones, including bone repairs in the foot and ankle, including the '848 Patent Accused Products.

187.      Paragon 28's acts constitute contributory infringement of the '848 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating, including at least the '848 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '848 Patent.  As a result, use of the '848 Patent Accused Products by Paragon 28's customers and users directly infringes the '848 Patent.

188.      Paragon 28's acts constitute induced and/or contributory infringement of the '848 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '848 Patent since at least the filing of this lawsuit.

189.      Paragon 28's acts constitute willful infringement of the '848 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '848 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '848 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '848 Patent

and/or the application which issued as the '848 Patent (including a named inventor of the '848 Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '848 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

190.    Paragon 28 has had actual notice that its products infringe the '848 Patent for at least the reason that Paragon 28 was served with this Complaint.

191.    Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

192.    Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

193.    Paragon 28 will continue to infringe the '848 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

**COUNT FIVE**
**Direct and Indirect Infringement of the '443 Patent**

194.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

195.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '443 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Gorilla® R3CON Lapidus plates, the Gorilla R3CON Ankle Fracture anatomic fibular plates, the Gorilla R3CON Ankle Fracture posterolateral tibia plates, and the Gorilla R3CON NC Fusion plates, the Gorilla TUFFNEK locking, non-locking and compression screws and a drill guide (collectively, "the '443 Patent Accused Products") that include all of the limitations required by the asserted claims of the '443 Patent.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '443 Patent are met (either literally or under the doctrine of equivalents) by the '443 Patent Accused Products and are being served concurrently herewith. Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

196.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of certain claims of the '443 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including the '443 Patent Accused Products, knowing and intending that components of such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '443 Patent.  To that end, Paragon 28 provides instructions and teachings directing its

customers and users to use at least the '443 Patent Accused Products in orthopedic plating systems that include all of the limitations claimed in at least Claims 1, 22 and 26. *See e.g.,* Exhibits 11, 13-15 and Wright Medical's Infringement Contentions. As a result, use of the '443 Patent Accused Products by Paragon 28's customers and users directly infringes the '443 Patent.

197.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of the '443 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating systems used to repair bones, including bone repairs in the foot and ankle. By way of example, these systems include the '443 Patent Accused Products.

198.     Paragon 28's acts constitute contributory infringement of the '443 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '443 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '443 Patent. As a result, use of the '443 Patent Accused Products by Paragon 28's customers and users directly infringes the '443 Patent.

199.     Paragon 28's acts constitute induced and/or contributory infringement of the '443 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '443 Patent since at least the filing of this lawsuit.

200.     Paragon 28's acts constitute willful infringement of the '443 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '443 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '443 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '443 Patent and/or the application which issued as the '443 Patent (including a named inventor of the '443

Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '443 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

201.     Paragon 28 has had actual notice that its products infringe the '443 Patent for at least the reason that Paragon 28 was served with this Complaint.

202.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

203.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

204.     Paragon 28 will continue to infringe the '443 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT SIX
### Direct and Indirect Infringement of the '251 Patent

205.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

206.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '251 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System and the Gorilla R3CON Lapidus plates, and the Baby Gorilla and Gorilla TUFFNEK locking screws (collectively, "the '251 Patent Accused Products") that include all of the limitations required by the surgical plate systems recited in the asserted claims of the '251 Patent.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '251 Patent are met (either literally or under the doctrine of equivalents) by the '251 Patent Accused Products and are being served concurrently herewith.  Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

207.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing the asserted claims of the '251 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, certain products, including but not limited to the '251 Patent Accused Products, which include all of the limitations required by the surgical plates recited in asserted claims of the '251 Patent.

208.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of at the asserted

claims of the '251 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '251 Patent Accused Products, knowing and intending that such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '251 Patent.  To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '251 Patent Accused Products in a manner satisfying all of the limitations of the asserted claims.  *See e.g.,* Exhibits 11-13 and Wright Medical's Infringement Contentions.  As a result, use of the '251 Patent Accused Products by Paragon 28's customers and users directly infringes the '251 Patent.

209.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of the asserted claims of the '251 Patent by, *inter alia,* distributing, manufacturing, marketing and selling orthopedic plating systems used to repair bones, including bone repairs in the foot and ankle, including the '251 Patent Accused Products.

210.     Paragon 28's acts constitute contributory infringement of the '251 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '251 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '251 Patent.  As a result, use of the '251 Patent Accused Products by Paragon 28's customers and users directly infringes the '251 Patent.

211.     Paragon 28's acts constitute induced and/or contributory infringement of the '251 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '251 Patent since at least the filing of this lawsuit.

212.     Paragon 28's acts constitute willful infringement of the '251 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '251 prior to the filing of this lawsuit and/or was willfully blind to the existence of the '251 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '251 Patent and/or the application which issued as the '251 Patent (including a named inventor of the '251 Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '251 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

213.     Paragon 28 has had actual notice that its products infringe the '251 Patent for at least the reason that Paragon 28 was served with this Complaint.

