IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

WRIGHT MEDICAL TECHNOLOGY, INC., )
)
)
Plaintiff, )
)                    CASE NO. 1:18-cv-00691-STV
vs. )
)
PARAGON 28, INC., )
)
Defendant. )

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ELEVEN THROUGH SEVENTEEN OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Wright Medical Technology, Inc., ("WMT") by and through its attorneys, hereby opposes Defendant's Motion to Dismiss Counts Eleven Through Seventeen of WMT's Second Amended Complaint (hereinafter "Motion").  In support thereof, WMT states as follows:

Paragon 28, Inc.'s ("Paragon") Motion should be denied because underlying Counts Eleven through Seventeen of WMT's Second Amended Complaint (hereinafter, "the Complaint")[1] are detailed factual allegations that—accepted as true—more than plausibly demonstrate Paragon's pattern of malfeasance aimed at interfering with WMT's contractual agreements and stealing WMT's sales reps ("reps"), trade secrets, and customers.  The Complaint exposes Paragon's targeted campaign to capture WMT's market share in the medical device market, even by engaging in trade secret misappropriation, unfair competition, tortious interference, and civil theft.

Paragon's argument that the Complaint does not state a claim for trade secret misappropriation turns Rule 8's notice pleading requirements on their head and ignores the host of well-pleaded facts.  There is no heightened pleading standard for a trade secret case, but even if

---

[1] For convenience, WMT refers to its Second Amended Complaint (or "SAC") as "the Complaint" for purposes of this Opposition.

there were, the totality of factual allegations relating to Paragon's unlawful behavior is more than sufficient to establish a plausible conclusion of trade secret misappropriation.

Indeed, as this Court noted at the July 19, 2018 Rule 26(f) Scheduling Conference, given WMT's allegations concerning Paragon's pattern of targeting and soliciting former WMT reps, it is not difficult to imagine the scope of WMT's trade secret allegations:

> I think we have probably a pretty good idea what the claims are going to look like. They're going to allege that when your employees left their employ, they took certain information from there and used it to go over to the new company. I mean, I don't think it's all that speculative.

July 19, 2018 Tr. at 18:11–16. As predicted, the Complaint alleges over 80 pages of detailed, well-plead facts and specific examples explaining the who, what, when, where and why of the conduct underlying WMT's claims.

Paragon's argument that the Colorado Uniform Trade Secrets Act ("CUTSA") preempts WMT's tortious interference with contracts, conversion, and civil theft claims is also without merit, as they do not depend on information at issue qualifying as trade secrets. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* 863 F. Supp. 2d 1066, 1087 (D. Colo. 2012) (holding CUTSA does not preempt tort claim); *Gates Corp. v. CRP Indus., Inc.*, No. 16–cv–01145, 2017 WL 5714342, at *5 (D. Colo. Nov. 28, 2017) (CUTSA does not preempt tortious interference claims). CUTSA preemption does not bar every claim arising from the same set of facts, and WMT's common law claims do not depend solely on finding that its information is trade secret to be actionable.

When placed against the backdrop of WMT's highly-detailed factual allegations, it is clear Paragon filed its Motion to delay resolution of the merits and avoid having to answer WMT's allegations. But the legislature did not intend for Rule 12(b)(6) motions to be used as a cudgel to forestall and chill legitimate claims. The Court should reject Paragon's latest delay tactic.

I.      **FACTS**

A.      **The Parties**

WMT is a leader of surgical solutions for the lower extremities market with the most comprehensive product portfolios in the industry.  SAC at ¶¶8-9.  WMT's proprietary techniques and novel designs have achieved success due in large part to their technological superiority over competitors and rooted customer relationships.  WMT's team of engineers and surgical consultants are continually innovating approaches to the myriad problems in this space.  SAC at ¶10.

