IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

WRIGHT MEDICAL TECHNOLOGY, INC.,   )
                                         )

             Plaintiff,          )

vs.                     )   CASE NO. 1:18-cv-00691-STV

                                         )

PARAGON 28, INC.,                   )

                                       )

             Defendant.       )

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ELEVEN THROUGH SEVENTEEN OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff Wright Medical Technology, Inc., ("WMT") by and through its attorneys, hereby

opposes Paragon 28, Inc.'s ("Paragon") Motion to Dismiss Counts Eleven Through Seventeen of

WMT's Third Amended Complaint (hereinafter the "Motion" and the "Complaint").

Paragon's second attempt to dismiss Counts Eleven through Seventeen of WMT's

Complaint fares no better than its first.  WMT's Second Amended Complaint ("SAC") set out

detailed factual allegations that plausibly state claims for trade secret misappropriation, unfair

competition, tortious interference, and civil theft.  WMT's allegations more than satisfied the

requisite pleading standards.  Nonetheless, when WMT filed its Third Amended Complaint

("TAC") to add newly discovered information of yet further instances of Paragon's illicit use of

WMT trade secret information to compete in the marketplace, WMT also amended limited

portions of its non-patent causes of action, hoping to stave off further motion practice.  That hope

proved to be in vain as Paragon predictably filed this Motion in yet another effort to forestall

resolution of the merits of WMT's claims.  Paragon's latest delay tactic should be rejected.

Paragon's Motion largely repeats the arguments from its first Motion to Dismiss, which, at

their core, reflect an attempt by Paragon to impose a heightened pleading standard for a trade secret

case that has no support in the Federal Rules or the law. As WMT pointed out in its opposition to Paragon's first Motion to Dismiss, there is no heightened pleading standard for a trade secret case. But even if there were, the totality of factual allegations set out in the TAC more than plausibly demonstrate that Paragon has engaged in continuous and repeated acts of trade secret misappropriation and unfair competition that have damaged WMT's business.

WMT's pleadings supporting its causes of action are not difficult to understand. Indeed, as this Court predicted at the July 19, 2018 Rule 26(f) Scheduling Conference:

> I think we have probably a pretty good idea what the claims are going to look like. They're going to allege that when your employees left their employ, they took certain information from there and used it to go over to the new company. I mean, I don't think it's all that speculative.

July 19, 2018 Tr. at 18:11–16. The Complaint does just that, providing over 80 pages of detailed, well-plead facts and specific examples explaining the who, what, when, where and why of the conduct giving rise to WMT's claims. And the very small amount of discovery that has already been conducted has unearthed evidence of both the individuals' and Paragon's targeted efforts to interfere with Wright's contractual agreements and steal its sales reps, trade secrets, and customers.

Paragon's regurgitated argument that the Colorado Uniform Trade Secrets Act ("CUTSA") preempts WMT's tortious interference with contracts, conversion, and civil theft claims is also without merit. As WMT pointed out in its opposition to Paragon's first Motion, such causes of action do not require that the information at issue qualify as trade secrets. Paragon ignores the case law cited in WMT's opposition, making no effort at all to distinguish it.

Finally, Paragon's grab bag of arguments concerning certain of WMT's unfair competition allegations are neither correct nor properly resolved on a motion to dismiss. Paragon's use of Dr. Hyer's name cannot be considered a "prediction" when Paragon knew Dr. Hyer refused to provide his consent *prior to* publishing the ad. And Wright's remaining grounds for unfair competition

are either not challenged or misconstrued.  Either way, this Court should deny Paragon's Motion.

## I.     FACTS

### A.     The Parties

WMT is a leader of surgical solutions for the lower extremities market with the most comprehensive product portfolios in the industry.  TAC at ¶¶8-9.  WMT's proprietary techniques and novel designs have achieved success due in large part to their technological superiority over competitors and rooted customer relationships.  WMT's team of engineers and surgical consultants are continually innovating approaches to the myriad problems in this space.  TAC at ¶10.

