IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00691-PAB-STV

WRIGHT MEDICAL TECHNOLOGY, INC.,

　　Plaintiff,

v.

PARAGON 28, INC.,

　　Defendant.

---

## ORDER

---

　　This matter is before the Court on defendant's Motion to Dismiss Counts Eleven through Seventeen of the Third Amended Complaint [Docket No. 112]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

## I. BACKGROUND[1]

　　Plaintiff Wright Medical Technology, Inc. ("Wright") is a medical device developer, manufacturer, and distributor. Docket No. 89 at 3, ¶ 9. Among its products are surgical plates and other instruments used to repair bones in the foot and ankle areas. *Id.* Defendant Paragon 28, Inc. ("Paragon") also manufactures and distributes orthopedic plate systems and other devices used to repair bones in the foot and ankle. *Id.* at 8, ¶¶ 33-34.

---

　　[1]The Court assumes the allegations in plaintiff's third amended complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Paragon was founded by three former high-level Wright employees – Albert DaCosta, Frank Bono, and Matt Jarboe – and one former Wright independent contractor, Lee Rosenthal (collectively, "the founders"). *Id.* at 10-11, ¶¶ 43-44. Since Paragon's founding, at least thirteen former Wright employees or independent contractors have begun working for or with Paragon. *Id.* at 11, ¶ 44. Each of the former Wright employees worked in the same or substantially the same position at Paragon as he or she had at Wright. *Id.* at 12, ¶ 47.

While employed at Wright, these individuals had access to and knowledge of Wright's trade secrets, including its current and planned product lines, business plans, customers, sales, and other valuable information. *Id.* at 12-13, ¶¶ 48-49. Each of the founders had entered into a confidentiality agreement with Wright agreeing to keep confidential Wright's trade secret information. *Id.* at 14, ¶ 52. Further, at least twelve of the former employees had signed confidentiality, non-competition, non-solicitation and/or intellectual property rights agreements while at Wright. *Id.* at 12, ¶ 46.

Wright contends that the former employees misappropriated its confidential and trade secret information for the benefit and financial gain of Paragon, with the approval of Paragon. *Id.*, ¶ 48. For example, Wright alleges that several former employees sent Wright confidential or trade secret information to themselves via email before they left employment at Wright. *See, e.g., id.* at 20, ¶ 74; at 23, ¶¶ 86-87; at 32, ¶ 117; and at 35, ¶¶ 136-37. Wright contends that the misappropriation was "for the direct benefit of Paragon" and gave Paragon "a significant and unfair competitive advantage." *See, e.g., id.* at 20, ¶ 76.

Further, Wright alleges that the founders knowingly and deliberately misappropriated Wright's confidential and trade secret information. More specifically, Wright alleges that Bono and DaCosta, while at Wright, were privy to confidential and trade secret information that included the specific contractual terms and licensing agreements entered into between Wright and surgical consultants or Wright and Key Opinion Leaders ("KOLs"). *Id.* at 17, ¶ 63. Wright alleges that DaCosta and Bono misappropriated this information by using it to solicit certain surgical consultants and KOLs to cease their relationships with Wright and switch to similar roles at Paragon. *Id.* Further, Wright alleges that Rosenthal induced former employee Luke Gordon to solicit a Wright contract manager for the contract manager's list of products purchased from Wright so that Paragon could undercut Wright's pricing and induce the contract manager to purchase equivalent devices from Paragon. *Id.* at 22-24, ¶¶ 81, 88-90.

Finally, Wright alleges that Paragon has participated in unfair competition. For example, Paragon promoted a "cadaver course" intended to teach surgeons to perform procedures of the foot and listed Dr. Christopher Hyer, a Wright KOL, as "anticipated course faculty" on the course's promotional material. *Id.* at 37, ¶ 142-43. The advertisement included Dr. Hyer's name and photo. Docket No. 89-19. Wright alleges that Dr. Hyer did not provide consent for Paragon to use his name and picture and that Paragon was aware that it did not have Dr. Hyer's consent. Docket No. 89 at 37, ¶ 144-45. Wright argues that this constitutes false advertising. *See id.* at 37. Moreover, Wright alleges that Paragon engaged in unfair competition when it submitted a patent application that was nearly identical to a patent application that Wright had filed a

month prior.  *Id.* at 20-21, ¶¶ 77-79.  It also alleges that Paragon has offered several KOLs equity or ownership interests in Paragon and that the KOLs are using Paragon products in surgical procedures without disclosing their interests, which constitutes unfair competition.  *Id.* at 17, ¶ 64; at 76, ¶ 300.

