EXHIBIT A

*Contains Highly Confidential Material Subject to Protective Order*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18-cv-00691-PAB-STV |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PARAGON 28, INC., | ) | |
| Defendant. | ) | |

---

## PLAINTIFF WRIGHT MEDICAL TECHNOLOGY, INC.'S
## MOTION FOR SUMMARY JUDGMENT

---

Wright Medical Technology, Inc. moves for summary judgment on (1) its affirmative claim that Paragon 28, Inc. infringed Wright's U.S. Patent No. 9,078,710, and (2) Paragon's counterclaims for abuse of process and tortious interference with prospective business advantage, for which Paragon cannot prove either causation or damages.

### LEGAL STANDARD

Summary judgment is appropriate "if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Faustin v. City & Cty. of Denver, Colo.*, 423 F.3d 1192, 1198 (10th Cir. 2005). The moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). The nonmoving party "cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial." *Borum v. Coffeyville State Bank*, 6 F. App'x 709, 711 (10th Cir. 2001). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine." *Id.*

*Contains Highly Confidential Material Subject to Protective Order*

## I. There Is No Genuine Dispute That Paragon's Caspar I Device Infringes Wright's Patent

The Caspar I Device, Paragon Part No. P28-150-0011, is a re-usable surgical instrument that Paragon sells as part of its Gorilla R3CON Plating System instrumentation. While Paragon purports to deny infringement of the '710 Patent in its interrogatory responses, Paragon has not attempted to rebut Wright's evidence of infringement. Given the absence of any genuine disputed factual issue, Wright is entitled to summary judgment of infringement.

### A. Statement of Undisputed Material Facts Relevant to Paragon's Infringement of the '710 Patent

1.      Wright is the named assignee of U.S. Patent No. 9,078,710 ("the '710 Patent"). Pl.'s 3d Am. Compl. Ex. 10, ECF 89-10.

2.      Paragon distributes, offers to sell, and sells the Caspar I Device as part of its Gorilla R3CON plating system instrumentation. Def.'s Am. Answer ¶ 253, ECF 415. ████████

████████████████████████████████████████████████

████████████████████ Ex. A, Def.'s Resp. to Interrog. 13, Jan. 29, 2021.[1]

3.      ████████████████████████████████████

████████████████████████████████████████████████

████████.

4.      The Caspar I Device includes all elements recited in each of claims 1, 9, 16, 18 and 19 of the '710 Patent ("the '710 Asserted Claims"). Ex. B, Declaration of Geoffrey B. Higgs, MD in Support of Plaintiff Wright Medical Technology, Inc.'s Motion for Summary Judgment of Infringement, Apr. 30, 2022 ("the Higgs Declaration")) at ¶¶ 4, 40-83 and Exhibit 1 (Higgs

---

[1] All exhibit citations are made with reference to the exhibits attached to the May 4, 2022 Declaration of Diana M. Sangalli in Support of Plaintiff Wright Medical Technology, Inc.'s Motion for Summary Judgment, filed concurrently herewith.

*Contains Highly Confidential Material Subject to Protective Order*

Infringement Report, Mar. 19, 2021) attached thereto). The Higgs Declaration sets out the analysis of Wright's expert, Dr. Higgs, from his March 19, 2021 Infringement Report, including his (1) examination of a physical sample of the Caspar I Device, (2) examination of images from a micro Computed Tomography (CT) scan of a portion of the physical sample of the Caspar I Device, (3) comparison of each of the '710 Asserted Claims to the Caspar I Device on an element-by-element basis, (4) demonstration of how the Caspar I Device embodies each and every element of each of the '710 Asserted Claims, and (5) conclusion that the Caspar I Device infringes each of the '710 Asserted Claims. *Id.*

     5.      In response to the Higgs Infringement Report, Paragon's expert, Dr. Werber, submitted a rebuttal non-infringement report that addressed various infringement claims. Ex. C, Werber Rebuttal Expert Report, July 9, 2021 at ¶¶ 83-88. However, Dr. Werber did not offer any opinions of non-infringement with respect to the Caspar I Device and the '710 Asserted Claims. The Werber rebuttal report does not (1) examine any physical sample of the Caspar I Device, (2) analyze any design drawings for the Caspar I Device, (3) compare the Caspar I Device to any of the '710 Asserted Claims, (4) identify any claim limitations in the '710 Asserted Claims missing from the Caspar I Device, (5) identify any flaws in Dr. Higgs' infringement analysis, (6) dispute Dr. Higgs' conclusion that the Caspar I Device infringes the '710 Asserted Claims, or (7) provide a non-infringement opinion for the Caspar I Device. *See id.* at ¶¶ 465-472.

     6.      Dr. Werber testified that he reviewed Dr. Higgs' opinion that the Caspar I Device infringes, but confirmed he had no opinion on ████████████████████████████ ████████████████████████████████████████████████ Ex. D, Werber Dep. at 38:16-39:5. Dr. Werber admitted that the ████████████████████ ████████████████████████████████████████████████

*Contains Highly Confidential Material Subject to Protective Order*

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at 35:10-

36:21; 37:14-23; 43:7-13.

7.       None of Paragon's other experts offered any opinions on whether the Caspar I

Device infringes the '710 Asserted Claims, including Mr. Castaneda and Dr. Antonsson.