214.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

215.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

216.     Paragon 28 will continue to infringe the '251 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at

law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT SEVEN
### Indirect Infringement of the '252 Patent

217.      Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

218.      In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of at certain claims of the '252 Patent by, *inter alia*, distributing, marketing and selling the Baby Gorilla PROMO Triplanar Hallux Valgus Correction System; the Gorilla R3CON Lapidus plates; the Gorilla R3CON NC Fusion plates; the Gorilla R3CON Ankle Fracture anatomic fibular plates; and the Gorilla R3CON posterolateral tibia plates; and Baby Gorilla and Gorilla TUFFNEK locking screws (collectively, "the '252 Patent Accused Products"), knowing and intending that they are to be used by Paragon 28's customers and users in a manner that infringes the asserted claims of the '252 Patent.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '252 Patent are met (either literally or under the doctrine of equivalents) by the '252 Patent Accused Products and are being served concurrently herewith.   Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

219.      Paragon 28 provides instructions and teachings directing its customers and users to perform surgery on a patient, including positioning the '252 Accused Plates on bone and inserting the first and second locking screws in the manner required by at least Claims 1 and 17 of

the '252 Patent.  *See e.g.,* Exhibits 11-13, 15 and 16 and Wright Medical's Infringement

Contentions.  As a result, the '252 Patent Accused Products have been used by its customers and

users in a manner that directly infringes the '252 Patent.

220.      In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is

contributing to the infringement of the asserted claims of the '252 Patent by, *inter alia*, distributing,

manufacturing, marketing and selling orthopedic plating systems used to repair bones, including

bone repairs in the foot and ankle, including the '252 Patent Accused Products.

221.      Paragon 28's acts constitute contributory infringement of the '252 Patent

because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is

manufacturing, offering to sell and selling, within the United States orthopedic plating systems,

including the '252 Patent Accused Products, which are not staple articles or commodities of

commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or

especially adapted for use in infringement of the '252 Patent.  As a result, the '252 Patent Accused

Products have been used by its customers and users in a manner that directly infringes the '252

Patent.

222.      Paragon 28's acts constitute induced and/or contributory infringement of the

'252 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '252 Patent

since at least the filing of this lawsuit.

223.      Paragon 28's acts constitute willful infringement of the '252 Patent because,

among other reasons, Paragon 28 has had actual knowledge of the '252 Patent prior to the filing

of this lawsuit and/or was willfully blind to the existence of the '252 Patent because, among other

reasons, (1) former Wright Medical employees who had actual knowledge of the '252 Patent

and/or the application which issued as the '252 Patent (including a named inventor of the '252

Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems, and their methods of use, while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '252 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

224.     Paragon 28 has had actual notice that its products infringe the '252 Patent for at least the reason that Paragon 28 was served with this Complaint.

225.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

226.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

227.     Paragon 28 will continue to infringe the '252 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT EIGHT
## Direct and Indirect Infringement of the '253 Patent

228.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

229.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, certain claims of the '253 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System, the Gorilla R3CON MTP plates, the Gorilla R3CON Lapidus plates, the Gorilla R3CON Ankle Fracture anatomic fibular plates, the Gorilla R3CON Ankle Fracture posterolateral tibia plates, and the Gorilla R3CON NC Fusion plates, and Baby Gorilla and Gorilla TUFFNEK locking screws (collectively, "the '253 Patent Accused Products") that include all of the limitations required by the asserted claims of the '253 Patent.   Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '253 Patent are met (either literally or under the doctrine of equivalents) by the '253 Patent Accused Products and are being served concurrently herewith.   Wright Medical will serve amended Infringement Contentions on October 10, 2018. Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

230.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing at least the asserted claims of the '253 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, certain products, including but not limited to the '253 Patent Accused Products that include all of the limitations required by the surgical plates recited the asserted claims of the '253 Patent.

231.      In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of the asserted claims of the '253 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '253 Patent Accused Products, knowing and intending that such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '253 Patent.  To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '253 Patent Accused Products in surgical plate systems that include all of the limitations claimed in the asserted claims.  *See e.g.,* Exhibits 11-16 and Wright Medical's Infringement Contentions.  As a result, use of the '253 Patent Accused Products by Paragon 28's customers and users directly infringes the '253 Patent.

232.      In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of the asserted claims of the '253 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating systems used to repair bones, including bone repairs in the foot and ankle, including the '253 Patent Accused Products.

233.      Paragon 28's acts constitute contributory infringement of the '253 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '253 Patent Accused Products, which are not staple articles or commodities of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '253 Patent.  As a result, use of the '253 Patent Accused Products by Paragon 28's customers and users directly infringes the '253 Patent.

234.     Paragon 28's acts constitute induced and/or contributory infringement of the '253 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '253 Patent since at least the filing of this lawsuit.

235.     Paragon 28's acts constitute willful infringement of the '253 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '253 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '253 Patent and/or the application which issued as the '253 Patent (including a named inventor of the '253 Patent) because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '253 Patent and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '253 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

236.     Paragon 28 has had actual notice that its products infringe the '253 Patent for at least the reason that Paragon 28 was served with this Complaint.

237.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

238.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

239.     Paragon 28 will continue to infringe the '253 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT NINE
### Direct and Indirect Infringement of the '278 Patent

240.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

241.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing, literally or under the doctrine of equivalents, at least certain claims of the '278 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Baby Gorilla PROMO™ Triplanar Hallux Valgus Correction System, the Gorilla R3CON MTP plates, the Gorilla R3CON Lapidus plates, the Gorilla R3CON NC Fusion plates, the Gorilla R3CON Ankle Fracture anatomic fibular plates, and the Gorilla R3CON posterolateral tibia plates, Baby Gorilla and Gorilla TUFFNEK locking screws (collectively, "the '278 Patent Accused Products") that include all of the limitations required by the plate recited in the asserted claims of the '278 Patent.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '278 Patent are met (either literally or under the doctrine of equivalents) by the '278 Patent Accused Products and are being served concurrently herewith. Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

242.     In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing at least the asserted claims of the '278 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, certain products, including but not limited to the '278 Patent Accused Products that include all of the limitations required by the asserted claims of the '278 Patent.