Paragon was founded by four former WMT employees: **Albert DaCosta** (WMT's former Corporate Director – Bio/Extremity), **Frank Bono** (WMT's former Senior Vice-President and Chief Technology Officer), **Lee Rosenthal** (former WMT Distributor), and **Matt Jarboe** (former WMT Senior Corporate Rep) (hereinafter, the "Paragon Founders").  SAC at ¶¶42, 48.  Due to their high-level positions at WMT, the Paragon Founders were privy to and had intimate knowledge of WMT's product lines, business plans/roadmaps, customers, sales, pricing, and other highly sensitive technical and business information. SAC at ¶48. The Paragon Founders combined their training and experience at WMT, with WMT's confidential, highly confidential, and trade secret information, to found a new company to compete directly with WMT.  SAC at ¶52.

B.      **The Highly Competitive Lower Extremities Market**

The lower extremities market is highly cost competitive and dependent on strong relationships between reps and customers.  SAC at ¶11.  Healthcare providers rely on WMT's reps to educate and support their efforts in delivering medical services to patients.  SAC at ¶11.  The reps' knowledge, experience, and relationships with these providers is valuable in generating sales in this industry.  SAC at ¶11. As such, WMT invests substantial time and resources into identifying its customers, developing its customer relationships/goodwill, and providing specialized training to its reps to develop expertise and foster valuable customer relationships.  SAC at ¶11.

WMT reps are also privy to WMT's proprietary information, including, for example, competitive pricing information, specific vendor discounts or rebates, demand, and purchasing information.  SAC at ¶12.  This information is not generally known outside of WMT, is highly valuable, and is critical to its competition in the lower extremities market.  SAC at ¶¶12–13.

### C.     WMT's Efforts to Protect Its Trade Secrets

In order to maintain its competitive advantage, WMT expends substantial resources to safeguard and protect its proprietary information as trade secret or confidential information.  SAC at ¶14.  WMT takes, and at all relevant times has taken, reasonable steps to safeguard the secrecy of its trade secrets and confidential information, including, but not limited to, (a) requiring employees to sign agreements concerning confidentiality of sensitive information; (b) requiring surgical consultants, partners, and vendors to sign confidentiality/non-disclosure agreements; (c) limiting access to customer lists and sales information (*e.g.*, specific vendor discount rates and customer demand); and (d) employing security measures at its facilities.  SAC at ¶15.  WMT adopts and enforces practices and written policies designed to protect confidential information and trade secrets, including the concept of "need to know," where employees are only provided the minimum access to confidential information needed to perform their assigned duties.  SAC at ¶15.

### D.     Paragon's Campaign To Solicit WMT's Reps and Key Opinion Leaders (KOLs) and Misappropriate Confidential and Trade Secret Information

Since its beginning, the Paragon Founders launched a targeted campaign to solicit and then retain WMT's lower extremities reps to unfairly compete with WMT.  SAC at ¶53-59.  Paragon's statements demonstrate that it affirmatively seeks to recruit and hire WMT reps with precisely the knowledge, experience, training, education, and respect in the marketplace to give Paragon a competitive advantage—all without making the investment that WMT made in its former reps.  SAC at ¶56, 89–98.  As of the filing of the Complaint, Paragon had targeted and retained at least

*twelve* WMT reps in the same or substantially the same roles as they had at WMT (hereinafter, the "Former WMT Reps").[2]  SAC at ¶43.  And Paragon has not slowed in its efforts to pilfer WMT's reps, including retaining Brandon Strange as a regional sales manager only two months ago. Paragon also hired Dustin Ducharme, who previously held the title of Senior Manager of Strategic Marketing & Business Development for OrthoHelix (the company that originally designed and developed the inventions claimed in many of the Patents-in-Suit).  Ducharme is also a named inventor on eight of the ten Patents-in-Suit, and contributed to the development of WMT's MAXLOCK EXTREME® family of products.  SAC at ¶44.