Paragon was founded by four former WMT employees: **Albert DaCosta** (WMT's former Corp. Director), **Frank Bono** (WMT's former SVP and CTO), **Lee Rosenthal** (former WMT Distributor), and **Matt Jarboe** (former WMT Senior Corp. Rep) (*i.e.*, the "Paragon Founders").  TAC at ¶¶43, 49.  Due to their high-level positions, the Paragon Founders had intimate knowledge of WMT's product lines, business plans/roadmaps, customers, sales, pricing, and other highly sensitive technical and business information.  TAC at ¶49.  The Paragon Founders combined their training and experience at WMT, with WMT's confidential, highly confidential, and trade secret information, to found a new company to compete directly with WMT.  TAC at ¶53.

### B.     The Highly Competitive Lower Extremities Market

The lower extremities market is highly cost competitive and dependent on strong relationships between reps and customers.  TAC at ¶11.  Healthcare providers rely on WMT's reps to educate and support their efforts in delivering medical services to patients.  *Id.*  The reps' knowledge, experience, and relationships with these providers is valuable in generating sales in this industry.  *Id.*  As such, WMT invests substantial time and resources into identifying its customers, developing its customer relationships/goodwill, and providing specialized training to its reps to develop expertise and foster valuable customer relationships.  *Id.*

WMT reps are also privy to WMT's highly valuable proprietary information not generally known outside of WMT, including, for example, competitive pricing information, specific vendor discounts or rebates, demand, and purchasing information.  TAC at ¶12.

### C.     WMT's Efforts to Protect Its Trade Secrets

To maintain its competitive advantage, WMT expends substantial resources to safeguard its proprietary information as trade secret or confidential.  TAC at ¶15.  WMT takes, and at all relevant times has taken, reasonable steps to safeguard the secrecy of this information, including, *inter alia*, (a) requiring employees to sign confidentiality agreements; (b) requiring surgical consultants, partners, and vendors to sign confidentiality/non-disclosure agreements; (c) limiting access to customer lists and sales information; and (d) employing security measures at its facilities. TAC at ¶16.  WMT adopts and enforces practices and written policies to protect confidential and trade secret information, including the concept of "need to know," where employees are provided the minimum access to confidential information needed to perform their assigned duties.  *Id.*

### D.     Paragon's Campaign To Solicit WMT's Reps and Key Opinion Leaders (KOLs) and Misappropriate Confidential and Trade Secret Information

Since its beginning, the Paragon Founders launched a targeted campaign to solicit and then retain WMT's lower extremities reps to unfairly compete with WMT.  TAC at ¶¶54-59.  Paragon's statements demonstrate that it affirmatively seeks to recruit and hire WMT reps with precisely the knowledge, experience, training, education, and respect in the marketplace to give Paragon a competitive advantage—all without making the investment that WMT made in its former reps. TAC at ¶¶56, 94–102.  As of the filing of the Complaint, Paragon had targeted and retained at least *thirteen* WMT reps in the same or substantially the same roles as they had at WMT, including as

late at two months ago (hereinafter, the "Former WMT Reps").[1] TAC at ¶44. Paragon also hired Dustin Ducharme, a named inventor on eight of the ten Patents-in-Suit and a former lead engineer at OrthoHelix (the company that originally designed and developed the inventions claimed in many of the Patents-in-Suit and subsequently acquired by WMT). TAC at ¶45.

Many former WMT employees who joined Paragon signed Confidentiality, Non-Competition, Non-Solicitation and/or IP Rights Agreements (hereinafter, "Confidentiality Agreements"). TAC at ¶46. Former WMT Reps were often induced to join Paragon with enhanced title and compensation. TAC at ¶47. Indeed, each of the five Paragon sales regions are head by Former WMT Reps - including most recently Mr. Strange. *See* TAC at ¶¶47, 134.

The Paragon Founders also used knowledge gained at WMT to induce WMT's surgical consultants and KOLs to switch to Paragon. TAC at ¶¶49-50, 62–66. As trusted industry authorities, KOLs are highly influential in the commercial adoption of WMT's surgical solutions. TAC at ¶¶62–66. The Paragon Founder's attempts to recruit WMT's KOLs—using WMT's highly confidential information —is unfair, unlawful, and highly damaging. TAC at ¶¶49-50, 62–66.