On September 28, 2018, Wright filed its Third Amended Complaint [Docket No. 89], raising seventeen claims against Paragon.  Docket No. 89 at 38-85.  Paragon filed a partial Motion to Dismiss Counts Eleven through Seventeen of the Third Amended Complaint [Docket No. 112] on October 31, 2018.  The claims Paragon seeks to have dismissed are (1) misappropriation of trade secrets under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) trade secret misappropriation under the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-102(4); (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(A)(1); (4) common law unfair competition; (5) intentional interference with contracts; (6) civil theft; (7) conversion.  *Id.* at 70-84.  Wright filed a response [Docket No. 115], to which Paragon replied.  Docket No. 118.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken*

*Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (omission marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

## III.  ANALYSIS

### A.  Trade Secret Misappropriation

Paragon argues that Wright's claims for trade secret misappropriation under DTSA and CUTSA must be dismissed for failure to state a claim because (1) Wright has failed to show that Paragon itself was responsible for any misappropriation; (2)

Wright has failed to allege that the Paragon founders engaged in misappropriation; and (3) Wright has failed to sufficiently identify its trade secrets. Docket No. 112 at 6-9.

To state a claim for misappropriation of trade secrets, Wright must allege facts supporting the following elements: (1) Wright possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) Paragon knew, or should have known, that the trade secret was acquired by improper means. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). CUTSA defines a "trade secret" as

> any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7-74-102(4). A "trade secret" under DTSA includes:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

Paragon argues that Wright has failed to identify trade secrets because, throughout its complaint, it "continues to refer to its alleged 'confidential, highly confidential and trade secret information' without distinguishing between any of the

aforementioned categories of information and fails to plead what it considers to be its trade secrets with sufficient specificity." Docket No. 112 at 9. While Wright often refers to its "confidential, highly confidential and trade secret information" in its complaint, it also sets out its purported trade secrets in detail, including "[p]roduct cost and pricing information, including pricing strategies, . . . customer demand and purchasing information, and the terms of customer and supplier contracts," and "[k]nowledge of [Wright's] surgical consultants/KOLs, including consulting contract provisions, including ownership of IP and compensation." Docket No. 89 at 70, ¶ 267. Accordingly, Wright has done more than plead "conclusory recantations of claim elements," as Paragon suggests. Docket No. 112 at 10. The Court finds that Wright's allegations sufficiently identify the nature of the trade secrets allegedly misappropriated so as to give Paragon fair notice of the basis of Wright's claim. *See SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012) (complaint that "set forth specific documents and subjects of information" was sufficient to identify purported trade secrets at issue).

Paragon also argues that Wright has failed to state a claim for trade secret misappropriation because it did not allege that Paragon had knowledge of any alleged misappropriation performed by its employees or that it used what was allegedly misappropriated. Docket No. 112 at 7. To support its argument, it relies upon *Ciena Communications, Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 WL 3489915 (D. Colo. Aug. 31, 2010). In *Ciena*, the court rejected an argument that an employee's acquisition and possession of another's trade secrets can be imputed onto the employer simply by virtue of the employer hiring that employee. *Id.* at *4. To hold

7

otherwise would "essentially impos[e] strict liability on a corporation that hires a person possessing others' trade secrets." *Id.* Rather, the plaintiff must make "specific factual averments showing [the defendant's] 'misappropriation' of [the plaintiff's] secrets." *Id.*