**B.       Argument**

A patent is infringed when a person "without authority makes, uses, offers to sell or sells

any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. §

271(a). "Literal infringement exists when every limitation recited in the claim is found in the

accused device." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1341 (Fed. Cir.

2016). The Court should grant summary judgment of infringement when there is no genuine

issue of material fact that an accused device is covered by the asserted claims. *See McGinley v.*

*Franklin Sports, Inc.* 262 F.3d 1339, 1348 (Fed. Cir. 2001). Where, as Wright has done here, the

patentee has met its burden of proving infringement and that proof goes un-rebutted, summary

judgment of infringement is appropriate. *See id.* at 1344-49 (affirming summary judgment of

infringement when infringer's only rebuttal was conclusory).

Wright has provided ample evidence of infringement of the '710 Asserted Claims.

Wright's expert, Dr. Higgs, examined a physical specimen of the Caspar I device and images

from a CT scan of a portion of the specimen, compared the '710 Asserted Claims to the Caspar I

device, demonstrated specifically how each and every element of each of the '710 Asserted

Claims is found in the Caspar I device, and concluded that the Caspar I Device infringes each of

the '710 Asserted Claims. SUF No. 4.

Dr. Higgs' infringement analysis and expert opinion are unrebutted by Paragon.

Paragon's expert Dr. Werber has not identified any flaws in Dr. Higgs' analysis. Dr. Werber

*Contains Highly Confidential Material Subject to Protective Order*

admitted that he did not have an opinion as to whether or not the Caspar I Device infringes and that he did not evaluate the Caspar I Device, determine what features the Device contains, or analyze the Device relative to the claims of the '710 Patent. SUF Nos. 5-6. Paragon's other experts have not analyzed infringement at all, much less rebutted Dr. Higgs' infringement analysis for the Caspar I Device. SUF No. 7.

Having failed entirely to (1) identify any evidence that any claim element of any of the '710 Asserted Claims is missing from the Caspar I Device, or (2) rebut Dr. Higgs' infringement analysis, there are no disputed material facts as to infringement. Wright therefore is entitled to summary judgment that the Caspar I Device infringes the '710 Asserted Claims as a matter of law.

## II.   The Court Should Grant Summary Judgment on Paragon's Counterclaims for Abuse of Process and Tortious Interference with Prospective Business Advantage

Paragon bases each of its counterclaims on the allegation that Wright made "statements" and "threats" to sales representatives Chad Cade and Eric Gordon to dissuade them from accepting positions at Paragon. Def.'s Countercl. ¶¶ 297-306, ECF 415. Specifically, Paragon alleges that Wright employees told Cade and Gordon that (1) they would be "added to this suit" if they joined Paragon and (2) Wright's damages claims could impede Paragon's ability to pay their salaries. *Id.* ¶ 298. Paragon claims that Wright's statements forced Paragon to give Cade and Gordon more favorable contract terms to convince them to join Paragon.

The undisputed facts demonstrate, however, that Paragon cannot prove Wright's alleged statements caused Paragon's alleged harm or that Paragon suffered any actual damages. These failures independently require summary judgment in Wright's favor. Specifically, even if Wright made the alleged "threats" (it did not), they did not cause the existence of the terms in Cade's and Gordon's contracts about which Paragon complains. First, it is undisputed that ██████

*Contains Highly Confidential Material Subject to Protective Order*

████████████████████████████████ *before* Wright purportedly made the alleged threats to him. Second, ████████████████████████████████████████████ ████████████████████████████████████ Third, Cade and Gordon both testified ████████████████████████████████████████ ██████ Paragon cannot point to a single document that shows it was forced to provide the additional contract terms due to Wright's alleged statements. Instead, the record establishes that the contract terms about which Paragon complains were the outcome of typical contract negotiations driven by ████████████████████████████████████ ████████████████████

       With respect to Paragon's tortious interference counterclaim specifically, Paragon has failed to establish the most essential element of its claim: that Wright's actions prevented the formation of a prospective business relation. It is undisputed that Paragon ultimately secured contracts with both Cade and Gordon, and that they have been working for Paragon since June 2021.

       As to Paragon's abuse of process counterclaim, Paragon fails to even allege that Wright wrongfully used any "judicial process," a required element of Paragon's abuse of process claim. As a matter of law, making "threats" outside of any judicial process cannot sustain such a claim. *See Quidel Corp. v. Siemens Med. Sols. USA, Inc*., No. 16-CV-3059-BAS-AGS, 2020 WL 1820247, at *5 (S.D. Cal. Apr. 9, 2020). Nor can Paragon prove that Wright's alleged conduct was motivated by achieving an advantage collateral to this litigation. Rather, Wright's attempts to prevent its sales reps from leaving for Paragon is part and parcel of Wright's affirmative claim that Paragon's improper poaching of Wright's sales representatives is interfering with Wright's

*Contains Highly Confidential Material Subject to Protective Order*

contracts with them. Paragon's abuse of process claim, therefore, fails for these additional reasons.

Paragon's inability to prove any one element of its counterclaims requires summary judgment in favor of Wright on the entirety of that claim. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Paragon cannot prove several elements of each claim, as set forth more fully below.