243.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement and is knowingly and actively inducing infringement of at least the asserted claims of the '278 Patent by, *inter alia*, distributing, marketing and selling certain orthopedic plating systems, including but not limited to the '278 Patent Accused Products, knowing and intending that such orthopedic plating systems be used by Paragon 28's customers and users in a manner that infringes the '278 Patent.  To that end, Paragon 28 provides instructions and teachings directing its customers and users to use at least the '278 Patent Accused Products in surgical plate systems that include all of the limitations claimed in the asserted claims.  *See* Exhibits 11-16 and Wright Medical's Infringement Contentions.  As a result, use of the '278 Patent Accused Products by Paragon 28's customers and users directly infringes the '278 Patent.

244.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of at least the asserted claims of the '278 Patent by, *inter alia*, distributing, manufacturing, marketing and selling orthopedic plating systems used to repair bones, including bone repairs in the foot and ankle, including the '278 Patent Accused Products.

245.     Paragon 28's acts constitute contributory infringement of the '278 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States orthopedic plating systems, including at least the '278 Patent Accused Products, which are not staple articles or commodities

of commerce suitable for non-infringing use, and are known by Paragon 28 to be especially made or especially adapted for use in infringement of the '278 Patent.  As a result, use of the '278 Patent Accused Products by Paragon 28's customers and users directly infringes the '278 Patent.

246.     Paragon 28's acts constitute induced and/or contributory infringement of the '278 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '278 Patent since at least the filing of this lawsuit.

247.     Paragon 28's acts constitute willful infringement of the '278 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '278 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '278 Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '278 Patent and/or the application which issued as the '278 Patent (including a named inventor of the '278 Patent) and the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di orthopedic plating systems while employed by Wright Medical have been and/or are employed by Paragon 28; (2) the '278 Patent is associated with Wright Medical's orthopedic plating systems on Wright Medical's virtual marking page; and/or (3) Paragon 28 represented to the FDA that the MAXLOCK EXTREME and ORTHOLOC™ 3Di plating systems are substantially equivalent to Paragon 28's ParaLock Plating System which was renamed as the Gorilla Plating System.

248.     Paragon 28 has had actual notice that its products infringe the '278 Patent for at least the reason that Paragon 28 was served with this Complaint.

249.     Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

250.     Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's infringing acts have caused damage to Wright Medical, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

251.     Paragon 28 will continue to infringe the '278 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT TEN
### Direct and Indirect Infringement of the '710 Patent

252.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

253.     Paragon 28 manufactures, distributes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, the Gorilla® Caspar Device as part of its Gorilla R3CON Plating System instrumentation.  An example of one of the accused Gorilla® Caspar Device is set forth in Paragon's advertising brochures and shown below:



*See* Exhibit 11, p. 7.

254.      Paragon 28's Gorilla® Caspar Device is a copy of the X-TRACK orthopedic compression/distraction instrument that Wright Medical developed and patented (shown below):



FIG. 1

*See* Exhibit 10, Fig. 1.

255.      In violation of 35 U.S.C. § 271(a), Paragon 28 has infringed and is infringing at least the asserted claims of the '710 Patent by manufacturing, distributing, using, offering to sell, and/or selling within the United States, and/or by importing into the United States, the Gorilla® Caspar Device.  Wright Medical's Infringement Contentions served on August 8, 2018 contain a chart demonstrating where each and every limitation of the asserted claims of the '710 Patent are met (either literally or under the doctrine of equivalents) by the '710 Patent Accused Products and are being served concurrently herewith.  Wright Medical will serve amended Infringement Contentions on October 10, 2018.  Wright Medical expressly incorporates herein by reference its Infringement Contentions with the same force and effect as if they were set forth herein in full text.

256.     In violation of 35 U.S.C. § 271(b), Paragon 28 has knowingly and actively induced infringement, and is knowingly and actively inducing infringement, of at least the asserted claims of the '710 Patent by, *inter alia*, distributing, marketing and selling the Gorilla® Caspar Device, knowing and intending that it be used by Paragon 28's customers and users. To that end, Paragon 28 provides instructions and teachings directing its customers and users to use the Gorilla Caspar Device. *See* Exhibit 11 and Wright Medical's Infringement Contentions. As a result, use of Paragon 28's Gorilla Caspar Device by its customers and users directly infringes the '710 Patent.

257.     In violation of 35 U.S.C. § 271(c), Paragon 28 has contributed and is contributing to the infringement of at least the asserted claims of the '710 Patent by, *inter alia*, distributing, manufacturing, marketing and selling the Gorilla® Caspar Device.

258.     Paragon 28's acts constitute contributory infringement of the '710 Patent because, among other reasons, Paragon 28 has manufactured, offered to sell and sold, and is manufacturing, offering to sell and selling, within the United States the Gorilla® Caspar Device, which is not a staple article or commodity of commerce suitable for non-infringing use, and is known by Paragon 28 to be especially made or especially adapted for use in infringement of the '710 Patent. As a result, use of the Gorilla Caspar Device by Paragon 28's customers and users directly infringes the '710 Patent.

259.     Paragon 28's acts constitute induced and/or contributory infringement of the '710 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '710 Patent since at least the filing of this lawsuit.

260.     Upon information and belief, Paragon 28's acts constitute willful infringement of the '710 Patent because, among other reasons, Paragon 28 has had actual knowledge of the '710 Patent prior to the filing of this lawsuit and/or was willfully blind to the existence of the '710

Patent because, among other reasons, (1) former Wright Medical employees who had actual knowledge of the '710 Patent and/or the application which issued as the '710 Patent and the Gorilla® Caspar Device while employed by Wright Medical have been and/or are employed by Paragon 28; and/or (2) the Gorilla® Caspar Device is a copy of the instrument described, illustrated and claimed in the '710 Patent.