Many of the former WMT employees who joined Paragon signed written Confidentiality, Non-Competition, Non-Solicitation and/or Intellectual Property Rights Agreements (hereinafter, "Confidentiality Agreements").  SAC at ¶45.  Former WMT Reps were often given enhanced title and compensation to induce them to join Paragon.  SAC at ¶46.  Indeed, each of the five Paragon sales regions are headed by a Former WMT Reps—including most recently Mr. Strange.

The Paragon Founders also used knowledge gained at WMT to induce WMT's surgical consultants and KOLs to switch to Paragon.  SAC at ¶¶48, 60–64.  As trusted industry authorities, KOLs are highly influential in the commercial adoption of WMT's surgical solutions.  SAC at ¶¶60–64.  The Paragon Founder's attempts to recruit WMT's KOLs—using WMT's highly confidential information —is unfair, unlawful, and highly damaging.  SAC at ¶¶48, 60–64.

### E.    WMT Files Its Complaint

On March 23, 2018, WMT filed a Complaint alleging ten counts of patent infringement arising from Paragon's willful copying of WMT's patented plate and instrument designs.  *See* ECF

---

[2]  The Former WMT Reps include Matt Jackson, Luke Gordon, Brandy Reid, Adam Yoder, Steve Farrell, Kat Watterson, Jason Popkin, John Shumaker, Brock Howard, Zhao Guo, James Bench, Phil Falcon, and Brandon Strange.  *See* ¶43 of SAC.

1. On August 8, 2018, WMT filed this Complaint adding claims for misappropriation of trade secrets (Counts 11 and 12)[3], unfair competition (Counts 13 and 14), intentional interference with contracts (Count 15), civil theft (Count 16), and conversion (Count 17). *See* ECF 49.[4]

## II.   STANDARD ON MOTION TO DISMISS

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-plead allegations as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001).

There is no heightened pleading standard for trade secret claims. *SBM Site Servs., LLC v. Garrett*, No. 10-00385, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012); *DSMC, Inc. v. Convera Corp.,* 273 F. Supp. 2d 14, 24 (D.D.C. 2002) (holding that the usual notice pleading requirements of Rule 8 apply to a trade secrets claim). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] *See* Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. and CUTSA, C.R.S. § 7-74-101, *et seq*.

[4] On September 28, 2018, WMT filed a Third Amended Complaint to address concerns raised by Paragon on the plates accused of infringement and to avoid motion practice. *See* ECF 89. WMT respectfully believes its Third Amended Complaint renders moot the instant Motion.

### III.      THE COURT SHOULD DENY PARAGON'S MOTION

#### A.      WMT Has Sufficiently Alleged Trade Secret Misappropriation

Paragon's assertion that WMT "has failed to allege that (1) WMT possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) Paragon knew, or should have known, that the trade secret was acquired by improper means" blindly ignores the relevant legal standard and the host of well-pleaded facts in the Complaint.

There is no heightened pleading standard for a trade secret allegation. *SBM Site Servs.*, 2012 WL 628619, at *10.   A trade secret "may consist of any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."[5] *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.,* No. 07-02324, 2008 WL 2185882, at *18 (D. Colo. May 23, 2008) (holding product information, product know-how, business plans and detailed customer information is trade secret).   The Complaint is replete with facts supporting the scope and breadth of WMT's trade secret information and Paragon's targeted campaign to misappropriate and use it.

For example, WMT alleges that, during their employment with WMT, the Former WMT Reps became privy to WMT's "proprietary pricing information, including . . . competitive pricing information, and specific vendor discounts or rebates, demand and purchasing information."  SAC at ¶12.  These Former WMT Reps also had knowledge of "Wright's appetite and ability to provide potential discounts and reductions, distribution, supply agreements, customer lists, customer demand, business plans, business roadmaps, sales education and technical training, and detailed

---

[5] CUTSA defines a trade secret as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value."  C.R.S. § 7–74–102(4).

knowledge concerning the design, dimensions and manufacturing processes" of WMT's bone plating and extractor products. SAC at ¶92.   There is no question that this is the type of information—developed and documented as part of their employment for Wright and subject to Confidentiality Agreements – comprises trade secrets. *See Haggard v. Spine*, No. 09–00721, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("This detailed customer information is exactly the type of information that, when organized in a unique manner . . . is entitled to trade secret protection.") (citing *Rivendell Forest Prods., Ltd. v. Georgia–Pacific Corp.,* 28 F.3d 1042, 1045 (10th Cir. 1994); *Xantrex Technology*, 2008 WL 2185882 at *14 (holding detailed customer information and business plans are trade secret); *SBM Site Servs.*, 2012 WL 7563785 at *9 (same).