## II.    STANDARD ON MOTION TO DISMISS

Under Rule 12(b)(6), the Court must accept all well-plead allegations as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). The Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

There is no heightened pleading standard for trade secret claims. *SBM Site Servs., LLC v.*

---

[1] The Former WMT Reps include Matt Jackson, Luke Gordon, Brandy Reid, Adam Yoder, Steve Farrell, Kat Watterson, Jason Popkin, John Shumaker, Brock Howard, Zhao Guo, James Bench, Phil Falcon, and Brandon Strange. *See* TAC at ¶44.

*Garrett*, No. 10-00385, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012); *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 24 (D.D.C. 2002) (applying the Rule 8 notice pleading requirements to a trade secrets claim). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring only "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## III.   THE COURT SHOULD DENY PARAGON'S MOTION

### A.   WMT Has Sufficiently Alleged Trade Secret Misappropriation

Paragon's assertion that WMT "has failed to allege that (1) WMT possessed a valid trade secret; (2) Paragon knew, or should have known, that the trade secret was acquired by improper means; and (3) that Paragon used the alleged trade secrets" blindly ignores the relevant legal standard and the host of well-pleaded facts in the Complaint.

There is no heightened pleading standard for a trade secret allegation. *SBM Site Servs.*, 2012 WL 628619, at *10. A trade secret "may consist of any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."[2] *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.,* No. 07-02324, 2008 WL 2185882, at *18 (D. Colo. May 23, 2008) (holding product information, product know-how, business plans and detailed customer information is trade secret). The Complaint is replete with facts supporting the scope and breadth of WMT's trade secret information and Paragon's targeted campaign to misappropriate and use it.

---

[2] CUTSA defines a trade secret as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7–74–102(4).

For example, WMT alleges that, during their employment with WMT, the Former WMT Reps became privy to WMT's "proprietary pricing information, including . . . competitive pricing information, and specific vendor discounts or rebates, demand and purchasing information." TAC at ¶12. These Former WMT Reps also had knowledge of "Wright Medical's appetite and ability to provide potential discounts and reductions, distribution, supply agreements, customer lists, customer demand, business plans, business roadmaps, sales education and technical training, and detailed knowledge concerning the design, dimensions and manufacturing processes" of WMT's bone plating and extractor products. TAC at ¶97.   There is no question that this type of information—developed and documented during their employment for WMT and subject to Confidentiality Agreements – is trade secret. *See Haggard v. Spine*, No. 09–00721, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("This detailed customer information is exactly the type of information that, when organized in a unique manner. . . is entitled to trade secret protection."); *Xantrex Technology*, 2008 WL 2185882 at *14 (detailed customer information and business plans are trade secret); *SBM Site Servs.*, 2012 WL 7563785 at *9 (same).   In the TAC, WMT added several additional allegations—collected from those already alleged in the SAC—identifying the specifics categories of trade secrets at issue.   Paragon's argument that WMT somehow "does not specify what information the employees possessed" is counterfactual.   ECF 112, at 3.

The Complaint contains similar detailed allegations with respect to the Paragon Founders. WMT alleges that, due to their high-level positions, the Paragon Founders "necessarily were privy to and had intimate knowledge of [WMT]'s then-current and then-planned product lines . . . business plans and roadmaps, customers, sales, pricing . . . surgical consultants and . . . (KOL)s, including the highly confidential terms of their respective consulting contract provisions." TAC at ¶¶49, 51, 63.   Paragraph 63 and 64 detail how the Paragon Founders used this confidential and

trade secret information to "unfairly solicit and attempt to convert" certain WMT KOL's to switch

to similar roles at Paragon, as well as the types of information they had access to and used for this

purpose.  Paragon's characterization that WMT's allegations are based solely "upon information

and belief" misreads WMT's Complaint.  *See e.g.,* TAC at ¶63.