The Court agrees with Paragon that Wright must allege facts that go beyond Paragon's mere hiring of former Wright employees who may have been privy to Wright's confidential information and trade secrets. Much of Wright's complaint fails to do so. Wright's complaint is replete with factual allegations concerning its former employees' acquisition of Wright trade secrets and subsequent alleged trade secret misappropriation, but lacks any factual allegation that Paragon itself misappropriated or knowingly used such misappropriated information. For example, Wright alleges that former employee Adam Yoder "became privy to certain of [Wright's] trade secret information" during his employment at Wright and left Wright to work for Paragon in the same or a substantially similar role. Docket No. 89 at 31, ¶¶ 113, 115. Yoder is alleged to have sent himself an email containing Wright's "confidential, highly confidential and trade secret information" prior to ending his employment at Wright. *Id.*, ¶ 116. Finally, Wright alleges that "[u]pon information and belief, Yoder worked in concert with other Paragon employees to hide and conceal Yoder's breach of his obligations not to disclose confidential information" and that "[s]uch information clearly provided Yoder, and thusly Paragon, a significant and unfair competitive advantage." *Id.* at 32-33, ¶ 120.[2]

---

[2]*See also* Docket No. 89 at 33, ¶ 124, at 33, ¶ 125, at 33-34, ¶ 126, and at 34, ¶ 129 (making same allegations as to former Wright employee Matthew Brock Howard) and *id.* at 35, ¶ 133-135, at 36, ¶ 139 (making same allegations as to former Wright employee Brandon Strange).

Such allegations are insufficient to plead a claim of trade secret misappropriation against Paragon. Although Wright alleges that Paragon "was aware" of the former employees' misappropriation and "actively participated in, substantially assisted, or endorsed" the former employees' use of that information, Docket No. 89 at 70, ¶ 268, this allegation is conclusory and not supported by factual averments. *See Ciena*, 2010 WL 3489915, at *4, *5 (finding allegation that defendant "misappropriated, or threaten[ed] to misappropriate, [plaintiff's] trade secrets for the purpose of using and exploiting such information" was "entirely conclusory" and insufficient to state a claim). Wright makes no specific factual allegation that Paragon (1) was aware of these former employees' alleged misappropriation or (2) used the information that the former employees allegedly misappropriated. The mere fact that Paragon hired individuals to work in similar roles as they held at Wright is insufficient to impute any misappropriation onto Paragon. *Ciena*, 2010 WL 3489915 at *4. "In the absence of specific factual averments showing [the defendant's] misappropriation of [the plaintiff's] secrets," the Court will not "reflexively impute" any improper acquisition of Wright's trade secrets to Paragon. *Id.* Accordingly, the Court will dismiss Wright's trade secret misappropriation claims to the extent that they are based on the actions of the non-founder employees.

Paragon also argues that Wright's allegations as to Paragon's founders are insufficient to state a claim of trade secret misappropriation. Docket No. 112 at 8-9. The Court disagrees. In its complaint, Wright alleges that certain Paragon founders, "acting on behalf of Paragon," "deliberately targeted and knowingly solicited known [Wright Key Opinion Leaders ("KOLs")], using confidential, highly confidential and trade secret information learned while they were employed at Wright [], in order to induce

9

them to work for Paragon."  Docket No. 89 at 17, ¶ 62.  Specifically, Wright asserts that founders Bono and DaCosta have used their knowledge of the specific contractual terms and licensing agreements created by Wright "to unfairly solicit and attempt to convert certain Wright Medical surgical consultants and KOLs to switch to similar roles at Paragon."  *Id.*, ¶ 63.  Further, Wright claims that the founders used this information to benefit Paragon, alleging that "[u]pon information and belief," Paragon, as well as Bono and DaCosta, have offered several Paraon KOLs equity positions or ownership interests in Paragon to entice them to consult for Paragon.  *Id.*, ¶ 64; *see Viesti Assocs., Inc. v. Pearson Educ.*, *Inc.*, 2013 WL 1229534, at *4 (D. Colo. Mar. 26, 2013) (considering allegations based "on information and belief" when allegations otherwise pled factual statements and met requirements for notice pleading).