### A.      Statement of Undisputed Material Facts Relevant to Paragon's Counterclaims

8.      Paragon alleges it "has had to change prospective employee contracts to its economic detriment because Wright Medical is (i) threatening Wright Medical sales representatives with being added to this suit for the sole reason of joining Paragon 28; and (2) stating that Wright Medical's damages claims will impede Paragon 28's ability to meet contractual salary commitments." Def.'s Countercl. ¶ 298, ECF 415. The two sales representatives for whom Paragon alleges damages as a result of Wright's actions are Chad Cade and Eric Gordon. Ex. E, Salters Expert Report, Feb. 23, 2022 at ¶¶ 22-24.

***Chad Cade***

9.      Paragon sent Cade a proposed Sales Agent Agreement on ██████████ Ex. F, Cade Dep. Ex. 4 (Cade's "Proposed Sales Agent Agreement"). Paragraph 3 of the Proposed Sales Agent Agreement specified ████████████████████████████████ ██████████████████ *Id*.



10.      ███████████████████████████████████ ████████████ ██████████████████████████████ ████████████████████████████████████ ████████████. G, Cade Dep. Ex. 6; Ex. H, Cade Dep. at 69:9-70:2, 71:12-73:17. ████████

*Contains Highly Confidential Material Subject to Protective Order*

███████████████████████████████████████████████." Ex. H, Cade

Dep. at 73:1-8.

11.     Paragon alleges that, with respect to Cade, the statements referenced in SUF No. 8

(above) were made by Wright's General Manager of Foot and Ankle, Patrick Fisher, during a

June 7, 2021 telephone conversation with Cade. Def.'s Countercl. ¶ 300, ECF 415; Ex. I, Def.'s

Resp. to Interrog. 26, Nov. 5, 2021; *see also* Ex. H, Cade. Dep. at 294:18-295:9.

12.     Cade does not have any contemporaneous documents recounting the statements

Fisher allegedly made to him during the June 7 phone call. Ex. H, Cade. Dep. at 135:2-9.

13.     Cade signed his final Paragon Sales Agent Agreement on June 8, 2021, and

Paragon countersigned on the same day. Ex. J, Cade Dep. Ex. 7 at 9 (Cade's "Final Sales Agent

Agreement"). The contract was effective as of June 1, 2021. *Id.* ¶ 2.

14.     Paragraph 3 of Cade's Final Sales Agent Agreement provides that ████████



██████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 3; *id.* ¶ 28(a).

15.     Cade testified that ████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████. Ex. H, Cade Dep. at 79:4-10 ███████████

██████████████████████████████████████████████████████

███████████████████████████

16.     Paragon claims, through its damages expert Ambreen Salters, that the change in

Cade's termination provision required Paragon to take on ████████████████████████

due to ██████████████████████████████████████████████████

███████████████████. Ex. E, Salters Expert Report, Feb. 23, 2022 at ¶¶ 23, 28 (emphasis

*Contains Highly Confidential Material Subject to Protective Order*

added). Ms. Salters quantifies Paragon's " ████████████████████████████████████ ████████████████████ by multiplying Cade's ██████ monthly salary ████████ ████████████████ for a damages claim of ██████ *Id.* at StoneTurn Countercl. Ex. 1. Salters admits that Paragon has not yet incurred any actual damages from the change in Cade's ████████████████████████. Ex. K, Salters Dep. Rough at 269:5-10 ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████"); *id.* at 268:6-12 ████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████

17. Cade ████████████████████████████████████ ████████████████████████████) , Q3 2021, and Q4 2021. Ex. J, Cade Dep. Ex. 7 at 11; Ex. H, Cade Dep. at 94:2-13; Ex. L, Def.'s 2d Suppl. Resps. to Am. Interrog. 33, Jan. 20, 2022 (████████████████████████████████████).

18. Despite being able to terminate Cade ████████████████████ ████ Paragon has not terminated Cade. Ex. H, Cade Dep. at 7:21-23. Nor is there any evidence that Paragon wants or intends to—or has ever wanted or intended to—terminate Cade.

19. Cade's Final Sales Agent Agreement also ████████████████████ ████████████████████████████████. Ex. J, Cade Dep. Ex. 7 at ¶ 5 and Exhibit C. Exhibit C lists ████████████████████████ ████████████████████████████. *Id.* at Ex. C. Paragon may terminate Cade for breaching that restriction. *Id.* at ¶ 5.

*Contains Highly Confidential Material Subject to Protective Order*

20.     During the term of his agreement, Cade 

)).

### *Eric Gordon*

21.     Paragon sent Gordon a proposed sales agent agreement on ███████ Ex. N, Gordon Dep. Ex. 1 at -009; Ex. O, Gordon Dep. Ex. 2 (Gordon's "First Sales Agent Agreement").

22.     On June 9, 2021, Gordon signed the First Sales Agent Agreement without requesting any changes from Paragon and without Paragon making any changes. Ex. O, Gordon Dep. Ex. 2 at 9; Ex. P, Gordon Dep. at 42:12-24. ████████████████████ ████████████    Ex. O, Gordon Dep. Ex. 2 at ¶ 2.

23.     Paragon alleges that, with respect to Gordon, the statements referenced in SUF No. 8 (above) were made by a Wright Regional Manager, Mike Purcell, during a telephone conversation with Gordon on June 16, 2021—a week *after* Gordon had already signed his First Sales Agent Agreement. Def.'s Countercl. ¶ 299, ECF 415.