261.    Paragon 28 has had actual notice that its Gorilla Caspar Device infringes the '710 Patent for at least the reason that Paragon 28 was served with this Complaint.

262.    Paragon 28's infringing acts therefore have been and are willful and Wright Medical is therefore entitled to enhanced damages under 35 U.S.C. § 284 and attorney's fees and costs under 35 U.S.C. § 285.

263.    Paragon 28 has derived and received, and will continue to derive and receive, gains, profits and advantages from the aforesaid acts of infringement in an amount not presently known to Wright Medical.  Paragon 28's Caspar Device is included in every Gorilla® R3CON Plating System sold (including *inter alia* the Gorilla Lapidus Arthrodesis System, the Gorilla MTP Plating System, the Gorilla NC Fusion Plating System, and the Gorilla Ankle Fracture Plating Systems).  Paragon 28's infringing acts have caused damage to Wright Medical, including by inducing sales of Paragon 28's Gorilla® R3CON Plating Systems, and Wright Medical is entitled to monetary relief in an amount to be determined at trial.

264.    Paragon 28 will continue to infringe the '710 Patent unless permanently enjoined by this Court.  As a result of Paragon 28's infringing conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Wright Medical is therefore entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

## COUNT ELEVEN
### Misappropriation of Trade Secrets under
### the Federal Defend Trade Secrets Act 18 U.S.C. § 1836

265.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

266.     Paragon 28 acted without authorization to misappropriate Wright Medical's confidential, highly confidential and trade secret information.

267.     Among the confidential, highly confidential and trade secret information misappropriated by Paragon 28 includes:

- Product cost and pricing information, including pricing strategies, Wright Medical's appetite and ability to provide potential discounts and reductions, customer demand and purchasing information, and the terms of customer and supplier contracts

- Distribution and supply agreements, including pricing, contract terms and logistics methods

- Customer information, including customer lists and networks, prospect identities, contact information, surgeon status and follow-up steps

- Market information, including business objectives, strategic direction, trend information and forecasting information

- Sales representative information, including education and technical training compensation and performance information

- Product design information for the MAXLOCK™ plating systems, the ORTHOLOC™ 3Di plating systems and the X-TRACK instrumentation, including design dimensions, engineering drawings and specifications

- Knowledge of Wright Medical's surgical consultants/KOLs, including consulting contract provisions, including ownership of IP and compensation

268.     Paragon 28 was aware of the Former Wright Medical Employees' misappropriation of Wright Medical's proprietary, confidential, and trade secret information as described above, and they knowingly and actively participated in, substantially assisted, or endorsed the Former Wright Medical Employees' use of that material and information.

269.     On information and belief, Paragon 28 encouraged and promoted this activity with full knowledge of the Former Wright Medical Employees' legal obligations under their Confidentiality Agreements with Wright Medical, and they intended to assist and benefit from the Former Wright Medical Employee's wrongful actions.

270.     Wright Medical's trade secrets are confidential and Wright Medical takes and has taken measures to protect the confidential nature of its confidential, highly confidential and trade secret information.

271.     Wright Medical's confidential, highly confidential and trade secret information derive economic value from their confidential nature.

272.     Wright Medical's confidential, highly confidential and trade secret information relates to products used in, and intended for use in, interstate commerce, including products intended for approval by the United States FDA to market the product or products throughout the United States.

273.     As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's confidential, highly confidential and trade secret information, Wright Medical has been, and will continue to be, irreparably harmed.

274.     As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's confidential, highly confidential and trade secret information, Wright Medical has suffered, and will continue to incur, monetary damages.

275.     As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's confidential, highly confidential and trade secret information, Paragon 28 has been unjustly enriched.

276.     Paragon 28 willfully and maliciously misappropriated Wright Medical's confidential, highly confidential and trade secret information.

277.     Based on Paragon 28's willful and malicious misappropriation of Wright Medical's confidential, highly confidential and trade secret information, Wright Medical is entitled to recover exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3)(C), (D).

## COUNT TWELVE
### Misappropriation of Trade Secrets under
### the Colorado Uniform Trade Secrets Act C.R.S. § 7-74-102(4)

278.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

279.     Paragon 28 acted without authorization to misappropriate Wright Medical's trade secret information.

280.     Among the confidential, highly confidential and trade secret information misappropriated by Paragon 28 includes:

- Product cost and pricing information, including pricing strategies, Wright Medical's appetite and ability to provide potential discounts and reductions, customer demand and purchasing information, and the terms of customer and supplier contracts

- Distribution and supply agreements, including pricing, contract terms and logistics methods

- Customer information, including customer lists and networks, prospect identities, contact information, surgeon status and follow-up steps

- Market information, including business objectives, strategic direction, trend information and forecasting information

- Sales representative information, including education and technical training compensation and performance information

- Product design information for the MAXLOCK™ plating system, ORTHOLOC™ 3Di plating system and the X-TRACK instrumentation, including design dimensions, engineering drawings and specifications

- Knowledge of Wright Medical's surgical consultants/KOLs, including consulting contract provisions, including ownership of IP and compensation

281.    Wright Medical's trade secrets are confidential and Wright Medical takes and has taken reasonable measures to protect the confidential nature of its trade secret information.

282.    Wright Medical's trade secret information is of economic value.

283.    Paragon 28, at the time it acquired, disclosed or used Wright Medical's trade secret information, knew or had reason to know that such acquisition, use or disclosure was through improper means and without Wright Medical's consent, including without limitation that it was acquired through former Wright Medical employees who had a duty to maintain the secrecy or limit the use of the Wright Medical trade secret information.