The Complaint contains similar allegations with respect to the Paragon Founders.  WMT alleges that, due to their high-level positions, the Paragon Founders "necessarily were privy to and had intimate knowledge of WMT's then-current and then-planned product lines, business plans and roadmaps, customers, sales, pricing . . . surgical consultants and . . . KOLs, including the highly confidential terms of their respective consulting contract provisions." SAC at ¶¶48, 50, 61. These trade secrets were developed at substantial expense to WMT and enable WMT to compete in the lower extremities marketplace and maintain its competitive edge.

And Paragon's argument that WMT's misappropriation allegations are somehow "generalized" is counterfactual.  WMT identified at least eight specific examples where the Paragon Founders and/or Former WMT Reps transmitted WMT trade secret information from their work email accounts to personal email accounts prior to leaving WMT (*e.g.*, incidents occurring on October 20, 2016, June 26, 2017, February 9, 2018, and March 20, 2018); and that Paragon has used that information when it knew or should have known that it was wrongfully retained.  SAC at ¶¶ 70-74, 78–96, 102–104, 105–115, 116–124.  Other examples from the Complaint include:

- In August 2017, **Rosenthal** induced a Former WMT Rep to provide WMT sales/pricing information to "cross-reference" a list of plating systems and related components that the customer was purchasing from WMT with competing Paragon products.  SAC at ¶¶78–88.

- On October 16, 2009, Paragon Founder **DaCosta** emailed from his personal email an Excel Spreadsheet containing the names, titles, contact information, status and follow-up steps for a number of WMT DPM surgeons who attended a WMT Foot and Ankle Symposium.  SAC at ¶¶70–74.

- On April 29, 2017, **Gordon** forwarded an "Ankle Charcot Comp Plan" containing WMT compensation information from his work email to his personal email.  SAC at ¶¶102–104.

- On January 25, 2018, **Yoder** forwarded a PowerPoint entitled "Lonestar: #1 in 2018" from his work email to his personal email containing WMT sales and performance data, including detailed growth and decline analysis, year-over-year sales numbers, market analysis and growth trajectories, sales performance for key market areas.[6]  SAC at ¶¶105–115

Far from being "generalized," WMT's claims contain highly-detailed factual allegations and specific incidents of misappropriation that fully satisfy the requirements of Rule 8.  *See Stidham*, 265 F.3d at 1149 (a "12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim").

**B.    The Complaint States A Claim That Paragon Knew Of And Engaged In The Misappropriation**

Paragon argues it can escape liability for misappropriating WMT's trade secrets by simply claiming that "Paragon"—as somehow distinct from its officers and employees—did not misappropriate anything, a concept not supported under Colorado law.  *See e.g., In re Stat–Tech Sec. Litig.,* 905 F. Supp. 1416, 1422 (D. Colo.1995) ("Because a corporation can act only through its agents, the actions of corporate officers and directors are attributable to the corporate entity.").[7]

---

[6] Notably, the Lonestar PowerPoint contains a confidentiality legend that states "Contents are Confidential – Wright Internal Use Only."  SAC at ¶¶105-115.