So too, is Paragon's argument that WMT's misappropriation allegations are "supported by

conclusory inferences." ECF 112, at 3.  WMT identified at least eight specific examples where the

Paragon Founders and/or Former WMT Reps transmitted WMT trade secret information from their

work email accounts to personal email accounts prior to leaving WMT (*e.g.*, incidents occurring

on October 20, 2016, June 26, 2017, February 9, 2018, and March 20, 2018); and that Paragon has

used that information when it knew or should have known that it was wrongfully retained.  TAC

at ¶¶ 72-76, 80–101, 107–139.  Other examples include:

- In Aug. 2017, Paragon Founder **Rosenthal** induced a Former WMT Rep to provide WMT sales/pricing information to "cross-reference" a list of plating systems and related components that the customer was purchasing from WMT with competing Paragon products.  TAC at ¶¶80–93.

- On Oct. 16, 2009, Paragon Founder **DaCosta** emailed from his personal email an Excel Spreadsheet containing the names, titles, contact information, status and follow-up steps for a number of WMT DPM surgeons who attended a WMT Foot and Ankle Symposium.  TAC at ¶¶72–76.[3]

- On April 29, 2017, **Gordon** forwarded an "Ankle Charcot Comp Plan" containing WMT compensation information to his personal email.  TAC at ¶¶107–109.

---

[3] Paragon's complaints that WMT failed to allege why the allegations against **Albert DaCosta** demonstrate misappropriation are incorrect.  To begin with, **DaCosta's** role in Paragon's efforts to misappropriate WMT's trade secrets extend far beyond his efforts to steal WMT's customer and surgeon lists, and includes his efforts to steal WMT's KOL's as well as unfairly compete by inducing KOLs with equity interests in Paragon.  But the fact that this information was sent from his personal email less than two weeks before departing WMT to form a competing orthopedic company evidences that **DaCosta** maintained possession of this information outside of WMT.  Moreover, there can be no dispute that customer lists, contact information, surgeon status and follow-up steps can be trade secrets.  *See supra* pp. 6-7 (citing cases); TAC at ¶73-75.

- On Jan. 25, 2018, **Yoder** forwarded a "Lonestar: #1 in 2018" PowerPoint to his personal email containing WMT sales and performance data, including detailed growth and decline analysis, year-over-year sales numbers, market analysis and growth trajectories, sales performance for key market areas.[4]  TAC at ¶¶110–120.

Far from being "conclusory," WMT's allegations detail specific incidents of misappropriation confirmed by documented evidence that fully satisfy the requirements of Rule 8. *See Stidham*, 265 F.3d at 1149 (a "12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim").

### B.        The Complaint Alleges Paragon Knew Of And Engaged In Misappropriation

Paragon argues it can escape liability for misappropriating WMT's trade secrets by simply claiming that "Paragon"—as somehow distinct from its officers and employees—did not misappropriate anything, a concept not supported under Colorado law.  *See e.g., In re Stat–Tech Sec. Litig.,* 905 F. Supp. 1416, 1422 (D. Colo.1995) ("Because a corporation can act only through its agents, the actions of corporate officers and directors are attributable to the corporate entity.").

In its motion papers, Paragon alleges that WMT's alleges "no facts showing that Paragon encouraged, or even knew about, the alleged misappropriation." ECF 112, at 6.  But the Complaint details Paragon's preconceived path to target and retain WMT's Former Reps and misappropriate WMT's confidential trade secret information.  As set forth above, WMT identified numerous specific instances where the Paragon Founders misappropriated information or knowingly encouraged Former WMT Reps to misappropriate WMT trade secret information in an effort to capture WMT's lower extremities market share.  TAC at ¶¶ 72-76, 80–101, 107–109, 110–120, 121–129, 130–139.  These allegations more than satisfy the requirements of Rule 8.  *See Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only 'give the defendant fair

---

[4] Notably, the Lonestar PowerPoint contains a confidentiality legend that states "Contents are Confidential – Wright Internal Use Only."  TAC at ¶¶110-120.

notice of what the claim is and the grounds upon which it rests.'") (citation omitted).