In addition, Wright alleges that founder Rosenthal, along with former employee Gordon, knowingly obtained Wright trade secret information from a third-party contract manager in order to "undercut Wright Medical pricing and unfairly induce the Contract Manager to purchase plates from Paragon 28 instead of Wright Medical."  Docket No. 89 at 24, ¶ 90, at 26, ¶ 93.  The Court finds that these allegations set out (1) the existence of trade secrets; (2) that the trade secrets were used or disclosed without Wright's consent; and (3) Paragon knew or should have known that the trade secrets were acquired by improper means.  Accordingly, these allegations are sufficient to state a claim for trade secret misappropriation.  *Contra RE/MAX*, 295 F. Supp. 3d at 1175 (dismissing claims where plaintiff failed to make "specific factual allegations of disclosure of trade secrets by . . . former employees" or "specific factual allegations of how such employees used" the trade secrets).

Any argument that the actions of Paragon's founders cannot be imputed onto Paragon, *see* Docket No. 118 at 3 n.3, is without merit. Generally, "the actions of corporate officers and directors are attributable to the corporate entity." *In re Stat-Tech Securities Litigation*, 905 F. Supp. 1416, 1422 (D. Colo. 1995). Unlike *Ciena* or *RE/MAX*, this is not simply a case of an employer hiring individuals with prior knowledge of another company's trade secrets with no allegation that the employees wrongfully disclosed those trade secrets or that the employer used the wrongfully disclosed trade secrets. Rather, Wright alleges that the founders of Paragon have used their personal knowledge of Wright trade secret information in order to incur benefits for Paragon. A corporation acts through its agents, *Stat-Tech*, 905 F. Supp. at 1422, and the actions of the Paragon founders may be imputed onto the corporation.

Thus, insofar as it alleges that DaCosta or Bono used confidential contractual information to solicit surgical consultants and KOLs to work for Paragon, or that Rosenthal and Gordon misappropriated purchasing and pricing trade secrets to undercut Wright pricing, Paragon's motion will be denied and Wright's trade secret misappropriation claim can proceed.

## B. Preemption

Paragon next argues that Wright's claims for conversion, intentional interference with a contract, and civil theft are preempted by its trade secret misappropriation claims. Docket No. 112 at 10. "CUTSA preempts common law claims that 'conflict' with its trade secret misappropriation provisions." *Abbott Labs v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399, at *3 (D. Colo. Nov. 17, 2017) (citing *Powell Prods., Inc. v.*

*Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)); *see also* Colo. Rev. Stat. § 7-74-108(1) ("[T]his article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"). "[I]f a common law claim is no more than a restatement of the same operative facts which would plainly and exclusively spell out trade secret misappropriation, preemption is appropriate." *Abbott*, 2017 WL 5517399, at *3. Thus, "the salient question in addressing . . . preemption is whether a challenged common law claim depends solely on a finding of trade secret status to be actionable. Where it does not, the claim is not preempted." *Virtual Cloud Services, Inc. v. CH2M Hill, Inc.*, No. 02-cv-01004, 2006 WL 446077, at *2 (D. Colo. Feb. 21, 2006).

For example, when a claim "involv[es] a trade secret misappropriation issue," but also "include[s] additional elements not necessary for a misappropriation claim" under CUTSA, the claim is not preempted. *Powell*, 948 F. Supp. 1474. In *Gates Corporation v. CRP Industries, Inc.*, No. 16-cv-01145-KLM, 2017 WL 5714342 (D. Colo. Nov. 28, 2017), the court noted that the elements required to prove tortious interference with a contract involve consideration of different elements than a trade secret misappropriation claim. *Id.* at *6. Thus, the tortious interference with a contract claim was not preempted "because it include[d] an element that does not need to be proven for the CUTSA claim." *Id.*

To prove intentional interference with a contract, a plaintiff must demonstrate "(1) the existence of a contract between the plaintiff and a third-party; (2) knowledge by the defendant of the contract or knowledge of facts which would lead the defendant to

inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract with the third-party; (4) action by the defendant which induces the breach of contract; and (5) damages to the plaintiff." *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.*, 831 P.2d 908, 912 (Colo. App. 1991). Plaintiff need not demonstrate, for example, the existence of a contract in order to prove trade secret misappropriation. Thus, plaintiff's intentional interference with a contract claim is not preempted by CUTSA. *See Powell*, 948 F. Supp. at 1474 (finding that plaintiff's interference with business relationships claim was not preempted because the defendant "could be liable for interference with business relations even if [it] did not misappropriate any trade secrets from plaintiff."). Paragon's motion will be denied as to Wright's intentional interference with a contract claim.