24.     Gordon admits that he was bound by the terms of his First Sales Agent Agreement with Paragon and that he promised to abide by its terms. Ex. P, Gordon Dep. at 46:15-19, 47:12-17.

25.     On June 14, 2021, after learning that Gordon was leaving for Paragon, Purcell and a Wright Account Manager, Steve Bemboom, called Gordon to offer him a new compensation package in exchange for staying at Wright. Ex. Q, Gordon Dep. Ex. 7 (June 14 text message

*Contains Highly Confidential Material Subject to Protective Order*

from Bemboom telling Gordon ███████████████████████); Ex. P, Gordon Dep. at

80:5-12 (Gordon confirming that Purcell and Bemboom presented the offer during the June 14

call). The new compensation package included a ███████████████ and a ███████

███████. *Id.*

26.     Gordon was ████████ by the terms of the new compensation plan because of

███████████████████████. *Id.* at 80:9-19. Wright's offer made

Gordon's decision to leave Wright more difficult. *Id.* at 81:3-6.

27.     Within hours of receiving Wright's ████████████, Gordon logged into

his DocuSign account to review the First Sales Agent Agreement he had already signed with

Paragon. Ex. R, Gordon Dep. Ex. 8 (DocuSign record); Ex. P, Gordon Dep. at 85:12-18.

28.     On June 16, 2021, Paragon sent Gordon a new sales agent agreement, which

included for the first time a ████████████. *Compare* Ex. O, Gordon Dep. Ex. 2

(First Sales Agent Agreement)) at Ex. D *with* Ex. S, Gordon Dep. Ex. 9 ("Second Sales Agent

Agreement") at Ex. D ¶ 8. Specifically, Paragon included in the new agreement a provision that

stated: ███████████████████████████████████

███████████████ Ex. S, Gordon Dep. Ex. 9 at Ex. D ¶ 8. Gordon signed his Second

Sales Agent Agreement with Paragon on the same day, June 16, 2021. *Id.* at 9.

29.     Paragon's new offer of a ████████████ was ████████ Wright's offer

of a ████████ Ex. P, Gordon Dep. at 99:25-100:8.

30.     Gordon does not recall any conversations with Paragon about any terms of his

agreements between signing his First Sales Agent Agreement on June 9 and signing his Second

Sales Agent Agreement on June 16. *Id.* at 93:20-94:11.

*Contains Highly Confidential Material Subject to Protective Order*

31.    Gordon does not recall ever telling Paragon he wanted to renegotiate his First Sales Agent Agreement. *Id.* at 86:9-13. He also does not recall ever telling anyone at Paragon about Wright's alleged "threats," or telling Paragon that he needed contractual concessions because of those alleged threats. *Id.* at 129:8-130:8.

32.    Gordon testified that he did not use anything Wright or anyone from Wright said to him as leverage to negotiate better contract terms with Paragon. *Id.* at 70:24-71:5 ███████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████).

33.    Gordon does not know why he signed a new contract with Paragon on June 16, other than Paragon offered ████████████████████. *Id.* at 87:7-88:19. He does not know why Paragon offered ████████████████. *Id.*

34.    Gordon's ████████████ is contingent, not guaranteed. Ex. S, Gordon Dep. Ex. 9 at Ex. D ¶ 8. Gordon must ████████████ to Paragon under several conditions: ████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████████ *Id.*

35.    Paragon alleges that it ████████████ offer Gordon the ████████████████ ████████████ Wright's alleged statements to Gordon. Ex. T, Def.'s Resps. to Am. Interrog. 29, Dec. 6, 2021.

### B.    The Court Should Grant Summary Judgment on Both of Paragon's Counterclaims Because Paragon Has Failed to Establish Causation

To prevail on its abuse of process and tortious interference claims, Paragon must prove that Wright's actions caused Paragon's alleged harm. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103,

*Contains Highly Confidential Material Subject to Protective Order*

1117 (10th Cir. 2009) (essential element of abuse of process claim is "resulting damage");
*Storlie v. Prudential Ins. of Am.*, No. 19-CV-02543-CMA-NRN, 2020 WL 209859, at *2 (D.
Colo. Jan. 14, 2020) (tortious interference claim requires proof that "harm was suffered as a
result"). Paragon has failed to carry its evidentiary burden with respect to causation as to both
Cade and Gordon.

**1.    Wright Did Not Cause Cade's Agreement to Include a More Favorable ███████████████ nor Prevent Paragon █████ ██████████ Cade ████████**

Paragon claims a "potential expense" of █████ due to a change █████████████
████████ between the agreement Paragon initially proposed to Cade and the one he ultimately
signed. SUF Nos. 9, 14, 16. When Paragon sent its proposed agreement to Cade on May 27, the
agreement specified that Cade ████████████████████████████████████████████
████████████████ SUF No. 9. Paragon claims that, because of Wright's alleged statements, it
was forced to modify this provision so that Cade ████████████████████████████
████████████████████████. SUF No. 16. Paragon's damages expert claims this
change required Paragon to take on ███████████████████ in the form of
*potentially* ████████████████████████████████████████████████
████████████████████████████████—*if* Paragon should
decide ███████████████. *Id.*

To establish that Wright's alleged statements *caused* Paragon to suffer this alleged harm,
Paragon must prove (1) the modification of Cade's ██████████████ was caused by
Wright's alleged threats and (2) the modification of Cade's ████████████ prevented
Paragon ████████████ Cade ████, which requires proof that (a) Paragon ████████
████████████████████████████████████████████████████████

*Contains Highly Confidential Material Subject to Protective Order*

████████████████, and (b) Paragon w███████████████████████████████████

████████████████████ Paragon fails to prove any of these essential facts.