284.    Paragon 28 misappropriated Wright Medical's trade secret information in violation of C.R.S. § 7-74-704, *et seq.*

285.    Paragon 28's acts in misappropriating Wright Medical's trade secret information were attended by fraud, malice, and/or were in willful and wanton disregard for Wright Medical's rights, thus justifying an award of exemplary damages.

286.    As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's trade secret information, Wright Medical has been, and will continue to be, irreparably harmed.

287.    As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's trade secret information, Wright Medical has suffered, and will continue to incur, monetary damages, including the actual loss caused by Paragon 28's misappropriation.

288.    As a direct and proximate result of Paragon 28's misappropriation of Wright Medical's trade secret information, Paragon 28 has been unjustly enriched.

289.     Based on Paragon 28's willful and malicious misappropriation of Wright Medical's trade secret information, Wright Medical is entitled to recover its attorneys' fees.

## COUNT THIRTEEN
### Federal Unfair Competition under the Lanham Act (15 U.S.C. § 1125(A)(1))

290.     Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

291.     Paragon 28, by engaging in the acts described above, are and have been unlawfully competing with Wright Medical.

292.     Paragon 28 has engaged in unfair competition by unlawfully using Wright Medical's proprietary information belonging to Wright Medical, engaging in other acts and practices that are actionable under federal law, and engaging in business practices that hinder, rather than promote, competition in the market, and are likely to create confusion in the marketplace as to the origin and designation of products in development by Paragon 28.

293.     As set forth above, in view of their prior employment at Wright Medical, the Paragon 28 Founders were aware that the Former Wright Medical Sales Representatives had executed Employment Agreements with Wright Medical containing Confidentiality, Non-Competition and Non-Solicitation provisions.

294.     Upon organizing Paragon 28, the Paragon 28 Founders deliberately targeted and knowingly solicited the Former Wright Medical Sales Representatives, using confidential and highly confidential information learned while they were employed at Wright Medical, in order to induce them to the breach their obligations under their respective Employment Agreements.  Paragon 28's actions are intended to unfairly induce the Former Wright Medical Sales Representatives to work for Paragon 28 without having to incur the time and expense of educating and training these sales professions.

295.     Paragon 28 is a direct competitor of Wright Medical's lower extremities division, and affirmatively seeks to recruit and hire employees like the Former Wright Medical Sales Representatives who have precisely the type of knowledge, experience, training, education, and respect in the marketplace that will give Paragon 28 a competitive advantage.   That competitive advantage is unfair and unlawful as applied to the Former Wright Medical Sales Representatives to the extent their competition is in violation of their respective Confidentiality Agreements with Wright Medical.

296.     Paragon 28 has also disseminated and caused others to disseminate false and misleading statements concerning sponsorship by Wright Medical KOLs into interstate commerce.  Paragon 28's "Cadaver Course" materials constitute false and deceptive advertising and are likely to mislead, and/or have misled, consumers about the nature, characteristics, quality or endorsement of Paragon 28 plating products by known Wright Medical KOLs.  Paragon knew that its Cadaver Course materials contained false and deceptive statements concerning alleged participation by known Wright Medical KOLs.  These statements directly target Wright Medical and were intended to diminish or destroy Wright Medical's reputation, goodwill and market position.

297.     Paragon 28 is willfully, knowingly, and intentionally making false descriptions in advertising, and unless immediately enjoined by this Court, will continue to deceive, mislead and confuse consumers into believing that, among other things, Paragon 28's plating products are endorsed by known Wright Medical KOLs.  Paragon 28's false and deceptive advertising is intended to cause consumers to opt to do business with Paragon 28 instead of Wright Medical and trade on and diminish Wright Medical's goodwill and market position.  Indeed, Paragon 28 competes in the same market as Wright Medical.

298.     Paragon 28 employees, including **Bono** and **DaCosta**, are using Wright Medical's proprietary, confidential, and trade secret information to unfairly complete with Wright Medical, including to induce Wright Medical KOLs to switch to Paragon 28.

299.     The Paragon 28 Founders, acting on behalf of Paragon 28, deliberately targeted and knowingly solicited known Wright Medical KOLs, using confidential and highly confidential information, including the specific contract terms and licensing arrangements entered into between Wright Medical and certain surgical consultants and KOLs, they learned while they were employed at Wright Medical, in order to unfairly solicit and attempt to convert certain Wright Medical surgical consultants and KOLs to switch to similar roles at Paragon 28.

300.     Upon information and belief, Paragon 28, including **Bono** and/or **DaCosta**, have offered several of Paragon 28's KOLs equity positions and/or ownership interests in Paragon 28 in order to induce them to consult for Paragon 28.  To the extent that these KOLs are using Paragon 28 products in surgical procedures without disclosing their respective equity and/or ownership interest in the company, these KOLs, and thusly Paragon 28, may be violating various statutes and unfairly competing with Wright Medical.

301.     Paragon 28 is also unfairly competing in the marketplace by attempting to pass off Wright Medical's patented inventions as its own.  On December 12, 2012, Wright Medical filed its U.S. Patent Application No. 13/712,300, entitled "Orthopedic Compression/Distractor Device" (the "'300 Application").  Wright Medical's '300 Application was published on June 12, 2014, and eventually issued as U.S. Patent No. 9,078,710.

302.     As alleged above, on July 2, 2014 – less than one month after Wright Medical's '300 Application was published – **DaCosta** caused Paragon 28 to file U.S. Provisional Application No. 62/020,391 entitled "Moveable Bone Plate Implantation System and Method of

Use" ("the '391 Application").  The '391 Application names **DaCosta** as the sole inventor and purports to claim a bone compression instrument, and method of use, having identical or near identical design as that designed and developed by Wright Medical and claimed in Wright Medical's '300 Application.