[7] Here, the exception to this rule—*i.e.,* when an agent acts adversely to his principal—is not applicable, because WMT has alleged that the actions of the Paragon Founders and Former WMT

In its motion papers, Paragon alleges that "none" of WMT's allegations "allege a single instance of usage of these so-called trade secrets by Paragon." ECF 84, at 2. But the Complaint details Paragon's preconceived path to target and retain WMT's Former Reps and misappropriate WMT's confidential trade secret information. As set forth above, WMT identified numerous specific instances where the Paragon Founders misappropriated information or knowingly encouraged Former WMT Reps to misappropriate WMT trade secret information in an effort to capture WMT's lower extremities market share. SAC at ¶¶ 70-74, 78–96, 102–104, 105–115, 116–124. These allegations more than satisfy the requirements of Rule 8. *See Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'") (citation omitted).

Paragon's reliance on *Ciena* and *ReMax* is misplaced. These cases stand for the unremarkable proposition that merely employing an individual who had access to a competitor's trade secrets is not enough to state a claim for trade secret misappropriation. In *Ciena*, a defendant hired the plaintiff's former employee who had access to trade secrets related to the plaintiff's business strategies. *Ciena Commc'ns, Inc. v. Nachazel*, No. 09–cv–02845, 2010 WL 3489915 *4 (D. Colo. Aug. 31, 2010). The Court found that plaintiff's complaint lacked any specific factual allegations of disclosure of trade secrets, alleging *only* that the former employee and defendant "have misappropriated, or threaten to misappropriate, [plaintiff's] trade secrets for the purpose of using and exploiting such information . . ." *Id*. The Court found that, without "specific factual averments" of disclosure or use, this singular allegation was insufficient to impute the employee's

---

Reps was "for the direct benefit of Paragon 28" or was "in concert with other Paragon employees" and that "[s]uch information clearly provided [the Paragon Founders], and thusly Paragon 28, a significant and unfair competitive advantage." *See e.g.,* SAC at ¶¶74, 78, 86, 88, 103, 104, 115, 124 and 125; *see also, In re Stat–Tech Sec. Litig.,* 905 F. Supp. at 1422.

acquisition of trade secrets to his new employer. *Id.*

Faced with a similar challenge, the *ReMax* Court held that plaintiff's allegation that defendant "used [plaintiff's] confidential information (including its trade secrets) to launch its operations" was insufficient to state a claim that it actually did so. *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F.Supp.3d 1163, 1175–76 (D. Colo. 2018)

The blanket allegations in *Ciena* and *ReMax* stand in stark contrast to the specific facts alleged in this case. Where—as here—a former employee serves in an essentially identical position at the new company, and is largely responsible for the generation of business, the former employee does not have to transmit the information to anyone at the new company to find the new company used the trade secrets. *See SBM Site Servs.*, 2012 WL 628619, at *10 (holding proof of actual use by defendant not required where former employee obtained near identical sales position at defendant's company) (*citing Xantrex*, 2008 WL 2185882 at *19 (same)). As plead throughout the Complaint, both the Paragon Founders and Former WMT Reps "began working for Paragon 28 in the same or substantially the same role as they previously held for Wright Medical after terminating employment with Wright Medical." *See e.g.,* SAC at ¶¶ 46, 52, 70, 94, 110, and 120. And, of course, as "high-level officers" and "reps," each of the former WMT employees were "largely responsible for the generation of business" while at WMT and remain in that role at Paragon. *See SBM Site Servs.*, 2012 WL 628619, at *10; *Xantrex*, 2008 WL 2185882 at *19. The reps are targeting the same territories and clients as they had previously served while employed with WMT and, thus, it is fair to infer that, in now selling against WMT, the reps are necessarily using WMT's trade secrets regarding those customers. SAC at ¶¶80, 83, 98, 107.