Paragon's (continued) reliance on *Ciena* and *ReMax* is misplaced. These cases stand for the unremarkable proposition that merely employing an individual who had access to a competitor's trade secrets is not enough to state a claim for trade secret misappropriation. In *Ciena*, a defendant hired the plaintiff's former employee who had access to trade secrets related to the plaintiff's business strategies. *Ciena Commc'ns, Inc. v. Nachazel*, No. 09–cv–02845, 2010 WL 3489915 *4 (D. Colo. Aug. 31, 2010). The Court found that plaintiff's complaint lacked any specific factual allegations of disclosure of trade secrets, alleging *only* that the former employee and defendant "have misappropriated, or threaten to misappropriate, [plaintiff's] trade secrets for the purpose of using and exploiting such information . . ." *Id*. The Court found that, without "specific factual averments" of disclosure or use, this singular allegation was insufficient to impute the employee's acquisition of trade secrets to his new employer. *Id*.

Faced with a similar challenge, the *ReMax* Court held that plaintiff's allegation that defendant "used [plaintiff's] confidential information (including its trade secrets) to launch its operations" was insufficient to state a claim that it actually did so. *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F.Supp.3d 1163, 1175–76 (D. Colo. 2018)

The blanket allegations in *Ciena* and *ReMax* stand in stark contrast to the specific facts alleged in this case. Where—as here—a former employee serves in an essentially identical position at the new company, and is largely responsible for the generation of business, the former employee does not have to transmit the information to anyone at the new company to find the new company used the trade secrets. *See SBM Site Servs.*, 2012 WL 628619, at *10 (holding proof of actual use by defendant not required where former employee obtained near identical sales position at defendant's company) (*citing Xantrex*, 2008 WL 2185882 at *19 (same)). As plead throughout

the Complaint, both the Paragon Founders and Former WMT Reps "began working for Paragon 28 in the same or substantially the same role as they previously held for Wright Medical after terminating employment with Wright Medical." *See e.g.,* TAC at ¶¶ 47, 53, 72, 99, 115, 125, and 134. And, of course, as "high-level officers" and "reps," each of the former WMT employees were "largely responsible for the generation of business" at WMT and remain in that role at Paragon. *See Id.* at *10; *Xantrex*, 2008 WL 2185882 at *19. The reps are targeting the same territories and clients as they had previously served while employed with WMT and, thus, it is fair to infer that, in now selling against WMT, the reps are necessarily using WMT's trade secrets regarding those customers. TAC at ¶¶82, 85, 103-105, 111–115, 122, 125, 131, and 134.

Moreover, unlike *Ciena* and *ReMax,* here WMT has alleged that Paragon was not only "aware" that the Former WMT Reps had misappropriated WMT trade secrets, its officers *knowingly and actively participated in it. See* TAC at ¶¶ 64, 67-93. For example, WMT provides documentary evidence showing the specific date, time, and method of communication used by Paragon Founder **Rosenthal** to attempt to convert WMT customers using WMT's trade secret information provided by a Former WMT Rep. *See* TAC at ¶¶ 80-93. The Complaint details **Rosenthal's** and Paragon's efforts to generate product literature and a price list comparing its products to WMT's using information confidential to WMT. *See id.* Unlike *Ciena* and *ReMax,* WMT's allegations are detailed, specific, and verifiable. There is no question that the Complaint states "a short and plain statement" of trade secret misappropriation*.* Fed. R. Civ. P. 8(a)(2).

## C.    WMT's Common Law Claims Are Not Preempted

Paragon argues (again) that WMT's claims for intentional interference with contracts, civil theft, and conversion are preempted in their entirety by CUTSA's preemption provision, C.R.S.

§ 7–74–108.[5]  But "[t]his Court has rejected the contention that CUTSA was intended as a 'blanket preemption to all claims that arise from a set of circumstances that happen to involve information that the plaintiff claims is in the nature of a trade secret.'"  *SBM Site Servs.*, 2012 WL 628619, at *10 (quoting *Powell Prods., Inc. v. Marks,* 948 F. Supp. 1469, 1475 (D. Colo. 1996)); *see also Gates Corp. v. CRP Indus., Inc.*, No. 16–cv–01145, 2017 WL 5714342, at *5 (D. Colo. Nov. 28, 2017) (CUTSA does not preempt tortious interference claims).