When analyzing whether claims of civil theft or conversion are preempted by CUTSA, courts look to the nature the subject of the alleged theft or conversion. To the extent that a plaintiff seeks "to recover for confidential information that does not rise to the level of a trade secret or has value 'independent of its value as a trade secret,'" the claim would not be preempted. *Abbott*, 2017 WL 5517399, at *3 (quoting *Virtual Cloud Servs., Inc.*, 2006 WL 446077, at *4). For example, conversion or civil theft claims involving the alleged misappropriation of physical property are not preempted by CUTSA. *See SBM Site Services*, 2012 WL 628619, at *11 (civil theft claim not preempted because complaint alleged theft of physical property, which would not be the subject of a CUTSA claim); *cf. L-3 Commc'ns Corp. v. Jaxon Engineering & Maintenance, Inc.*, 863 F. Supp. 2d 1066, 1087 (D. Colo. Mar. 27, 2012) (unjust

enrichment claim not preempted where plaintiff alleged misappropriation of physical equipment and misuse of internal computer resources). However, preemption would bar a conversion or civil theft claim that seeks only to recover for the alleged misappropriated trade secrets. *Abbott*, 2017 WL 5517399, at *3; *see also Powell*, 948 F. Supp. at 1475 ("To the extent that plaintiff's claim seeks recovery for defendants' misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets. If the design of the plaintiff's machine is not a trade secret, plaintiff has no property right in its design, and it therefore would have no claim.").

Wright's civil theft and conversion claims are based on the alleged misappropriation of Wright's "business plans and roadmaps, customer lists and demand[s], product pricing lists, discount plans, distribution, supply agreements, sales training and detailed knowledge concerning the design, dimensions and manufacturing processes used to develop, manufacture and sell" certain of its products. Docket No. 89 at 83, ¶ 339, at 84, ¶ 345. The complaint states that, "[t]o the extent that this information is deemed business information that, while valuable, does not rise to the level of trade secret, Wright Medical pleads in the alternative that Paragon 28 has taken this material and information, and has used it for its own benefit without Wright Medical's consent or authorization." *Id.* at 84, ¶ 340, at 85, ¶ 346.

Wright argues that the Court should follow *Abbott* and allow its civil theft and conversion claims to survive the motion to dismiss stage. Docket No. 115 at 13. In *Abbott*, the court declined to dismiss plaintiff's conversion claim on preemption grounds because it was "without a sufficient record to determine whether some, part, or all of

Plaintiff's conversion claim depends on a finding of trade secret status and is, therefore, preempted by the CUTSA."  2017 WL 5517399, at *3 (noting that "none of the allegedly converted information has been presented to the Court, nor has it been described in much detail.").  Further, *Abbott* noted that Rule 8(d)(2) allows pleading in the alternative, even where the alternative claims are inconsistent.  *Id.*; Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").  The court determined that "under Rule 8, dismissal under Rule 12(b)(6) is inappropriate at this stage in the proceedings."  *Abbott*, 2017 WL 5517399, at *3.

*Abbott* is distinguishable because the Court has a sufficient record before it to determine that Wright's claims are preempted by CUTSA.  Wright makes no allegation that the allegedly converted or stolen property has value "independent of its value as a trade secret," *Abbott*, 2017 WL 5517399, at *3, and has not alleged that Paragon stole any physical property from it.  Even if the Court were to agree with Wright's contention that it can plead these tort claims in the alternative because it also alleges that Paragon stole "confidential" and "highly confidential," non-trade-secret information, Wright's claims are still insufficient.  *See Cypress Advisors, Inc. v. Davis*, No. 16-cv-01935-MSK-MEH, 2019 WL 1242331, at *5 n.5 (D. Colo. Mar. 18, 2019) (noting that "the theft of intellectual property that does not rise to the level of a trade secret would not give rise to a claim for civil theft, as the property's owner cannot demonstrate some other legal basis to exclusive use"); *see also Hawg Tools, LLC v. Newso Int'l Energy Servs., Inc.*, 2015 WL 1064519, at *5 (D. Colo. Feb. 23, 2015) (recommending dismissal of civil theft

and unjust enrichment claim because allegedly stolen designs were not "protectable by virtue of anything other than their potential status as trade secrets"). Because Paragon is alleged to have stolen "only information, and only information that could be characterized as a trade secret," Wright's civil theft and conversion claims are preempted. *Cypress Advisors*, 2019 WL 1242331, at *5. The Court will grant Paragon's motion as to Wright's civil theft and conversion claims.