*First*, the undisputed evidence shows that Cade did not use the alleged "threats" to

negotiate the ██████████████████ in his Paragon Sales Agent Agreement. Cade testified that he

did not use anything that Wright or anyone from Wright said to him as leverage to negotiate

better terms in his Agreement—including ██████████████████████████████. SUF No.

15. Rather, Cade negotiated the ██████████████████████████ simply because ████████████

████ the original draft. SUF No. 10. In fact, he demanded the modification of the ████████

████████ *before* the alleged threats were made. SUF Nos. 10, 11. Thus, the undisputed evidence

shows that Wright's alleged threats did not cause the change in Cade's ████████████████.

*Second*, there is no evidence that the modification to Cade's ████████████████████

prevented Paragon ██████████████ Cade ██████ (and thus avoiding the ████████████████████

████████████). Specifically, there is no evidence that Paragon had any desire or intent to, or

ever even discussed, ████████████ Cade. SUF No. 18. Neither Paragon nor its damages expert can

point to any evidence indicating Paragon ██████████████████, or that it was delayed in doing so

by the modified ██████████████████. *Id.*

To the contrary, the undisputed evidence shows that Paragon ██████████████████████████████

██████████████████ Paragon already ████████████████████████████████████████████████████

██████████████████ so. As of December 31, 2021, Cade had already ██████████████████████

████████████████████████████████████████████. SUF No. 17. Paragon

cannot claim the modified ██████████████████████████████████████████████████████████

████████████████████████████████████████████████

*Contains Highly Confidential Material Subject to Protective Order*



*Third*, even if Paragon ███████████ Cade and was unable to ███████████ ██████, Paragon has other contractual bases ███████████████ Cade ██ ███. Cade's Final Sales Agent Agreement █████████████████████████ █████████████████████████. SUF No. 19. Paragon █ ████████████ Cade if he breaches this provision of his contract. *Id*. Cade has done exactly that. Since at least July 2021, ██████████████████████████ █████████████████████████. SUF Nos. 19, 20. That Paragon ████████████████████████████████ ████████████████████████████████████ ██████████████████████████.

Each of the three failures of proof, alone, requires summary judgment in Wright's favor with respect to Paragon's claims involving Cade.

### 2.   Wright's Alleged Statements Did Not Cause Gordon's Sales Agent Agreement to Include a ████████████████

Paragon claims that Wright's alleged "threats" forced Paragon ███████████████ to secure a contract with Gordon, and therefore claims the ████████████ as damages. SUF No. 35. Paragon alleges that Wright made these "threats" on June 16, 2021. SUF No. 23. Paragon cannot prove that the alleged threats prevented it from entering a contract with Gordon ████████████.

*First*, it is undisputed that Gordon and Paragon had already signed a binding and enforceable agreement on June 9, 2021—██████████████████████—a full week before the alleged "threats" were made. SUF Nos. 22, 23. Gordon signed that First Sales Agent Agreement ██████████████████. SUF No. 22. The term of Gordon's First Sales Agent Agreement ran through May 31, 2022, and thus was in effect at the time of the

*Contains Highly Confidential Material Subject to Protective Order*

Wright's alleged threats to Gordon. SUF Nos. 22, 23. Gordon admits that he was bound by the terms of his First Sales Agent Agreement with Paragon, that he promised to abide by its terms, and that he did not try to renegotiate those terms. SUF No. 24, 31. Paragon could have enforced that original binding contract and ███████████████. SUF No. 22, 24. Wright's alleged statements did not prevent Paragon from enforcing its existing contract with Gordon ████████ █████████████████. *Id*. As a result, Wright is entitled to summary judgment on Paragon's claims relating to Gordon.

     *Second*, it is undisputed that Gordon did not even attempt to use the alleged "threats" in any negotiations for a new contract. Gordon does not recall ever telling Paragon he wanted to renegotiate his First Sales Agent Agreement. SUF No. 31. Nor did he recall ever telling anyone at Paragon about Wright's alleged "threats," much less telling Paragon that he needed contractual concessions because of those conversations. *Id.* In fact, Gordon does not recall *any* conversations with Paragon about any terms of his Paragon Agreements between signing the First Sales Agent Agreement on June 9 and signing the Second Sales Agent Agreement on June 16. SUF No. 30. And Gordon testified that he did not use *anything* that Wright or anyone from Wright said to him as leverage to negotiate better contract terms with Paragon. SUF No. 32. Gordon was already bound by his First Sales Agent Agreement with Paragon, and he does not know why he signed the Second Sales Agent Agreement on June 16 other than Paragon ████████████████. SUF No. 33. Thus, the alleged "threats" did not cause Gordon ██████████████████ ████—he did not use the alleged threats in any way in his negotiations.

     *Third*, even if Paragon had not already entered a binding contract with Gordon, the fact that ███████████ was added to Gordon's Second Sales Agent Agreement only two days after Wright ███████████████ Gordon makes it clear that the Paragon ██████ was

*Contains Highly Confidential Material Subject to Protective Order*

not the result of the alleged "threats." SUF Nos. 25, 28, 29. Paragon offered Gordon a  ████ in direct response to Wright ███████████████, an example of healthy competition between two companies for the talents of a sales representative—nothing more.