303.    The timing and undeniable similarity between Wright Medical's '300 Application and Paragon 28's '391 Application demonstrates an attempt by Paragon 28 to unfairly compete and claim as its own inventions and designs created and owned by Wright Medical.

304.    Paragon's attempt to claim Wright Medical's inventions as its own are directly targeted at Wright Medical and was intended to trade upon, diminish or destroy Wright Medical's reputation, goodwill and market position.

305.    Paragon 28's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

306.    Paragon 28's conduct is causing immediate and irreparable injury to Wright Medical and to the valuable goodwill and reputation belonging Wright Medical, and will continue both to damage Wright Medical and to confuse the public unless enjoined by this Court. Wright Medical has no adequate remedy at law.

## COUNT FOURTEEN
## Common Law Unfair Competition

307.    Wright Medical incorporates the foregoing paragraphs by reference as though set forth fully herein.

308.    Paragon 28, by engaging in the acts described above, are and have been unlawfully competing with Wright Medical.

309.     As set forth above, in view of their prior employment at Wright Medical, the Paragon 28 Founders were aware that the Former Wright Medical Sales Representatives had executed Employment Agreements with Wright Medical containing Confidentiality, Non-Competition and Non-Solicitation provisions.

310.     Upon organizing Paragon 28, the Paragon 28 Founders deliberately targeted and knowingly solicited the Former Wright Medical Sales Representatives, using confidential and highly confidential information learned while they were employed at Wright Medical, in order to induce them to the breach their obligations under their respective Employment Agreements.  Paragon 28's actions are intended to unfairly induce the Former Wright Medical Sales Representatives to work for Paragon 28 without having to occur the time and expense of educating and training these sales professions.

311.     Paragon 28's is a direct competitor of Wright Medical's lower extremities division, and affirmatively seeks to recruit and hire employees like the Former Wright Medical Sales Representatives who have precisely the type of knowledge, experience, training, education, and respect in the marketplace that will give Paragon 28 a competitive advantage.  That competitive advantage is unfair and unlawful as applied to the Former Wright Medical Sales Representatives to the extent their competition is in violation of their respective Confidentiality Agreements with Wright Medical.

312.     Paragon 28 has also disseminated and caused other to disseminate false and misleading statements concerning sponsorship by Wright Medical KOLs into interstate commerce.  Paragon 28's "Cadaver Course" materials constitute false and deceptive advertising and are likely to mislead, and/or have misled, consumers about the nature, characteristics, quality or sponsorship or endorsement of Paragon 28 plating products by known Wright Medical KOLs.

Paragon knew that its Cadaver Course materials contained false and deceptive statements concerning alleged participation by known Wright Medical KOLs.  These statements directly target Wright Medical and were intended to diminish or destroy Wright Medical's reputation, goodwill and market position.

313.     Paragon 28 is willfully, knowingly, and intentionally making false descriptions in advertising, and unless immediately enjoined by this Court, will continue to deceive, mislead and confuse consumers into believing that, among other things, Paragon 28's plating products are endorsed by known Wright Medical KOLs.  Paragon 28's false and deceptive advertising is intended to cause consumers to opt to do business with Paragon 28 instead of Wright Medical and trade on and diminish Wright Medical's goodwill and market position.  Indeed, Paragon 28 competes in the same market as Wright Medical.

314.     Paragon 28 employees, including **Bono** and **DaCosta**, are using Wright Medical's confidential and highly confidential information to unfairly complete with Wright Medical, including to induce Wright Medical KOLs to switch to Paragon 28.

315.     The Paragon 28 Founders, acting on behalf of Paragon 28, deliberately targeted and knowingly solicited known Wright Medical KOLs, using confidential and highly confidential information, including the specific contract terms and licensing arrangements entered into between Wright Medical and certain surgical consultants and KOLs, they learned while they were employed at Wright Medical, in order to unfairly solicit and attempt to convert certain Wright Medical surgical consultants and KOLs to switch to similar roles at Paragon 28.

316.     Upon information and belief, Paragon 28, including **Bono** and/or **DaCosta**, have offered several of Paragon 28's KOLs equity positions and/or ownership interests in Paragon 28 in order to induce them to consult for Paragon 28.  To the extent that these KOLs are using

Paragon 28 products in surgical procedures without disclosing their respective equity and/or ownership interest in the company, these KOLs, and thusly Paragon 28, may be violating various statutes and unfairly competing with Wright Medical.

317.     Paragon 28 is also unfairly competing in the marketplace by attempting to pass off Wright Medical's patented inventions as its own.  On December 12, 2012, Wright Medical filed its U.S. Patent Application No. 13/712,300, entitled "Orthopedic Compression/Distractor Device" (the "'300 Application").  Wright Medical's '300 Application was published on June 12, 2014, and eventually issued as U.S. Patent No. 9,078,710.

318.     As alleged above, on July 2, 2014 – less than one month after Wright Medical's '300 Application was published – **DaCosta** caused Paragon 28 to file U.S. Provisional Application No. 62/020,391 entitled "Moveable Bone Plate Implantation System and Method of Use" ("the '391 Application").  The '391 Application names **DaCosta** as the sole inventor and purports to claim a bone compression instrument, and method of use, having identical or near identical design as that designed and developed by Wright Medical and claimed in Wright Medical's '300 Application.

319.     The timing and undeniable similarity between Wright Medical's '300 Application and Paragon 28's '391 Application demonstrates an attempt by Paragon 28 to unfairly compete and claim as its own inventions and designs created and owned by Wright Medical.