Moreover, unlike *Ciena* and *ReMax,* here WMT has alleged that Paragon was not only "aware" that the Former WMT Reps had misappropriated WMT trade secrets, its officers

*knowingly and actively participated in it. See* SAC at ¶¶ 62, 65-88.  For example, WMT provides the specific date, time, and method of communication used by Paragon Founder **Rosenthal** to actively scheme to convert WMT customers using WMT's trade secret information provided by a Former WMT Rep.  *See* SAC at ¶¶ 78-88.  WMT sets forth explicit facts that Paragon is contacting WMT's customer reps that the Former WMT Reps had contact with exclusively through their role at WMT and that Paragon has produced product literature comparing its products to WMT's using information confidential to WMT.  *See* SAC at ¶¶ 78-88.  Unlike *Ciena* and *ReMax,* WMT's allegations are detailed, specific, and verifiable.  There can be no question that the Complaint states "a short and plain statement" of trade secret misappropriation. Fed. R. Civ. P. 8(a)(2).

### C.    WMT's Common Law Claims Are Not Preempted

Paragon argues that WMT's claims for intentional interference with contracts, civil theft, and conversion are preempted in their entirety by CUTSA's preemption provision, C.R.S. § 7–74–108.[8]  But "[t]his Court has rejected the contention that CUTSA was intended as a 'blanket preemption to all claims that arise from a set of circumstances that happen to involve information that the plaintiff claims is in the nature of a trade secret.'"  *SBM Site Servs.*, 2012 WL 628619, at *10 (quoting *Powell Prods., Inc. v. Marks,* 948 F. Supp. 1469, 1475 (D. Colo. 1996)); *see also Gates*, 2017 WL 5714342, at *5 (narrowly construing the preemption provisions under CUTSA).

"Preemption does not bar every claim arising from the same set of facts." *Gates*, 2017 WL 5714342, at *5.  Rather, the Court has adopted a tailored approach where only claims "restating the same operative facts as would *plainly* and *exclusively* spell out *only* trade secret misappropriation" are preempted.  *Id.* (emphases added).  Thus, "the salient question . . . is whether

---

[8] C.R.S. § 7–74–108 provides that CUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of trade secrets."

a challenged common law claim depends solely on a finding of trade secret status to be actionable. Where it does not, the claim is not preempted." *Virtual Cloud Servs., Inc. v. CH2M Hill, Inc.,* No. 02-01004, 2006 WL 446077, *2 (D. Colo. Feb. 21, 2006).

Here, WMT's counts for civil theft and conversion are not preempted, because they are premised on Paragon's possession and use of "confidential material" that is separate and apart from the trade secrets. *See* SAC ¶¶ 310, 316. As Paragon aptly notes in its Motion, "[i]nformation that is 'confidential' or 'highly confidential' in nature does not automatically mean it is trade secret information." ECF 84, at 11. Thus, to the extent any of WMT's information, although valuable, does not meet the statutory definition of "trade secret," WMT's conversion and civil theft claims provide the proper remedy. *See*, *e.g.*, *L-3 Commc'ns Corp.*, 863 F. Supp. 2d at 1087 (refusing to preempt tort claim under CUTSA where "L3 has alleged numerous ways in which the Defendants were unjustly enriched by events that do not involve any trade secrets," such as "misappropriation of physical equipment, misuse of L3's internal computer resources, and various other acts"); *Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*, No. 13-00415; -00143, 2014 WL 103812 (D. Colo. Jan. 10, 2014) (because a tort claim involved "misappropriation of business data that, although valuable, does not meet the statutory definition of 'trade secret,'" preemption was improper); *SBM Site Servs.*, 2012 WL 628619, at *11 (civil theft claim not preempted by CUTSA).

Similarly, application of CUTSA preemption provision does not bar WMT's claim for intentional interference with contracts because that claim does not depend upon a determination that WMT's trade secrets are protectable. As *Powell* expressly noted:

> Although plaintiff contends that its manufacturing process and machine are protectable trade secrets, its claims for [tortious] interference *do not depend upon that determination*. Defendants could be liable for interference with business relations *even if they did not misappropriate any trade secrets from plaintiff*. Accordingly, those claims would not conflict with the UTSA . . .

- 13 -

*Powell*, 948 F.Supp. at 1474 (emphases added).