"Preemption does not bar every claim arising from the same set of facts." *Gates*, 2017 WL 5714342, at *5.  Rather, the Court has adopted a tailored approach where only claims "restating the same operative facts as would *plainly* and *exclusively* spell out *only* trade secret misappropriation" are preempted.  *Id.* (emphases added).  Thus, "the salient question . . . is whether a challenged common law claim depends solely on a finding of trade secret status to be actionable. Where it does not, the claim is not preempted." *Virtual Cloud Servs., Inc. v. CH2M Hill, Inc.,* No. 02-01004, 2006 WL 446077, *2 (D. Colo. Feb. 21, 2006).

Here, WMT's counts for civil theft and conversion are not preempted, because they are premised on Paragon's possession and use of "confidential material" that is separate and apart from the trade secrets.  *See* TAC ¶¶ 339, 345.  *See, e.g., L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* 863 F. Supp. 2d 1066, 1087 (D. Colo. 2012) (refusing to preempt tort claim under CUTSA where "L3 has alleged numerous ways in which the Defendants were unjustly enriched by events that do not involve any trade secrets," such as "misappropriation of physical equipment, misuse of L3's internal computer resources, and various other acts"); *Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*, No. 13-00415; -00143, 2014 WL 103812 (D. Colo. Jan. 10, 2014)

---

[5] C.R.S. § 7–74–108 provides that CUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of trade secrets."

(because a tort claim involved "misappropriation of business data that, although valuable, does not meet the statutory definition of 'trade secret,'" preemption was improper); *SBM Site Servs.*, 2012 WL 628619, at \*11 (civil theft claim not preempted by CUTSA).  Indeed, WMT's TAC expressly conditions these claims upon a finding that WMT's information is not trade secret:

> To the extent that this information is deemed business information that, while valuable, does not rise to the level of trade secret, Wright Medical pleads in the alternative that Paragon 28 has taken this material and information, and has used it for its own benefit without Wright Medical's consent or authorization.

*See* TAC at ¶340 and 346.  This Court recently found that "dismissal under Rule 12(b)(6) is inappropriate at this stage in the proceedings" where claims were plead in the alternative.  *Abbot Labs. v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399, at \*3 (D. Colo. Nov. 17, 2017).

Similarly, application of CUTSA preemption provision does not bar WMT's claim for intentional interference with contracts because that claim does not depend upon a determination that WMT's trade secrets are protectable.  As *Powell* expressly noted:

> Although plaintiff contends that its manufacturing process and machine are protectable trade secrets, its claims for [tortious] interference do not depend upon that determination.  Defendants could be liable for interference with business relations even if they did not misappropriate any trade secrets from plaintiff.  Accordingly, those claims would not conflict with the UTSA . . .

*Powell*, 948 F.Supp. at 1474 (emphases added).

WMT's interference claim accuses Paragon of "deliberately target[ing] and knowingly solicit[ing] the Former Wright Medical Employees in order to induce them to the breach their obligations under their respective Confidentiality Agreements…." TAC at ¶333.  WMT alleges that Paragon's actions are motivated by its desire "to recruit and hire employees like the former [WMT] Sales [Reps] who have precisely the type of experience, training, education, and respect in the marketplace that will give Paragon a competitive advantage" without having to invest the "substantial time, effort and expense" of training those reps and developing those customer

relationships.  TAC at ¶332–333.  Under this Court's "tailored approach," none of WMT's claims

for civil theft, conversion, and intentional interference depend on a "finding of trade secret status

to be actionable."  *See Powell*, 948 F. Supp. at 1474 (holding "a plaintiff may also bring claims

that. . . include additional elements not necessary for a misappropriation claim under the UTSA").