### C. Unfair Competition and False Advertising

Finally, Paragon argues that Wright's Lanham Act and common law unfair competition claims fail to state a claim under Rule 12(b)(6). Docket No. 112 at 12. To state a claim of unfair competition under the Lanham Act, the plaintiff must allege that (1) the defendant "made a false or misleading statement of fact in commercial advertising or promotion" about another's goods or services; (2) "the statement actually deceives or is likely to deceive a substantial segment of the intended audience"; (3) the deception is "material in that it is likely to influence purchasing decisions"; (4) "the defendant caused the statement to enter interstate commerce"; and (5) "the statement results in actual or probable injury to the plaintiff." *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999); *see also* 15 U.S.C. § 1125(a)(1)(A)-(B). Further, under Colorado law, "[t]he law of unfair competition has its roots in the common-law tort of deceit." *Powell*, 948 F. Supp. at 1475. "[W]hat constitutes unfair competition is a question of fact; no inflexible rules govern the applicability of the doctrine, but the most important consideration [is] whether defendant's conduct will confuse or deceive the public." *US West, Inc. v. Bus. Discount Plan, Inc.*, 196 F.R.D.

576, 593 (D. Colo. 2000) (internal quotation omitted).  The Colorado Court of Appeals

has framed the inquiry as a question whether the defendant has "unfairly

misappropriat[ed] and exploit[ed] [a competitor's] business values."  *Id.*  (quoting *Am.

Television and Commc'ns Corp. v. Manning*, 651 P.2d 440, 445 (Colo. App. 1982)).

Paragon first argues that Wright's allegations fail to state a claim because

naming Dr. Hyer as an anticipated course faculty member was not a false

representation of fact, but merely a prediction and therefore cannot constitute false

advertising.  Docket No. 112 at 13.  The Court disagrees.  Wright alleges in its

complaint that Dr. Hyer, along with his picture, is listed among the anticipated course

faculty for Paragon's cadaver course.  Docket No. 89 at 37, ¶¶ 142-44; Docket No. 89-

19.  Wright alleges that Dr. Hyer did not provide consent for his name and picture to be

used in conjunction with the cadaver course.  Docket No. 89 at 37, ¶¶ 143-44.  Finally,

Wright claims that Paragon "was aware that Dr. Hyer did not provide consent for

Paragon 28 to use his name and picture in connection with this Paragon 28-sponsored

cadaver course prior to publishing its advertisement, and knowingly and/or recklessly

published its advertisement containing false information."  *Id.*, ¶ 145.

The Court finds that these allegations are sufficient to state a false advertising

claim.  While "[a]n honest or sincere statement of belief about a future event is not

actionable," . . . a statement known at that time by the speaker to be false, or a

statement by a speaker who lacks a good faith belief in the truth of the statement, may

constitute an actionable misrepresentation."  *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919,

931 (9th Cir. 2010).  Wright has sufficiently pled that Paragon lacked a good faith belief

in the truth of its statement that Dr. Hyer was an anticipated course faculty member at

its cadaver course, as it knew that Dr. Hyer had not provided consent to have his name and picture used in the promotion.  Docket No. 89 at 37, ¶ 144.  The Court is unpersuaded by Paragon's argument that this was a mere "prediction," as the cases Paragon cites in support of this argument are distinguishable.  *See, e.g., Randa Corp. v. Mulberry Thai Silk, Inc.*, 2000 WL 1741680, at *3 (S.D.N.Y. Nov. 27, 2000) (statement that defendant "would predict" that business acquisition would cause 30% revenue loss was not fraudulent statement); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 2014 WL 1329359, at *18 (S.D. Fl. Mar. 31, 2014) (statements indicating predictions about sales prospects not actionable as false advertising).  Paragon's argument is unavailing.