### C.  The Court Should Grant Summary Judgment on Both Counterclaims Because Paragon Has Failed to Establish Actual Damages

In addition to establishing causation, Paragon must prove that it suffered actual damages. *See Hertz*, 576 F.3d at 1117; *Storlie*, 2020 WL 209859, at *2. Here, too, Paragon falls short with respect to both Cade and Gordon. In both instances, Paragon's claimed damages are speculative, and with respect to Cade in particular, admittedly only "potential" and not "actual" damages. *United States v. Griffith, Gornall & Carman, Inc.*, 210 F.2d 11, 13 (10th Cir. 1954) ("Actual damages only may be secured. Those that are speculative, remote, uncertain, may not form the basis of a lawful judgment."); *Club Matrix, LLC v. Nassi*, 284 P.3d 93, 96 (Colo. App. 2011) ("Actual damage cannot be based on mere speculation or conjecture.") (internal quotations omitted). For this independent reason, the Court should grant summary judgment on both of Paragon's counterclaims.

### 1.  Paragon Admits It Has No Actual Damages Relating to Cade

Paragon claims ██████ in "potential expense" due to ████████████████ ███████ Cade's contract. SUF No. 16. Paragon's theory is ███████████████ ████████████████████████████████████████ ████████████████████████████ *Id.*

Paragon admits that it has not suffered any actual damage due to this change ████ █████████. As Paragon's own damages expert expressly recognizes, ████████████ ████████████████████████████████ not actual damages.

*Contains Highly Confidential Material Subject to Protective Order*

*Id.* Her calculation of the ████████ in alleged damages is even titled ███████████████

███████████████████████████████████████████ *Id.* (emphasis

added). And she admitted at her deposition that Paragon's loss ██████████████████

████████████████████ that ████████████████████████

████████████████ and that as a result ████████████████████████

████████████ *Id.* On this point, Paragon's expert is correct—Paragon has not suffered any

actual harm with respect to Cade's contract because Paragon ███████████████████████

█████████████████████████. In fact, there is no evidence that Paragon has ████████████

██████████████████████████ (*see supra*, Section II(B)(1)). ████

████████████████████████████████████████████████

██████████████████████████████ Paragon admits it has not suffered

any actual damages and any claim that Paragon may suffer damages in the future is uncertain and

speculative at best.

As Paragon's own expert concedes, Paragon's claims for abuse of process and tortious

interference are limited to ██████████████████████████ Ex. E, Salters Expert

Report, Feb. 23, 2022 at ¶ 21 (emphasis added); *see also Frontrange Sols. USA, Inc. v. Newroad*

*Software, Inc.*, 505 F. Supp. 2d 821, 835 (D. Colo. 2007) (granting summary judgment where, as

here, the plaintiff's damages claim was "based on numerous unfounded assumptions" and

therefore did not "satisfy the requirements of demonstrating actual, non-speculative damages");

*Malasky v. Dirt Motor Sports, Inc.*, No. 07-CV-00046-JLK, 2008 WL 2095528, at *6 (D. Colo.

May 16, 2008) (granting summary judgment because "the record reflects no factual basis for an

award of actual (as opposed to nominal) damages" and the plaintiff offered "only speculation or

conjecture to establish damages"). Because Paragon's own expert admits that Paragon has

*Contains Highly Confidential Material Subject to Protective Order*

suffered only "potential"—and not actual—damages with respect to Cade's contract

modification, summary judgment should be grated on both of Paragon's counterclaims with

respect to Cade.

### 2.    Eric Gordon

Paragon claims ████ in damages ████████████ Gordon. SUF

No. 35. Paragon's damages are again speculative and not actual. Gordon's Second Sales Agent

Agreement specifies that Gordon earns his ████████████████

███████████████████████████

████████████ SUF No. 28 (emphasis added). The Second Sales Agent

Agreement sets forth ████████████████

█████████████████████████████

███████████████████████████

████████████. SUF No. 34. If any of these events occur, ████

████████████ *Id.* Based on the explicit provisions of his contract,

therefore, Gordon ████████████ and Paragon has not yet suffered

any damages. Whether Paragon will ever suffer damages is contingent on at least three unknown

events, and thus, is merely speculative.

Moreover, Paragon had an obligation to mitigate any alleged damages. *Fair v. Red Lion*

*Inn*, 943 P.2d 431, 437 (Colo. 1997) ("[T]he plaintiff may not recover damages for injuries

which he or she reasonably might have avoided."). As of June 9, 2021, Paragon had a signed,

valid, and enforceable Sales Agent Agreement with Gordon ████████████

████████. SUF Nos. 22, 28. Paragon could have avoided the entirety of its alleged damages

by simply enforcing its First Sales Agent Agreement with Gordon—████████████

████████—instead of offering Gordon ████████████████

*Contains Highly Confidential Material Subject to Protective Order*

████████████ *Id.* Paragon's failure to mitigate its damages is an additional reason to grant summary judgment.