320.     Paragon's attempt to claim Wright Medical's inventions as its own are directly targeted at Wright Medical and was intended to trade upon, diminish or destroy Wright Medical's reputation, goodwill and market position.

321.     Paragon 28 has engaged in unfair competition by unlawfully using Wright Medical's proprietary information belonging to Wright Medical, engaging in other acts and practices that are actionable under state law, and engaging in business practices that hinder, rather than promote, competition in the market, and are likely to create confusion in the marketplace as to the origin and designation of products in development by Paragon 28.

322.     Paragon 28's conduct was and is intended to gain an unfair competitive advantage over Wright Medical.

323.     As a direct and proximate result of Paragon 28's conduct, Wright Medical has suffered, and will continue to suffer, irreparable harm.  Wright Medical has no adequate remedy at law.

324.     As a direct and proximate result of Paragon 28's conduct, Wright Medical has suffered, and will continue to incur, monetary damages.

325.     Paragon 28's conduct has been carried out with a specific intent to injure Wright Medical in the conduct of its business and to gain an unfair competitive advantage over Wright Medical.

326.     Paragon 28's tortious conduct was sufficiently wanton, willful and reckless as to justify an award of punitive damages.

## COUNT FIFTEEN
### Intentional Interference with Contracts

327.     Wright Medical repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

328.     At least **Albert DaCosta**, **Frank Bono**, **Lee Rosenthal**, **Matt Jarboe**, **Luke Gordon**, **Brandy Reid**, **Adam Yoder**, **Steve Farrell**, **Kat Watterson**, **Jason Popkin**, **John Shumaker**, **Brock Howard**, **Zhao Guo**, **Phil Falcon**, **James Bench** and **Brandon Strange**

knowingly, and for valid consideration, entered into written Confidentiality, Non-Competition, Non-Solicitation and/or Intellectual Property Rights Agreements (hereinafter "Confidentiality Agreements") with Wright Medical.

329.     Wright Medical invested substantial time, effort and expense in educating and providing specialized training the Former Wright Medical Sales Representatives in the business of Wright Medical including its product lines and general challenges and solutions relevant to the lower extremities market, to enable them to develop professional expertise and to foster valuable relationships and goodwill with Wright Medical customers.

330.     Paragon 28, including the Paragon 28 Founders, was aware that the Former Wright Medical Sales Representatives had executed valid and enforceable Confidentiality Agreements with Wright Medical.

331.     The Confidentiality Agreements are lawful contracts voluntarily and knowingly entered into by the Former Wright Medical Employees.

332.     Paragon 28 is a direct competitor of Wright's Foot and Ankle Division, and it affirmatively seeks to recruit and hire employees like the former Wright Medical Sales Representatives who have precisely the type of experience, training, education, and respect in the marketplace that will give Paragon a competitive advantage.

333.     Upon information and belief, Paragon 28 deliberately targeted and knowingly solicited the Former Wright Medical Employees in order to induce them to the breach their obligations under their respective Confidentiality Agreements.  Paragon 28's actions are intended to unfairly induce the Former Wright Medical Sales Representatives to work for Paragon 28 in order to avoid incurring the substantial time, effort and expense which Wright Medical invested in educating and training these sales professions.

334.     Paragon 28 orchestrated and/or sanctioned the Former Wright Medical Sales Representatives 28 to breach their Confidentiality Agreements, and Paragon 28 has accepted the benefit and financial gain resulting therefrom.

335.     As a direct and proximate result of Paragon 28's intentional interference with the Wright Medical's Confidentiality Agreements with the Former Wright Medical Sales Representatives, Wright Medical has suffered, and will continue to incur, monetary damages.

336.     As a direct and proximate result of Paragon 28's intentional interference with the Wright Medical's Confidentiality Agreements with the Former Wright Medical Sales Representatives, Wright Medical has suffered, and continues to suffer, irreparable harm.

337.     Paragon 28's conduct in interfering with Wright Medical's Confidentiality Agreements with the Former Wright Medical Sales Representatives was and is willful, intentional and unprivileged.

## COUNT SIXTEEN
## Civil Theft C.R.S. § 18-4-405

338.     Wright Medical repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

339.     Paragon 28 knew that Wright Medical's confidential material and trade secret information, including Wright Medical's business plans and roadmaps, customer lists and demand, product pricing lists, discount plans, distribution, supply agreements, sales training and detailed knowledge concerning the design, dimensions and manufacturing processes used to develop, manufacture and sell the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di family of products, and the X-TRACK compression/distraction instrumentation, belonged to Wright Medical.

340.     As set forth above, Wright Medical contends that this information qualifies as trade secret under both the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Colorado

Uniform Trade Secrets Act, C.R.S. § 7-74-102(4).  To the extent that this information is deemed business information that, while valuable, does not rise to the level of trade secret, Wright Medical pleads in the alternative that Paragon 28 has taken this material and information, and has used it for its own benefit without Wright Medical's consent or authorization.

341.      Paragon 28 has deprived Wright Medical of its rights of property in this material and information by stealing it for use by and for their company, Paragon 28.

342.      By disclosing the information and material belonging to Wright Medical to third parties for its own benefit, and otherwise using such information and material for its own benefit, Paragon 28 has deprived Wright Medical of its rights in the material and information owned by Wright Medical.

343.      As a direct and proximate result of Paragon 28's civil theft of Wright Medical's material and information for its own benefit, Wright Medical has suffered, and will continue to suffer, harm.