The same is true of WMT's interference claim—which accuses Paragon of "deliberately target[ing] and knowingly solicit[ing] the Former Wright Medical Employees in order to induce them to the breach their obligations under their respective Confidentiality Agreements . . ." SAC at ¶303.  WMT alleges that the lower extremities market is highly cost competitive and dependent on the formation of strong relationships between reps and customers.  SAC at ¶11. WMT invests substantial time and resources providing specialized training to its reps, identifying its customers and developing its customer relationships and goodwill.  SAC at ¶11.  WMT alleges that Paragon's orchestrated campaign to recruit and hire Former WMT Reps is motivated by its desire "to recruit and hire employees like the former WMT Medical Sales Reps who have precisely the type of experience, training, education, and respect in the marketplace that will give Paragon a competitive advantage." SAC at ¶302.  As a result, Paragon has saved the time and expense of training its reps and identifying and developing valuable customer relationships.  SAC at ¶302. Applying this Court's "tailored approach," it is clear that none of WMT's claims for civil theft, conversion, and intentional interference depend on a "finding of trade secret status to be actionable."  *See Powell*, 948 F. Supp. at 1474 (holding "a plaintiff may also bring claims that . . . include additional elements not necessary for a misappropriation claim under the UTSA").

### D.     WMT's Unfair Competition Claims Withstand Scrutiny

In an overly narrow reading of the Complaint, Paragon argues that WMT "did not allege" it knew that its cadaver course advertisement falsely represented Dr. Christopher Hyer—a well-known WMT KOL—would not be among the "course faculty."[9] ECF 84, at 14–15.  In fact, WMT

---

[9]  While Paragon does not cite any Colorado authority holding that its false claims concerning its screw's "unique head design" are puffery, WMT nonetheless does not oppose Paragon's Motion as it relates to WMT's unfair competition claims concerning this clearly false advertising claim.

alleges that Dr. Hyer and at least one other WMT KOL "did not provide consent for Paragon 28 to use his name and picture in connection with this Paragon 28-sponsored cadaver course." SAC at ¶135.   WMT also alleges that Paragon's conduct was "intentionally fraudulent, malicious, willful, and wanton" and its use of Dr. Hyer's name was "committed with knowledge that such acts are intended to cause confusion, cause mistake, or to deceive." SAC at ¶¶140-141.   This is sufficient to state a claim for unfair competition. *See e.g., Bryson*, 534 F.3d at 1286 (complaint with "either direct or inferential allegations respecting all the material elements" states a claim).

In any event, WMT's unfair competition allegations encompass far more than Paragon's knowingly false advertising.   Rather, the Complaint sets forth "other acts and practices that are actionable under state law," including Paragon's use of WMT's confidential information "to induce Wright Medical KOLs to switch to Paragon 28" and Paragon's efforts, detailed at length, to induce and convert the Former WMT Reps to work for Paragon.   SAC at ¶284, 291.   These acts "hinder, rather than promote, competition… are likely to create confusion in the marketplace." SAC at ¶¶281, 292.   As such, WMT has sufficiently pled its claims for unfair competition.

WHEREFORE, Defendant's Motion should be denied and the Defendant should be Ordered file its Answer within fourteen days from entry of this Court's Order.

Dated:  October 10, 2018

Respectfully submitted,

Samuel W. Apicelli
swapicelli@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196

Christopher S. Kroon
cskroon@duanemorris.com
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA  02110-1724
Telephone: 857.488.476

*/s/ Thomas W. Sankey*
Thomas W. Sankey (lead counsel)
twsankey@duanemorris.com
Diana M. Sangalli
dmsangalli@duanemorris.com
**DUANE MORRIS LLP**
1330 Post Oak Boulevard, Ste. 800
Houston, TX  77056-3166
Telephone:  713.402.3900

*Counsel for Plaintiff*
*Wright Medical Technology, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 10th day of October 2018, I electronically filed the foregoing **PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF and to all counsel of record for Defendant.

*/s/ Thomas W. Sankey*
Thomas W. Sankey