### D.      WMT's Unfair Competition Claims Withstand Scrutiny

Paragon argues that its public advertisement – which falsely represented that a well-known

WMT KOL, Dr. Christopher Hyer, would be among Paragon's "anticipated course faculty" at a

Paragon sponsored cadaver course – is not actionable because it was only a "prediction." ECF 112,

at 13-14.  Paragon's argument misses the point.   First, whether Paragon's statement was a

"prediction" is a question of fact beyond the scope of a motion to dismiss.  But second, even if this

factual question were properly resolved, Paragon's purported explanation is belied by the

allegations in WMT's Complaint.  WMT alleges that Dr. Hyer and at least one other WMT KOL

"did not provide consent for Paragon 28 to use his name and picture in connection with this

Paragon 28-sponsored cadaver course" and that "Paragon 28 was aware that Dr. Hyer did not

provide consent ... ***prior to*** publishing its advertisement, and ***knowingly and/or recklessly***

***published its advertisement containing false information*****.**"  TAC at ¶144–145.  Clearly Paragon

could not have reasonably "predicted" Dr. Hyer would be "anticipated course faculty" if Paragon

***knew*** that he had refused Paragon's invitation.  To represent otherwise is false and misleading.[6]

With respect to Paragon's arguments to dismiss the remaining grounds for WMT's unfair

---

[6] The Tenth Circuit has not ruled on whether Lanham Act claims are governed by Rule 9(b).  *See Cocona, Inc. v. Singtex Indus. Co., Ltd.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *7 (D. Colo. Oct. 9, 2014).  Nonetheless, ¶¶141–150 of the TAC allege the who, what, when, where, and how of the falsehood, thus meeting the requirements of Rule 9(b) by identifying the false statement with particularity, showing it is literally false, and alleging the consequences of that statement.  *Id.* at *8; *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012).

competition claims, including Paragon's illicit inducement of WMT's KOL's with equity interests in Paragon and Paragon's passing off of WMT's patented inventions as its own, WMT's allegations are no so easily cast aside.[7] "What constitutes unfair competition is a question of fact; no inflexible rules govern the applicability of the doctrine." *Powell Prods.,* 948 F. Supp. at 1475; *see also Heller v. Lexton-Ancira Real Estate Fund, Ltd.,* 809 P.2d 1016, 1021 (Colo. Ct. App. 1990) (stating that the tort of unfair competition prohibits the appropriation of plaintiff's expenditure of labor, skill, and money).  Moreover, Paragon's actions deceive the public by giving the market the false impression that WMT's KOL's are switching to Paragon's products because they are somehow superior (instead of simply a more lucrative financial arrangement).  Moreover, Paragon actively advertises its patent filings on its website and, thus, its attempt to pass of WMT's inventions as its own is likely to deceive the public as well.

WHEREFORE, Paragon's Motion should be denied and Paragon should be Ordered to file its Answer within fourteen days from entry of this Court's Order.

Dated:  November 20, 2018

Samuel W. Apicelli
swapicelli@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Christopher S. Kroon
cskroon@duanemorris.com
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA  02110-1724
Telephone: 857.488.476

Respectfully submitted,

*/s/ Thomas W. Sankey*
Thomas W. Sankey (lead counsel)
twsankey@duanemorris.com
Diana M. Sangalli
dmsangalli@duanemorris.com
**DUANE MORRIS LLP**
1330 Post Oak Boulevard, Ste. 800
Houston, TX  77056-3166
Telephone:  713.402.3900
*Counsel for Plaintiff*
*Wright Medical Technology, Inc.*

---

[7] Paragon identifies the additional grounds underlying WMT's unfair competition claim – Paragon's unlawful inducement of WMT employees to join Paragon – but does not argue why such allegations fail to state a claim. ECF 112 at 12.  This is because such an argument would be contrary to Colorado law.  *See e.g., Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1309 (D. Colo. 1984) (allegations that former employee was recruiting employees for rival while still in plaintiff's employ to obtain confidential information from plaintiff stated a claim for unfair competition).

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November 2018, I electronically filed the foregoing **PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF and to all counsel of record for Defendant.

/s/ Thomas W. Sankey
Thomas W. Sankey