Paragon also argues that Wright's allegations about Paragon's purported failure to disclose its KOLs' equity or ownership interests "fails to plead an unfair competition claim" because there is no allegation of public confusion.  Docket No. 112 at 13-14.  Wright counters that "Paragon's actions deceive the public by giving the market the false impression that [Wright's] KOL[s] are switching to Paragon's products because they are somehow superior (instead of simply a more lucrative financial arrangement."  Docket No. 115 at 15.  However, in its complaint, Wright makes no allegation of deception.  It simply alleges that "[t]o the extent that these KOLs are using Paragon 28 products in surgical procedures without disclosing their respective equity and/or ownership interest in the company, these KOLs, and thusly Paragon 28, may be violating various statutes and unfairly competing with Wright."  Docket No. 89 at 17-18, ¶ 64.  And, although Wright alleges that Paragon's acts "are intended to cause confusion, to deceive, and to trade upon and reap the benefits of years of effort and

investment by Wright," *id.* at 18, ¶ 66, this allegation is not supported by any specific factual averments. This is insufficient to state a claim under Rule 12(b)(6). *Bryson*, 534 F.3d at 1286. Thus, the Court agrees with Paragon that Wright has failed to state a claim for unfair competition based upon Paragon's, or the KOLs', alleged failure to disclose the KOLs' interests in Paragon, and Wright's unfair competition claims will be dismissed insofar as they are based on these allegations.

Finally, Paragon argues that Wright fails to state a sufficient passing off claim. Docket No. 112 at 14. "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). In its complaint, Wright alleges that, one month after its '300 application was published, Paragon filed a provision application ("the '391 application") that has an "identical or near identical design" as that claimed in the '300 application, which Wright alleges is the basis for an unfair competition claim. Docket No. 89 at 21, ¶¶ 78-79; *see also id.* at 76-77, ¶¶ 301-04; at 80, ¶¶ 317-320. Paragon argues that Wright's claim must fail because (1) a patent application is not a tangible good offered for sale and (2) a patent application is not a marketing product. Docket No. 112 at 14.

The Court agrees that Wright's claim could be dismissed under either basis. A patent application is not a good or service under the Lanham Act, and a patent application is not a marketing product. *See Beane v. Beane*, 2008 WL 163044, at *1 (D.N.H. Jan. 15, 2008) ("A patent is not a 'good or service' as those terms are used in the Lanham Act."); *see also Akzo Nobel Surface Chemistry LLC v. Stern*, 2014 WL

6982674, at *3 (S.D. Ohio Dec. 9, 2014) (rejecting plaintiff's argument that filing a patent application equates to commercial advertising or promotion). Although Wright argues that "Paragon actively advertises its patent filings on its website and, thus, its attempt to pass [off] [Wright's] inventions as its own is likely to deceive the public," Docket No. 115 at 15, it makes no substantive argument as to why a patent application may be deemed a good or a service or why a patent application is commercial advertising or promotion material. To the extent Wright alleges that Paragon unfairly competed with it by filing the '391 application, Wright has failed to state a claim, and Paragon's motion to dismiss will be granted as to these allegations.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Paragon's Motion to Dismiss Counts Eleven Through Seventeen of the Third Amended Complaint [Docket No. 112] is **GRANTED IN PART** and **DENIED IN PART** as set forth in this order. It is further

**ORDERED** that Wright's eleventh and twelfth claims are **DISMISSED** insofar as they are based on allegations that non-founder employees misappropriated trade secrets, with the exception of the allegations as to Gordon in Docket No. 89 at 22-26, ¶¶ 81, 88-93. It is further

**ORDERED** that Wright's thirteenth and fourteenth claims are **DISMISSED** to the extent that they are based on the failure to disclose the KOLs' equity shares or the filing of the '391 application. It is further

**ORDERED** that Wright's sixteenth and seventeenth claims are **DISMISSED.** It is

further

**ORDERED** that, within fourteen days of this order, Paragon shall file its answer.


DATED September 30, 2019.

BY THE COURT:


  s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
Chief United States District Judge