> **D.  The Fact that Both Cade and Gordon Entered Contracts with Paragon, Alone, Requires Summary Judgment on Paragon's Tortious Interference Claim**

To prevail on its claim for tortious interference with prospective business advantage, Paragon must show that Wright prevented the formation of a prospective contractual relation which would have otherwise been reasonably likely to result. *See Hertz*, 576 F.3d at 1119 (citing *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007)) ("[T]here must be a showing of improper and intentional interference by the defendant that ***prevents the formation of a contract*** between the plaintiff and a third party.") (emphasis added)); *accord. Registry Sys. Int'l, Ltd. v. Hamm*, No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at *11 (D. Colo. Jan. 20, 2010) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).

Paragon's tortious interference claim fails as a matter of law because Wright did not prevent the formation of any prospective business relations. It is undisputed that Paragon entered sales agent agreements with both Cade and Gordon, and both have been working as sales agents for Paragon since June 2021. SUF Nos. 13, 28; *see also* Def.'s Countercl. ¶ 304, ECF 415. Summary judgment is proper on Paragon's tortious interference claim on this basis alone. *See Registry Sys.*, 2010 WL 326327, at *12 (granting summary judgment on tortious interference with business relations claim in part because "[t]here is no indication in the evidence [plaintiff] has cited that any customer ceased or decline to contract" with the plaintiff; "because there is no indication that the defendants thwarted any contractual relation that would have otherwise been formed or extended, [the plaintiff's] claim for tortious interference is unfounded.").

*Contains Highly Confidential Material Subject to Protective Order*

**E.      Paragon's Abuse of Process Counterclaim Fails as a Matter of Law**

Finally, Paragon's abuse of process claim fails as a matter of law for the independent reasons that it does not allege an improper "use of judicial proceedings" or "willful actions by a party in the use of the process which are not proper in the regular conduct of a civil action," both of which are required for such a claim. *Moothart v. Bell*, 21 F.3d 1499, 1508 (10th Cir. 1994); *see also Hertz*, 576 F.3d at 1117 (citing *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998)).

**1.      Wright Did Not Abuse a Judicial Process**

The essential element of an abuse of process claim is that it "must involve an actual court process, not just an action taken in connection with a lawsuit." *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 213 (Colo. App. 2017). Yet Paragon has not alleged, much less proven, that Wright abused any court process in its interactions with Cade and Gordon. Instead, Paragon alleges only that Wright made "threats" and "statements" regarding this lawsuit— specifically, that Wright told Cade and Gordon they would be added to this lawsuit if they left for Paragon and that Paragon would be crippled financially by a verdict favorable to Wright. SUF Nos. 8, 11, 23. Even accepting Paragon's allegations as true, these statements by Wright do not amount to abuse of any court process because they were not made using any power or authority of the court. *See Quidel*, 2020 WL 1820247, at *5 (party's statements to a third party were not an abuse of process because they did not invoke the power of the court).

In *Active Release*, the Colorado Court of Appeals expressly rejected the notion that statements made to third parties about an ongoing lawsuit can constitute abuse of process. 413 P.3d at 213. The Court of Appeals refused to find that the statements plaintiff made in a letter to third parties amounted to "a legal proceeding as contemplated by the abuse of process tort" because the statements were made "independent of any court action or involvement, and there

*Contains Highly Confidential Material Subject to Protective Order*

was no evidence that the court was asked to play any role in their issuance or enforcement." *Id.*

at 214. The court further held that, even if it assumed the statements were made to "harass,

intimidate, or otherwise harm" the defendant, the abuse of process tort was inapplicable because

the statements were made without the court's involvement. *Id.*

So too here. Even assuming, as Paragon alleges, that Wright made statements to Cade

and Gordon about this lawsuit to "harass, intimidate, or otherwise harm" them or Paragon, that is

not abuse of judicial process. For more fulsome argument on this issue, Wright refers the Court

to its pending motion to dismiss Paragon's abuse of process counterclaim, ECF 432.

### 2.       Wright Has Not Used Any Legal Proceeding for an Improper Purpose

In addition to proving abuse of an actual court process, Paragon must prove that Wright

used that court process for some improper purpose. *See Hertz*, 576 F.3d at 1117 ("Use of a legal

proceeding in an improper manner is an essential element of an abuse of process claim."). An

improper purpose usually takes the form of "coercion to obtain a collateral advantage, not

properly involved in the proceeding itself, such as the surrender of property or the payment of

money." *Id.* at 1118 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 121, at

898 (5th ed. 1984)). The classic example used by courts to illustrate a "collateral advantage" is a

plaintiff filing a property lien against her adversary, not because the plaintiff claims an interest in

the property, but to pressure her adversary to concede in an unrelated child custody proceeding.

*See id.*; *Tatonka Cap. Corp. v. Connelly,* No. 16-CV-01141-MSK-NYW, 2016 WL 9344257, at

*5 (D. Colo. Dec. 29, 2016). In other words, the plaintiff must engage in "a form of extortion" to

be liable for abuse of process. *Hertz*, 576 F.3d at 1118.

Paragon's claim against Wright is a far cry from the type of "extortion" recognized as

abuse of process under the law. Paragon's first allegation is that Wright threatened Cade and

Gordon with being added to this lawsuit. SUF Nos. 8, 11 23. Wright's underlying claim in this

*Contains Highly Confidential Material Subject to Protective Order*

suit is that Paragon has engaged in an ongoing campaign to poach sales representatives from Wright and, through those former sales representatives, has misappropriated Wright's trade secrets and tortiously interfered with Wright's relationships with its surgeon and hospital customers. *See* Pl.'s 3d Am. Compl., Counts XI–XV, ECF 89. Wright's alleged statements— which purportedly advised Cade and Gordon that, if they engage in unlawful conduct upon joining Paragon, they may be subject to legal claims—are therefore not at all "collateral" to Wright's underlying claims.