## COUNT SEVENTEEN
### Conversion

344.      Wright Medical repeats and incorporates by reference each of the foregoing paragraphs of its Complaint.

345.      Paragon 28 knew that Wright Medical's confidential material and trade secret information, including Wright Medical's business plans and roadmaps, customer lists and demand, product pricing lists, discount plans, distribution, supply agreements, sales training and detailed knowledge concerning the design, dimensions and manufacturing processes used to develop, manufacture and sell the MAXLOCK™ EXTREME™ and ORTHOLOC™ 3Di family of products, and the X-TRACK compression/distraction instrumentation, belonged to Wright Medical.

346.     As set forth above, Wright Medical contends that this information qualifies as trade secret under both the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-102(4).  To the extent that this information is deemed business information that, while valuable, does not rise to the level of trade secret, Wright Medical pleads in the alternative that Paragon 28 has taken this material and information, and has used it for their own benefit without Wright Medical's consent or authorization.

347.     Paragon 28 has deprived Wright Medical of its rights of property in this material and information by converting it for use by and for their company, Paragon 28.

348.     By disclosing the information and material belonging to Wright Medical to third parties for its own benefit, and otherwise using such information and material for its own benefit, Paragon 28 has deprived Wright Medical of its rights in the material and information owned by Wright Medical.

349.     As a direct and proximate result of Paragon 28's conversion of Wright Medical's material and information for its own benefit, Wright Medical has suffered, and will continue to suffer, harm.

## **PRAYERS FOR RELIEF**

WHEREFORE, Wright Medical prays for judgment in its favor against Paragon 28:

1. A judgment that Paragon 28 has infringed, directly or indirectly, the Patents-in-Suit;

2. A judgment that Paragon 28 has misappropriated, used and disclosed Wright Medical's confidential, highly confidential and trade secret information;

3. Preliminary and permanent relief enjoining and restraining Paragon 28 and its officers, director, agents, servants, employees, attorneys, and all others acting under, by, or through them, directly or indirectly, from:

   a. infringing, directly or indirectly the Patents-In-Suit;

   b. manufacturing selling distributing, advertising, promoting, or authorizing any third party to manufacture, sell, distribute, or promote the Infringing Products or any other materials that violate Wright Medical's intellectual property rights;

   c. importing the Infringing Products into the United States;

   d. misappropriating, using or disclosing for any purpose material or information related to Wright Medical's confidential, highly confidential and trade secret information;

   e. making or displaying any statement or representation that is likely to lead the public or the trade to believe that Paragon's products or services are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized, or franchised by or are otherwise connected with Wright Medical;

   f. making false and/or misleading claims and/or statements;

   g. engaging in any other activity constituting unfair competition with Wright Medical, and/or aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (f);

4.  A judgment ordering that the United States Department of Homeland Security, Customs and Border Protection ("Customs") take all appropriate measures to exclude all offending merchandise from entry into the commerce of the United States and that all merchandise previously entered be returned to Customs' custody and said merchandise be subject to seizure and forfeiture in accordance with statute and applicable regulations;

5.  A judgment directing such other relief as the Court may deem appropriate to protect the trade and public from deriving the erroneous impression that any products or services manufactured, sold, distributed, licensed, or otherwise offered, circulated, or promoted by Paragon 28 are authorized by Wright Medical or related in any way to Wright Medical's products and services;

6.  A judgment directing Paragon 28 file with the Court and serve upon Wright Medical's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Paragon 28 has complied therewith;

7.  A judgment awarding Wright Medical such damages as they have sustained or will sustain by reason of Paragon 28's misappropriation of Wright Medical's confidential, highly confidential or trade secret information, including actual damages, unjust enrichment and/or a reasonable royalty;

8.  A judgment awarding Wright Medical such damages as they have sustained or will sustain by reason of Paragon 28's unfair competition, intentional interference with business contracts, and conversion;

9.  A judgment awarding Wright Medical all gains, profits, property, and advantages derived by Paragon 28 from such conduct;

10. A judgment awarding Wright Medical enhanced and/or multiple damages pursuant to 35 U.S.C. § 284 and/or 15 U.S.C. § 1117;

11. A declaration that this is an exceptional case and a judgment awarding Wright Medical their reasonable attorneys' fees under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117, with prejudgment interest;

12. A judgment awarding Wright Medical exemplary damages and attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(C) and/or C.R.S. §§ 7-74-104 & 7-74-105;

13. A judgment awarding Wright Medical interest, including pre-judgment interest, on the foregoing sums; and

14. Any and all such additional and further relief as this court may deem just and equitable.

## <u>JURY DEMAND</u>

Wright Medical demands a trial by jury on all issues so triable.

Dated:  September 28, 2018                    Respectfully submitted,

                                             */s/ Thomas W. Sankey*
                                             Thomas W. Sankey
                                             (lead counsel)
                                             twsankey@duanemorris.com
                                             Diana M. Sangalli
                                             dmsangalli@duanemorris.com
                                             **DUANE MORRIS LLP**
                                             1330 Post Oak Boulevard, Ste. 800
                                             Houston, TX  77056-3166
                                             Telephone:  713. 402.3900

                                             Samuel W. Apicelli
                                             swapicelli@duanemorris.com
                                             **DUANE MORRIS LLP**
                                             30 South 17th Street
                                             Philadelphia, PA 19103-4196

                                             Christopher S. Kroon
                                             CSKroon@duanemorris.com
                                             **DUANE MORRIS LLP**
                                             100 High Street, Suite 2400
                                             Boston, MA 02110-1724

                                             *Counsel for Plaintiff*
                                             *Wright Medical Technology, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of September, 2018, I electronically filed the foregoing **THIRD AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF, including service upon all counsel of record for Defendant, Paragon 28, Inc.

*/s/ Thomas W. Sankey* 
Thomas W. Sankey