During a recent hearing, the Court recognized that warning Cade and Gordon of potential liability does not amount to abuse of process: "Of course, if … [Cade] and Gordon were, indeed, violating their noncompete agreement, then the assertion that they may be brought in as defendants in the lawsuit, which the counterclaim alleges, *is not an abuse of [process], but simply a statement that if they are violating their noncompete, they may be liable civilly*." Ex. U, Hr'g Tr. 16:1-6, Mar. 30, 2022 (Varholak, J.) (emphasis added); *see also Beyer Laser Ctr., LLC v. Polomsky*, No. 16-CV-03099-MEH, 2019 WL 5556082, at *4 (D. Colo. Oct. 25, 2019) ("[T]he fact that additional claims make a lawsuit larger and more difficult to defend is merely an ancillary effect of the realities of litigation that, although possibly enjoyed by Plaintiffs in that case, would not turn a justified claim into abuse of process."). In short, Paragon's allegation that Wright "threatened" Cade and Gordon with being added to this lawsuit, even if taken as true, does not amount to an improper, or "collateral," use of any legal process.

The only remaining allegation Paragon makes in support of its abuse of process counterclaim is that Wright told Cade and Gordon that Paragon may be unable to pay their salaries in the event Wright won a favorable judgment in this lawsuit. SUF Nos. 8, 11, 23. Informing third parties that a defendant may be negatively impacted by a judgment in the lawsuit

*Contains Highly Confidential Material Subject to Protective Order*

is not improper, and certainly not "collateral" to the issues in this suit. Indeed, in *Hertz*, the Tenth Circuit expressly rejected the notion that statements about financial loss from a lawsuit was evidence that the party is motivated by any "improper purpose" or "collateral advantage." 576 F.3d at 1118 n.9. To the contrary, financial loss is "a natural and not unexpected consequence of a successful lawsuit," particularly with respect to a defendant found liable of trade secret misappropriation.[2] *Id.* (affirming district court's denial of leave to add abuse of process counterclaim because claimant failed to identify any collateral advantage*); see also Walker v. Van Laningham*, 148 P.3d 391, 395 (Colo. App. 2006) (affirming dismissal of abuse of process claim because "[a]ny advantages that [the plaintiffs] may have obtained as a result of [the defendant's convictions] were regular and legitimate goals which the proceedings were designed to achieve"). Here, too, any statements Wright made to Cade and Gordon about the potential financial consequences of this lawsuit fall well short of establishing that Wright was motivated by any improper purpose or collateral advantage extrinsic to this lawsuit.

Even if Wright's actions were incidentally motivated by a desire to prevent Paragon from lawfully hiring Cade and Gordon, as Paragon alleges, that does not amount to abuse of process where Wright's actions were otherwise proper. *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010), *aff'd*, 566 F. App'x 681 (10th Cir. 2014) (Even "the presence of an ulterior motive does not give rise to a cause of action [for abuse of process] where the process is otherwise invoked for its normal purpose"); *Stevens v. Mulay,* No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *1 (D. Colo. Mar. 26, 2021) (same); *see also* RESTATEMENT

---

[2] Paragon itself acknowledges the potential financial risk it faces with respect to this lawsuit, telling the public in its SEC filings that "there can be no assurance that the outcome of the [Wright] case or the costs of litigation, regardless of outcome, will not have a material adverse effect on our business." Ex. V, Paragon 2021 Form 10-K at 84. It defies logic to conclude that Wright making a similar statement to Cade and Gordon amounts to abuse of process.

*Contains Highly Confidential Material Subject to Protective Order*

(SECOND) OF TORTS § 682, cmt. b (same). Because Wright's statements to Cade and Gordon were proper within the scope of this lawsuit, Paragon's abuse of process counterclaim should be dismissed.

## CONCLUSION

For the foregoing reasons, Wright respectfully requests that the Court grant summary judgment on Paragon's infringement of the '710 Patent (Count X) as well as summary judgment against Paragon on its abuse of process counterclaim (Counterclaim XXI) and tortious interference with prospective business advantage counterclaim (Counterclaim XXII).

*Contains Highly Confidential Material Subject to Protective Order*

DATED: May 4, 2022

/s/ Brent R. Owen
_____
Brent R. Owen
**SQUIRE PATTON BOGGS (US) LLP**
1801 California Street, Suite 4900
Denver, Colorado 80202
(303) 830-1776

RESPECTFULLY SUBMITTED,

Thomas W. Sankey, Lead Counsel
Diana M. Sangalli
**DUANE MORRIS LLP**
1330 Post Oak Boulevard, Suite 800
Houston, TX 77056-3166
(713) 402-3900

Anthony J. Fitzpatrick
Christopher S. Kroon
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-4276
(857) 488-4276

Christopher J. Lind
Mark L. Levine
Andrew C. MacNally
Nevin M. Gewertz
Anastasiya Maione
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400

*Counsel for Plaintiff*
*Wright Medical Technology, Inc.*

*Contains Highly Confidential Material Subject to Protective Order*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brent R. Owen*

Brent R. Owen
